# WADDELL & REED, INC.

# WELFARE BENEFITS PLAN

## (Omnibus Wrap Plan)

## Plan No. 501

**Effective January 1, 2014**

EXHIBIT 10  Page 1  SUF

## WADDELL & REED, INC. WELFARE BENEFITS PLAN

### Effective January 1, 2014

### Background

Waddell & Reed, Inc. (the "Company") previously established the Waddell & Reed, Inc. Long Term Disability Plan (Plan 501), the Waddell & Reed, Inc. Business Travel Accident Insurance Plan (Plan 502), the Waddell & Reed, Inc. Group Life and Medical Insurance Plan (Plan 503), the Waddell & Reed, Inc. Flexible Benefits Plan (Plan 504), the Waddell & Reed, Inc. Long-Term Care Plan (Plan 505), the Waddell & Reed, Inc. Severance Pay Plan, the Waddell & Reed, Inc. Sick Leave Plan (Plan 509), the Waddell & Reed, Inc. Group Dental Plan (Plan 510), the Waddell & Reed, Inc. Voluntary Vision Plan (Plan 511), and the Waddell & Reed, Inc. Supplemental Group Term Life Insurance Plan (Plan 512).

Effective January 1, 2014, the Company established a comprehensive welfare benefits plan known as the Waddell & Reed, Inc. Welfare Benefits Plan (the "Plan"), Plan No. 501, which includes a premium conversion component, a health care spending account component and a dependent care spending account and will wrap around all of the Company's welfare benefit programs. The Plan will begin filing a single annual report on Form 5500 for the 2014 Plan Year.

The Plan is being amended and restated at this time effective January 1, 2014 to make certain administrative changes and to clarify eligibility and coverage under the Plan.

EXHIBIT 10  Page 2  SUF

## TABLE OF CONTENTS

| | | |
|---|---|---|
| **ARTICLE I** | **DEFINITIONS AND CONSTRUCTION** | 1 |
| 1.1 | Definitions | 1 |
| 1.2 | Number and Gender | 13 |
| 1.3 | Miscellaneous Construction | 13 |
| 1.4 | Reference to Plan Includes Component Programs | 14 |
| 1.5 | Incorporation of Component Programs | 14 |
| 1.6 | Inconsistent Provisions in Component Program Documents | 14 |
| 1.7 | Effect Upon Other Plans | 14 |
| 1.8 | Jurisdiction | 14 |
| 1.9 | Severability | 14 |
| **ARTICLE II** | **ESTABLISHMENT AND PURPOSE** | 15 |
| 2.1 | Establishment and Purpose | 15 |
| 2.2 | Intention to be Welfare Benefit Plan | 15 |
| 2.3 | Intention to be Cafeteria Plan | 15 |
| **ARTICLE III** | **PARTICIPATION** | 16 |
| 3.1 | Commencement of Participation | 16 |
| 3.2 | Enrollment in Component Programs | 16 |
| 3.3 | Amending or Changing Coverage; Re-enrollment | 16 |
| 3.4 | Termination of Participation | 16 |
| 3.5 | Dependent Coverage | 16 |
| 3.6 | Participation While on Leave | 17 |
| 3.7 | Enrollment Without Regard to Medicaid or Medicare Eligibility | 19 |
| 3.8 | Special Requirements for Health Care Components | 19 |
| 3.9 | Correction of Coverage or Enrollment Error | 19 |
| 3.10 | Notice of Creditable Coverage | 20 |
| **ARTICLE IV** | **CAFETERIA PLAN PROVISIONS** | 21 |
| 4.1 | Election of Cash or Qualified Benefits | 21 |
| 4.2 | Annual Election Procedure | 21 |
| 4.3 | Election Changes by Plan Administrator | 22 |
| 4.4 | Election Revocation and Changes During the Plan Year | 22 |
| 4.5 | Automatic Termination of Election | 26 |
| 4.6 | Maintenance of and Adjustments to Flexible Spending Accounts | 26 |
| 4.7 | Limitation of Article | 26 |
| **ARTICLE V** | **COBRA** | 27 |
| 5.1 | Continuation of Coverage | 27 |
| 5.2 | Qualifying Event and Loss of Coverage | 27 |
| 5.3 | Qualified Beneficiaries | 28 |
| 5.4 | Notice Requirements | 28 |
| 5.5 | Election Requirements | 30 |
| 5.6 | Cost of Coverage | 30 |
| 5.7 | Period of Coverage | 31 |
| 5.8 | Termination of Coverage | 32 |
| 5.9 | Rights and Obligations of COBRA Beneficiary | 33 |

EXHIBIT 10  Page 3  SUF

| | | | |
|---|---|---|---|
| 5.10 | | Applicability of Article | 33 |
| 5.11 | | Statutory Conflict | 34 |
| **ARTICLE VI** | | **COORDINATION OF BENEFITS** | **35** |
| 6.1 | | Coordination With Other Plans | 35 |
| 6.2 | | Coordination With Medicare | 35 |
| 6.3 | | Limitation on Coordination of Benefits | 35 |
| 6.4 | | Right to Receive and Release Information | 36 |
| 6.5 | | Corrective Payment | 36 |
| 6.6 | | Right of Recovery | 36 |
| 6.7 | | Effect of Medicaid, Medicare or CHIP Eligibility | 36 |
| 6.8 | | Coordination with Component Program Document | 36 |
| **ARTICLE VII** | | **SUBROGATION** | **37** |
| 7.1 | | Plan's Right of Subrogation | 37 |
| 7.2 | | Amounts Recoverable | 37 |
| 7.3 | | Limitation on Plan's Recovery | 38 |
| 7.4 | | Enforcement | 38 |
| 7.5 | | Obligations of Participants | 38 |
| 7.6 | | Waiver | 39 |
| 7.7 | | Coordination with Component Program Document | 39 |
| **ARTICLE VIII** | | **CLAIMS PROCEDURE** | **40** |
| 8.1 | | Claims For Benefits | 40 |
| 8.2 | | Filing A Claim for Benefits | 40 |
| 8.3 | | Processing of Benefit Claim | 40 |
| 8.4 | | Notification of Adverse Determination Regarding All Claims | 41 |
| 8.5 | | Timing of Adverse Benefit Determination Notification Regarding Health Claims | 43 |
| 8.6 | | Timing of Adverse Benefit Determination Notification Regarding Disability Claims | 44 |
| 8.7 | | Timing of Adverse Benefit Determination Notification Regarding Non-Health and Non-Disability Claims | 44 |
| 8.8 | | Review of Adverse Benefit Determination Regarding Health and Disability Claims | 45 |
| 8.9 | | Review of Adverse Benefit Determination Regarding Non-Health and Non-Disability Claims | 46 |
| 8.10 | | Notification of Benefit Determination on Review Regarding All Claims | 47 |
| 8.11 | | Timing of Notification Regarding Review of Health Claims | 48 |
| 8.12 | | Timing of Notification Regarding Review of Disability Claims | 48 |
| 8.13 | | Timing of Notification Regarding Review of Non-Health and Non-Disability Claims | 49 |
| 8.14 | | Exhaustion Required | 49 |
| 8.15 | | External Review of Health Claims | 49 |
| 8.16 | | Payment of Benefits | 54 |
| 8.17 | | Authorized Representatives | 55 |
| **ARTICLE IX** | | **FUNDING OF PLAN** | **56** |
| 9.1 | | Source of Benefits | 56 |

EXHIBIT 10  Page 4  SUF

| | | |
|---|---|---|
| 9.2 | Premiums | 56 |
| 9.3 | Participant Contributions | 56 |
| **ARTICLE X** | **ADMINISTRATION OF PLAN** | **57** |
| 10.1 | Plan Administrator | 57 |
| 10.2 | Discretion to Interpret Plan | 57 |
| 10.3 | Powers and Duties | 57 |
| 10.4 | Expenses; Records | 58 |
| 10.5 | Delegation by Plan Administrator | 58 |
| 10.6 | Reliance on Reports, Certificates and Participant Information | 59 |
| 10.7 | Administrative Provider | 59 |
| 10.8 | Fiduciary Duty | 60 |
| **ARTICLE XI** | **AMENDMENT AND TERMINATION OF PLAN** | **61** |
| 11.1 | Right to Amend | 61 |
| 11.2 | Right to Terminate; Automatic Termination | 61 |
| 11.3 | Effect of Amendment or Termination | 61 |
| 11.4 | Merger or Consolidation | 61 |
| **ARTICLE XII** | **MISCELLANEOUS PROVISIONS** | **62** |
| 12.1 | No Guarantee of Employment | 62 |
| 12.2 | Payments to Minors and Incompetents | 62 |
| 12.3 | No Vested Right to Benefits | 62 |
| 12.4 | Non-alienation of Benefits | 62 |
| 12.5 | Unknown Whereabouts | 62 |
| 12.6 | Participating Employers | 63 |
| 12.7 | Notice and Filing | 63 |
| 12.8 | Incorrect Information, Fraud, Concealment, or Error | 63 |
| 12.9 | Medical Responsibilities | 64 |
| 12.10 | Compromise of Claims | 64 |
| 12.11 | Electronic Administration | 64 |
| 12.12 | Qualified Medical Child Support Orders | 64 |
| **ARTICLE XIII** | **FMLA COVERAGE** | **66** |
| 13.1 | Article Controls | 66 |
| 13.2 | FMLA Coverage | 66 |
| 13.3 | FMLA Leave | 66 |
| 13.4 | Participant Contributions | 67 |
| 13.5 | Termination of FMLA Coverage | 67 |
| 13.6 | Recovery of Certain Contributions by Employer | 68 |
| 13.7 | Reinstatement of Health Care Component Coverage | 69 |
| **ARTICLE XIV** | **USERRA** | **70** |
| 14.1 | Purpose of Article | 70 |
| 14.2 | USERRA Coverage | 70 |
| 14.3 | USERRA Leave | 70 |
| 14.4 | Contributions | 70 |
| 14.5 | Termination of USERRA Coverage | 71 |
| 14.6 | Recovery of Certain Contributions by Employer | 71 |

EXHIBIT 10  Page 5  SUF

14.7     Reinstatement of Plan Coverage.................................................................71
14.8     Injuries or Sicknesses Incurred in Performance of Service..........................72

**ARTICLE XV      HIPAA PRIVACY COMPLIANCE .............................................73**

15.1     Scope of Article ...........................................................................................73
15.2     Provision of PHI to the Company Pursuant to an Authorization ....................73
15.3     Provision of SHI or Enrollment Information to the Company.........................73
15.4     General Provision of PHI to the Company ...................................................74
15.5     Adequate Separation ...................................................................................75
15.6     Privacy Officer.............................................................................................76
15.7     Contact Person ...........................................................................................77
15.8     Disciplinary Proceedings .............................................................................77
15.9     Implementation Authority ............................................................................78
15.10    Indemnification............................................................................................78

**ARTICLE XVI     HIPAA SECURITY COMPLIANCE .........................................79**

16.1     Purpose of Article XVI .................................................................................79
16.2     Implementation of Security Standards.........................................................79
16.3     Provision of Electronic Protected Health Information to the Company ..........80
16.4     Security Officer............................................................................................80
16.5     Implementation Authority ............................................................................80
16.6     Indemnification............................................................................................81

**ARTICLE XVII    NOTIFICATION OF BREACH OF UNSECURED PHI......................82**

17.1     Purpose of Article XVII ................................................................................82
17.2     Breach of Unsecured PHI............................................................................82
17.3     Definitions...................................................................................................82
17.4     Assessment of Potential Breach of Unsecured PHI ......................................83
17.5     Notification to Individuals ............................................................................83
17.6     Notification to the Secretary ........................................................................84
17.7     Notification to the Media for Breach Involving More than 500
         Residents of a State or Jurisdiction .............................................................84
17.8     Law Enforcement Delay ..............................................................................85
17.9     Compliance with Notice Requirements by Business Associate.....................85
17.10    Other HIPAA Requirements Applicable to Breach Notification.....................85

**ARTICLE XVIII   HEALTH CARE FLEXIBLE SPENDING ACCOUNT PROGRAM ...............86**

18.1     Establishment of Plan .................................................................................86
18.2     Definitions...................................................................................................86
18.3     Participation ................................................................................................87
18.4     Forfeitures...................................................................................................87
18.5     Limitation on Allocations..............................................................................87
18.6     Nondiscrimination Requirements..................................................................88
18.7     Coordination With Cafeteria Component Program.........................................88
18.8     Health Care Flexible Spending Account Claims ...........................................88

**ARTICLE XIX     DEPENDENT CARE FLEXIBLE SPENDING ACCOUNT PROGRAM .........90**

19.1     Establishment of Program ...........................................................................90
19.2     Definitions...................................................................................................90

iv

EXHIBIT 10  Page 6  SUF

19.3  Dependent Care Flexible Spending Accounts ...........................................91
19.4  Increases in Dependent Care Flexible Spending Accounts .....................91
19.5  Decreases in Dependent Care Flexible Spending Accounts.....................91
19.6  Allowable Dependent Care Assistance Reimbursement.............................92
19.7  Annual Statement of Benefits .................................................................92
19.8  Forfeitures.............................................................................................92
19.9  Limitation on Payments ........................................................................92
19.10 Nondiscrimination Requirements............................................................92
19.11 Coordination With Cafeteria Component Program.................................93
19.12 Dependent Care Flexible Spending Account Claims .............................93

**ARTICLE XX**  **HEALTH SAVINGS ACCOUNT** ................................................**95**

20.1  Participation .........................................................................................95
20.2  Establishment of Health Savings Account .............................................95
20.3  Contributions; Limits............................................................................95
20.4  Election Revocation and Changes During the Plan Year.........................96
20.5  Tax Treatment.......................................................................................96

**APPENDIX A**  **DESIGNATION OF COMPONENT PROGRAMS**........................**A-1**

**APPENDIX B**  **CORE BENEFITS PACKAGE** .................................................**B-1**

**APPENDIX C**  **HEALTH SAVINGS ACCOUNT LIMITATIONS** ..........................**C-1**

**APPENDIX D**  **PARTICIPATING EMPLOYERS** ...............................................**D-1**

**APPENDIX E**  **SUMMARY OF ELIGIBILITY REQUIREMENTS**.........................**E-1**

**APPENDIX F**  **COMPONENT PROGRAM DOCUMENTS**.................................**F-1**

EXHIBIT 10  Page 7  SUF

# ARTICLE I

## DEFINITIONS AND CONSTRUCTION

### 1.1    Definitions

The following capitalized terms have the respective meanings set forth below, unless the context clearly indicates otherwise:

(a)    **Accidental Death and Dismemberment Program**:  The Component Program providing accidental death and dismemberment benefits to Covered Persons.

(b)    **Administrative Agreement**:  The agreement entered into with each individual or entity providing administrative services with respect to one or more Component Programs.

(c)    **Administrative Provider**:   Any individual or entity operating under an Administrative Agreement to provide administrative services with respect to any benefits offered under one or more of the Component Programs.  In the event that an Administrative Provider is not appointed with respect to a Component Program, the Plan Administrator will perform the duties of such Administrative Provider.

(d)    **Adverse Benefit Determination**:  Any denial, reduction or termination of or failure to provide or make payment (in whole or in part) for a Plan benefit, including any denial, reduction, termination or failure to provide or make payment that is based on a determination of a Claimant's eligibility to participate in the Plan, and including with respect to health benefits a denial, reduction, termination or failure to provide or make payment resulting from the application of any utilization review, as well as the failure to cover an item or service for which benefits are otherwise provided because it is determined to be experimental, investigational or not medically necessary or appropriate.   Further and with respect to health benefits, any reduction or termination of an ongoing course of treatment prior to its scheduled expiration will be treated as an Adverse Benefit Determination regarding a Concurrent Care Claim, and a rescission of coverage (whether or not the rescission has an adverse effect on any particular benefit at the time) will be treated as an Adverse Benefit Determination.   Further, any invalidation of a claim for failure to furnish written proof of loss or to comply with the claim submission procedure will be treated as an Adverse Benefit Determination.

(e)    **Advisor**: A full-time sales representative with the Company who is fully licensed with both an active securities license and an active insurance license.

(f)    **Affiliate**:  Any entity that is a member of the same group of affiliated entities as the Company within the meaning of sections 414(b), (c) or (m) of the Code.

(g)    **Alternate Recipient**:  Any Child of a Participant who has been determined to be eligible for coverage under a Component Program under the terms of a QMCSO as defined under ERISA section 609 in accordance with Section 12.12 of the Plan.

EXHIBIT 10  Page 8  SUF

(h)    **Benefits Committee**: The committee appointed by the Board and having the responsibilities delegated in the Board's discretion in accordance with Section 10.5.

(i)    **Board**: The Board of Directors of Waddell & Reed, Inc.

(j)    **Business Associate**: An individual or entity, other than an Employee of the Company or a Participating Employer, that provides services to the Health Care Components of the Plan and accesses PHI in connection with such services, such as an Administrative Provider or utilization review organization.

(k)    **Business Travel Accident Insurance Program**: The Component Program providing business travel accident insurance benefits to Covered Persons.

(l)    **Cafeteria Component Program:** Each Component Program in which Participants pay for benefits on a pre-tax basis or after-tax basis (as applicable) pursuant to section 125 of the Code. Specifically, the Cafeteria Component Programs are to the extent applicable: (i) the Medical Benefit Program; (ii) the Dental Benefit Program; (iii) the Vision Benefit Program; (iv) Health Care Flexible Spending Account Program; (v) Dependent Care Flexible Spending Account Program, (vi) the Health Savings Account and (vii) any other benefit program sponsored by the Company with respect to which Eligible Employees contribute on a pre-tax basis pursuant to an election under section 125 of the Code. As required by COBRA, FMLA, USERRA or other applicable law, Participants may also pay for benefits under the Cafeteria Component Programs on an after-tax basis as provided in this Plan.

(m)    **Certificate of Creditable Coverage:** The certification regarding a Covered Person's Creditable Coverage provided pursuant to HIPAA.

(n)    **Change in Status**: Includes any of the following, except as otherwise provided by a Component Program:

    (i)    Events that change an Eligible Employee's, Advisor's or Director's legal marital status, including marriage, death of Spouse, divorce, legal separation or legal annulment;

    (ii)    Establishment or dissolution of a domestic partnership;

    (iii)    Events that change an Eligible Employee's, Advisor's or Director's number of Children, including birth, adoption, placement for adoption, placement of a foster Child, or death of a Child or a change in the Eligible Employee's, Advisor's or Director's marital status;

    (iv)    A termination or commencement of employment or a change in employment/eligibility status (*i.e.*, if there is a change in an individual's employment/eligibility status with the consequence that the individual becomes or ceases to be eligible under the applicable plan, then the change constitutes a change in employment/eligibility status) of the Eligible Employee, Advisor, Director, Spouse, Domestic Partner or Child;

    (v)    A reduction or increase in hours of employment by the Eligible Employee, Spouse, Domestic Partner or Child, including a switch between part-time

2

EXHIBIT 10  Page 9  SUF

and full-time status, a strike or lockout, or a commencement or return from an unpaid leave of absence;

(vi)  An event that causes a Dependent to satisfy or cease to satisfy the requirements for coverage due to attainment of age, student status or any similar circumstance as may be provided in the applicable Component Program;

(vii)  A change in the place of residence or work in accordance with the regulations under section 125 of the Code that results in a gain or loss of medical benefit plan network eligibility of the Eligible Employee, Spouse, Domestic Partner or Child;

(viii)  The loss of health coverage or addition of a Dependent that gives rise to the applicability of the special enrollment rights provided in section 9801(f) of the Code or the loss of coverage by an Employee, Spouse or other Dependent under group health coverage sponsored by a governmental or educational institution, including (i) a State children's health insurance program, (ii) a medical program of an Indian tribal government, the Indian Health Service or a tribal organization, (iii) a State health benefits risk pool, or (iv) a foreign government group health plan;

(ix)  An election change made by the Spouse, former Spouse or Child under another employer-sponsored plan, including an annual enrollment election or a permissible change in status election under such plan;

(x)  The loss of eligibility under a Medicaid plan or state Children's Health Insurance Program ("CHIP") or eligibility for premium assistance under a Medicaid plan or state CHIP (including under any waiver or demonstration project conducted under or in relation to those plans) that gives rise to the applicability of the special enrollment rights provided in section 9801(f)(3) of the Code; or

(xi)  Such other events that the Plan Administrator may determine are deemed to constitute a Change in Status under the regulations or rulings of the Internal Revenue Service.

(o)  **Child or Children:**  the natural child, foster child (if the child has been placed with the Employee by an authorized placement agency or by judgment, decree or other order of any court of competent jurisdiction), stepchild, child under legal guardianship, a child who is legally adopted or lawfully placed for adoption, child of a Domestic Partner, or a child required to be provided coverage by a QMCSO of an Eligible Employee, Advisor or Director who is eligible to participate in a Component Program.

(p)  **Claimant:**  A Participant, Spouse, Dependent, beneficiary or an authorized representative of such individual who has filed or desires to file a claim for a Plan benefit.

(q)  **COBRA:**  The Consolidated Omnibus Budget Reconciliation Act of 1985, as amended, and any regulations or rulings issued thereunder.

(r)  **COBRA Beneficiary:**  Each (i) qualified beneficiary within the meaning of Section 5.3 who has elected continuation of coverage pursuant to Article V and

3

EXHIBIT 10  Page 10  SUF

thereby is covered under the Plan and (ii) other individual covered under the Plan pursuant to Section 5.9(a).  A Domestic Partner will not constitute a COBRA Beneficiary.

**(s)**     **Code:**  The Internal Revenue Code of 1986, as amended, and any regulations or rulings issued thereunder.

**(t)**     **Company:**  Waddell & Reed, Inc.

**(u)**     **Compensation:**   Unless otherwise specifically provided in a Component Program, the total of all wages, salaries, fees, and other amounts that are paid in cash by the Employer to or for the benefit of a Participant for services performed for the Employer, which are required to be reported on the Participant's federal income tax withholding statement (Form W-2).

**(v)**     **Component Program:**  A benefit program selected by the Company and listed in Appendix A to the Plan.  The types and/or terms of the Component Programs may be revised from time to time without the need for a formal amendment to the Plan, in which case a revised Appendix A will be attached hereto.

**(w)**     **Component Program Document:**   The written documents setting forth the terms of the applicable Component Program, the provisions of which are incorporated herein by this reference.

**(x)**     **Concurrent Care Claim:**  Any request to extend an ongoing course of a health benefit treatment beyond the period of time or number of treatments that has previously been approved under the Plan.

**(y)**     **Condition:**  Any sickness, injury or other mental or physical malady that may give rise to the payment of benefits under the Plan.

**(z)**     **Contact Person:**  The person appointed to serve as the HIPAA privacy contact person pursuant to the Privacy Manual for purposes of inquiries and complaints.

**(aa)**    **Covered Dependent:**  Each Dependent who is covered under the Plan pursuant to Section 3.5.

**(bb)**    **Covered Person:**   Each Participant, Covered Dependent and COBRA Beneficiary.  For purposes of Article XV and Article XVI regarding HIPAA, "Covered Person" means an Eligible Employee, Advisor, Director, Spouse, Domestic Partner or Dependent that is enrolled in one or more of the Health Care Components.

**(cc)**    **Creditable Coverage:**  Any of the following types of coverage:  (i) individual health insurance; (ii) group health insurance; (iii) Medicare or Medicaid; (iv) federal medical care provided for members of the uniformed services; (v) a medical program of the Indian Health Services or a tribal organization; (vi) a state health benefits risk pool; or (vii) a health benefit plan under section 5(e) of the Peace Corps Act. Creditable Coverage will be used to reduce any pre-existing condition limitation period as provided in a Component Program Document.

Creditable Coverage does not include:  (A) limited scope dental/vision insurance; (B) long-term care insurance; (C) non-coordinated benefits for a specific disease or illness (such as cancer-only coverage) or fixed dollar indemnity insurance

4

EXHIBIT 10  Page 11  SUF

(such as $100/day hospital insurance); (D) supplemental insurance (such as Medicare supplemental insurance or CHAMPUS supplements); (E) coverage for on-site medical clinics; (F) accident only or disability insurance; (G) liability insurance, such as automobile insurance, or supplemental liability insurance; (H) workers compensation or similar insurance; (I) automobile medical payment insurance; or (J) credit-only insurance, such as mortgage insurance.

(dd)   **Critical Illness Program**: The Component Program providing critical illness benefits to Covered Persons.

(ee)   **Dental Benefit Program**:  The Component Program providing group dental benefits to Covered Persons, which may be a separate program or may be provided as part of the Medical Benefit Program.

(ff)   **Dependent**:  Each (i) Spouse of a Participant, (ii) Child of a Participant, (iii) Domestic Partner of a Participant, and (iv) other dependent of a Participant within the meaning of section 152 of the Code who is eligible for coverage under a Component Program. However, for purposes of the Health Care Components and the Dependent Care Flexible Spending Account Program, whether a person is a dependent under section 152 of the Code will be determined without regard to sections 152(b)(1) and (b)(2) of the Code, which contain certain exceptions to the definition of dependent, and without regard to section 152(d)(1)(B) of the Code, which contains a gross income limitation for a qualifying relative.  Further, for purposes of the Health Care Components, a Dependent will include an adult Child up to age 26 of a Participant as provided in the PPACA without regard to the child's financial dependency, residency, student status, employment or marital status.  In addition, a Dependent will include an unmarried incapacitated Child, regardless of age, provided that the Child is not able to support himself and with respect to whom a physician has determined, prior to the Child's attainment of age 26, that the Child is mentally or physically incapable of supporting himself.  A Dependent does not include a Spouse or Child that resides outside of the United States, a Spouse or Child in the armed forces of any country, or a person who himself is a covered Participant or is already considered a Dependent of another covered Participant (*i.e.*, the Dependent will be considered the Dependent of only one such person).

(gg)   **Dependent Care Flexible Spending Account Program**:  The Dependent Care Flexible Spending Account Program, set forth in Article XVIII, which is a Component Program providing a flexible spending account for the reimbursement of dependent-care expenses, pursuant to sections 125 and 129 of the Code.

(hh)   **Director**: A member of the Board of Directors of Waddell & Reed Financial, Inc.

(ii)   **Domestic Partner**: An individual with whom the Participant has a committed relationship, and which satisfies all of the following: (i) the committed relationship has lasted for a period of at least 12 months, and is intended to last indefinitely; (ii) both the Participant and such individual are each other's sole domestic partner; (iii) neither the Participant nor such individual is legally married to other people; (iv) such individual is not related to the Participant by blood to a degree that would prohibit a lawful marriage in the state in which the Participant resides; (v) both the Participant and such individual have shared the same principal residence for a period of at least 12 continuous months, and have shared

EXHIBIT 10  Page 12  SUF

responsibility for maintaining such household; (vi) both the Participant and such individual are at least eighteen (18) years of age; (vii) both the Participant and such individual have shared financial responsibilities; and (viii) both the Participant and such individual are not in this relationship solely for the purpose of obtaining benefits. A Domestic Partner will be eligible for coverage under the Plan as a Dependent as of the date of filing an affidavit of domestic partnership with the Employer if the Participant is eligible or enrolled at that time.

(jj)    **EBSA**: The Employee Benefits Security Administration.

(kk)    **Effective Date**:  January 1, 2014, except as otherwise stated herein or required by law.

(ll)    **Election Period**:  The period prior to the first day of the Plan Year during which Eligible Employee's may enroll in, disenroll from or change their Component Program elections for such Plan Year.

(mm)    **Electronic Media**:

  (i)    Electronic storage media on which data is or may be recorded electronically, including, for example, devices in computers (hard drives) and any removable/transportable digital memory medium, such as magnetic tape or disk, optical disk or digital memory card; or

  (ii)    Transmission media used to exchange information already in electronic storage media.  Transmission media include, for example, the Internet, extranet or intranet, leased lines, dial-up lines, private networks, and the physical movement of removable/transportable electronic storage media. Certain transmissions, including of paper, via facsimile, and of voice, via telephone, are not considered to be transmissions via electronic media, because the information being exchanged did not exist in electronic form immediately before the transmission.

(nn)    **Electronic Protected Health Information or ePHI**:  PHI that is created, received, maintained or transmitted in Electronic Media by or on behalf of the Plan.

(oo)    **Eligible Employee/Advisor/Director**:  Each Employee, Advisor or Director who is eligible for coverage under a Component Program.  The eligibility provisions for each of the Component Programs are set forth in the summary at Appendix E and in the Component Program documents attached at Appendix F.   The Component Program eligibility requirements and the Component Program documents may be revised from time to time without the need for a formal amendment to the Plan, in which case a revised Appendix E or F will be attached hereto.

(pp)    **Employee**:  Each individual classified by the Employer as a common-law employee and who is on the Employer's W-2 payroll.  Employees do not include the following:

  (i)    Leased employees or individuals classified as contract workers, independent contractors, temporary employees or casual employees;

6

EXHIBIT 10  Page 13  SUF

(ii) Individuals who perform services for the Employer but are paid by a temporary or other employment or staffing agency; or

(iii) Individuals who are self-employed, partners in a partnership, or more than 2% shareholders in a Subchapter S corporation.

An Employee under the Plan will include a Retired Employee.

**(qq)** **Employee Assistance Program**:  The Component Program, if any, providing employee assistance benefits to Covered Persons, which may be a separate program or may be provided as part of the Medical Benefit Program.

**(rr)** **Employer**:  The Company and each Participating Employer.

**(ss)** **ERISA**:  The Employee Retirement Income Security Act of 1974, as amended and any regulations or rulings issued thereunder.

**(tt)** **Flexible Spending Account Programs**:  The Dependent Care Flexible Spending Account Program and the Health Care Flexible Spending Account Program.

**(uu)** **FMLA**:  The Family and Medical Leave Act of 1993, as amended, and any regulations or rulings issued thereunder.

**(vv)** **FMLA Coverage**:  Coverage under a Health Care Component during an FMLA Leave as provided pursuant to Section 13.2.

**(ww)** **FMLA Leave**:  A leave of absence taken pursuant to the FMLA as described in Section 13.3.

**(xx)** **General Purpose Health Care Flexible Spending Account Plan**: The plan of benefits that provides for reimbursement of eligible Medical Expenses for Participants who do not participate in the Plan's High Deductible Health Plan option.

**(yy)** **Health Care Components**:  The designated health care components of the Plan, which consist of the following group health plans within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA to the extent applicable:  (i) the Medical Benefit Program, including Prescription Benefit Coverage; (ii) the Dental Benefit Program; (iii) the Vision Benefit Program; (iv) the Health Care Flexible Spending Account Program; (v) the Employee Assistance Program; and (vi) any other component that is offered under the Plan that provides "health care" within the meaning of HIPAA.

**(zz)** **Health Care Professional**:  A physician or other health care professional licensed, accredited or certified to perform specified health services consistent with State law.

**(aaa)** **Health Care Flexible Spending Account Program**:  The Health Care Flexible Spending Account Program, set forth in Article XII, which is a Component Program providing for the reimbursement of eligible Medical Expenses and comprised of the General Purpose Health Care Flexible Spending Account Plan and the Limited Purpose Health Care Flexible Spending Account Plan.

7

EXHIBIT 10  Page 14  SUF

**(bbb) Health Savings Account ("HSA"):** A savings account established and maintained by a trustee/custodian outside of the Plan to be used primarily for reimbursement of "qualified medical expenses" as defined in section 223(d)(2) of the Code.

**(ccc) High Deductible Health Plan:** A coverage option offered under the Plan's Medical Benefit Program that provides for medical benefits and participation in the Health Savings Account. A Participant in the High Deductible Health Plan may also participate in the Health Savings Account and the Limited Purpose Health Care Flexible Spending Account Plan.

**(ddd) HIPAA:** The Health Insurance Portability and Accountability Act of 1996, as may be amended from time to time. The privacy requirements of HIPAA are set forth in Article XV. The security provisions of HIPAA are set forth in Article XVI.

**(eee) HIPAA Regulations:** The regulations promulgated pursuant to HIPAA with respect to the privacy and security of PHI as set forth in 45 C.F.R. Parts 160 and 164 as in effect or as amended from time to time. Any reference to a section of the HIPAA Regulations will include such section as it may be subsequently amended, revised, redesignated or renumbered from time to time.

**(fff) HMO:** Any health maintenance organization or similar organization or network of individuals or organizations that has contracted to provide medical, mental and/or other health-related benefits to Participants and Covered Dependents.

**(ggg) Independent Fiduciary:** The person or entity retained by the Plan Administrator to perform the review of an Adverse Benefit Determination, who will be an individual other than (i) the individual who made the Adverse Benefit Determination that is the subject of the review and (ii) the subordinate of such individual.

**(hhh) Information System:** An interconnected set of information resources under the same direct management control that shares common functionality. A system normally includes hardware, software, information, data, applications, communications and people.

**(iii) Insurer:** Any insurance company that has contracted to provide benefits under a Component Program.

**(jjj) IRO:** An independent review organization accredited by URAC or by a similar nationally-recognized accrediting organization. The IRO must not be eligible for any financial incentives based on the likelihood that the IRO will support denial of benefits under the Plan.

**(kkk) Life Insurance Program:** The Component Program providing life insurance benefits to Covered Persons, including basic and supplemental life coverage.

**(lll) Limited Purpose Health Care Flexible Spending Account Plan:** The plan of benefits that provides for reimbursement of eligible Medical Expenses for Participants who participate in the Plan's High Deductible Health Plan and Health Savings Account options.

**(mmm) Long-Term Care Program:** The Component Program providing long-term care benefits to Covered Persons.

8

EXHIBIT 10  Page 15  SUF

**(nnn)**   **Long-Term Disability Program**:  The Component Program providing long-term disability benefits to Covered Persons.

**(ooo)**   **Medical Benefit Program**:  The Component Program providing group medical benefits, including prescription drug benefits, to Covered Persons.

**(ppp)**   **Medicare**:  The medical care benefits program provided under Title XVIII of the Social Security Act of 1965, as amended.

**(qqq)**   **Non-Health Care Components**:  Those Component Programs that are not Health Care Components: (i) Critical Illness Insurance Program; (ii) Sick Leave Program; (iii) Long-Term Disability Program, (iv) Accidental Death and Dismemberment Program; (v) Life Coverage Program; (vi) Business Travel Accident Insurance Program; (viii) the Dependent Care Flexible Spending Account Program; (ix) Severance Pay Program; (xi) Health Savings Account; (xi) Long-Term Care Program; and (xi) any other component that is offered under the Plan that does not provide "health care" within the meaning of HIPAA.

**(rrr)**   **Participant**:  Each Eligible Employee, Advisor or Director who is a participant in the Plan pursuant to Article III.

**(sss)**   **Participating Employer**:  Any Affiliate of the Company or any other entity permitted by law to do so that has adopted the Plan pursuant to Section 12.6.

**(ttt)**   **PHI**:  Protected health information (*i.e.*, individually identifiable health information that is protected pursuant to HIPAA and the HIPAA Regulations).

**(uuu)**   **Plan**:  The Waddell & Reed, Inc. Welfare Benefits Plan, as set forth herein and as the same may be amended from time to time.

**(vvv)**   **Plan Administrator**:  The administrator of the Plan, as set forth in Section 10.1.

**(www)** **Plan Year**:  The twelve-month period beginning on January 1 and ending on December 31.

**(xxx)**   **Post-Service Claim**:  Any claim for a Plan health benefit that is not a Pre-Service Claim.

**(yyy)**   **PPACA**: The Patient Protection and Affordable Care Act of 2010.

**(zzz)**   **PPO**:  Any preferred provider organization or other similar organization or arrangement with which the Employer has contracted to provide medical, mental and/or other health-related benefits—including dental, vision or pharmacy benefits—for Participants and Covered Dependents.

**(aaaa)** **Pre-Service Claim**:  Any claim for a Plan health benefit the terms of which condition receipt thereof, in whole or in part, on approval of the benefit in advance of obtaining medical care.

**(bbbb)** **Primary Plan**:  With respect to a Condition, if a Covered Person is:

    (i)   Covered under a plan (other than Medicare) of an employer other than the Employer that provides a benefit of the same type as the benefit

9

EXHIBIT 10  Page 16  SUF

provided under the Plan and that does not have a coordination of benefits provision, the Primary Plan is the other plan.

(ii)     Covered under a plan (other than Medicare) of an employer other than the Employer that provides a benefit of the same type as the benefit provided under the Plan and which has a coordination of benefits provision, in accordance with the following:

(A)     For a Condition incurred by a Participant (other than a Participant who is covered under the other plan as an eligible retiree and has been so covered for longer than his period of coverage under the Plan), the Primary Plan is the Plan;

(B)     For a Condition incurred by a Covered Dependent or a Participant who is covered under the other plan as an eligible retiree and who has been so covered for a period of time longer than the period of coverage under the Plan, if the Covered Dependent or the Participant is an active participant (either as an employee, former employee, retiree, director or former director) in the plan of an employer other than the Employer, the Primary Plan is the other plan;

(C)     For a Condition incurred by a Covered Dependent who is covered through COBRA under a plan other than the Plan, the Primary Plan is the Plan;

(D)     For a Condition incurred by a Covered Dependent who is a Child (other than a Child who is the stepchild of either the Eligible Employee or his Spouse) and who is a covered dependent under a plan of the employer of the Spouse, the Primary Plan is the plan covering the parent of the Child whose birthday falls earlier in the calendar year, except that, if the birthdays of both parents of the Child fall on the same day, the plan of the parent who has been an active participant in the plan for the longer period of time is the Primary Plan;

(E)     For a Condition incurred by a Covered Dependent who is a Child and is the stepchild of either the Eligible Employee or his Spouse, and who is a covered dependent under a plan of an employer other than the Employer, and whose natural parents were never married or whose natural or adoptive parents are divorced or legally separated, (1) the Primary Plan is the plan of the parent who by divorce decree, separation agreement, other legal document, or state law is designated primarily responsible for the medical, dental and other health care expenses of the Child, or (2) in the absence of designation by divorce decree, separation agreement, other legal document, or state law, (a) the Primary Plan is the plan of the parent who has the primary right to possession of the Child, or (b) in the absence of a plan described in Clause (a), the Primary Plan is the plan of the spouse of the parent described in Clause (a), if any, or (c) in the absence of a plan described in Clause (b), the Primary Plan is the plan of the

10

EXHIBIT 10  Page 17  SUF

parent who does not have the primary right to possession of the Child;

    (F)    For a Condition incurred by a COBRA Beneficiary who is an active participant (either as an employee, former employee, retiree, director or former director) in a plan other than the Plan, the Primary Plan is the other plan; and

    (G)    For a Condition incurred by a COBRA Beneficiary who is covered as a dependent under a plan other than the Plan, the Primary Plan is the other plan.

    (iii)    For a Covered Person who is eligible for Medicare, in accordance with the following:

    (A)    In all cases except those described in (B) below, the Primary Plan is Medicare; and

    (B)    In the case of a Condition incurred by a Covered Person for whom Medicare—based on rules of the Social Security Act of 1965, as amended (the "Social Security Act")—is required to be the Secondary Plan, the Primary Plan is the Plan.

**(cccc) Privacy Manual**:  The written policies and procedures adopted by the Company to comply with the privacy rules under the HIPAA Regulations.   The Privacy Manual and Security Manual may be consolidated into a single document.

**(dddd) Privacy Officer**:  The individual or entity appointed to serve as the Plan's HIPAA Privacy Officer under the Privacy Manual.

**(eeee) Privacy Rules**:  The privacy rules promulgated under HIPAA.

**(ffff) QMCSO**:  Any "qualified medical child support order" including any judgment, decree or order (including approval of a settlement agreement) issued by a court of competent jurisdiction which:

    (i)    Provides for child support with respect to a child of an Employee under the Plan or provides for health benefit coverage to such a child pursuant to a state domestic relations law (including a community property law) and relates to benefits under the Plan; or

    (ii)    Enforces a law relating to medical child support described in section 1908 of the Social Security Act (as added by section 13822 of the Omnibus Budget Reconciliation Act of 1993) with respect to a group health plan.

The term QMCSO also includes a National Medical Support Notice promulgated pursuant to section 401(b) of the Child Support and Performance Incentive Act of 1998.

**(gggg) Retired Employee**: Any former Eligible Employee who was employed full-time or part-time by the Employer who (i) has not reached Medicare eligibility; (ii) retired under the Employer's qualified retirement plan; and (iii) is making the required contributions as set forth by the Employer.  A Retired Employee will also include

EXHIBIT 10  Page 18  SUF

a retiree who was grandfathered as of January 1, 1989 where the Plan is treated as a Medicare supplement plan.

**(hhhh)** **Retired Advisor**: Any former Advisor who was a Participant in the Plan and who (i) has not reached Medicare eligibility; (ii) has met age and service requirements set forth by the Employer; and (iii) is making the required contributions as set forth by the Employer.

**(iiii)** **Secondary Plan**: With respect to a Condition, if a Covered Person covered under the Plan also (i) is covered under a plan (other than Medicare) of an employer other than the Employer and that other plan provides a benefit of the same type as the applicable benefit provided under the Plan, or (ii) is eligible for Medicare, then the "Secondary Plan" is the Plan, other plan, or Medicare that is not the Primary Plan.

**(jjjj)** **Security Incident**: The attempted or successful unauthorized access, use, disclosure, modification or destruction of information or interference with system operations in an Information System.

**(kkkk)** **Security Manual**: The written policies and procedures adopted by the Company to comply with the security rules under the HIPAA Regulations. The Security Manual and Privacy Manual may be consolidated into a single document.

**(llll)** **Security Officer**: The person appointed to serve as the Plan's HIPAA Security Officer under the Security Manual.

**(mmmm)** **Security or Security Measures**: All Administrative, Physical and Technical Safeguards in an Information System.

**(nnnn)** **Security Standards**: The security standards set forth in sections 164.306 (regarding general security standards), 164.308 (regarding Administrative Safeguards), 164.310 (regarding Physical Safeguards), 164.312 (regarding Technical Safeguards), 164.314 (regarding organizational requirements), and 164.316 (regarding policies and procedures and documentation requirements) of the HIPAA Regulations, individually or collectively, as the context requires.

**(oooo)** **Severance Pay Program**: The Component Program providing severance benefits.

**(pppp)** **SHI**: Summary health information (*i.e.*, information that summarizes the claims history, claims expense or type of claims experienced by Covered Persons under the Health Care Components of the Plan), as such term is described in section 164.504 of the HIPAA Regulations.

**(qqqq)** **Sick Leave Program**: The Component Program providing sick leave benefits to Covered Persons.

**(rrrr)** **Spouse**: The person lawfully married to a Participant, including a common-law spouse in any state that recognizes common-law marriage. Notwithstanding any provision of the Plan to the contrary, the term "Spouse" as used in the Plan and the Medical Benefit Component with respect to a Participant includes an individual of the same sex as such Participant if such Participant and such individual validly entered into a marriage in a domestic or foreign jurisdiction whose laws authorize the marriage of two individuals of the same sex, even if the

EXHIBIT 10  Page 19  SUF

couple is domiciled in a jurisdiction that does not recognize the validity of same-sex marriages.

**(ssss) Third Party:**  Any individual or entity who or which is or may be liable to a Covered Person for a Condition or for payment of damages or expenses related to a Condition.  This term includes first-party automobile insurance coverage such as personal-injury-protection/medical coverage and uninsured/underinsured motorist coverage of the Covered Person.

**(tttt)   Uniformed Person:**  A Participant or Eligible Employee who is eligible for protection under USERRA.

**(uuuu) URAC:** An independent, nonprofit organization well-known as a leader in promoting health care quality through its accreditation, education and measurement programs and that offers a wide range of quality benchmarking programs and services that keep pace with the rapid changes in the health care system.

**(vvvv) Urgent Care Claim:**  Any Plan health benefit claim for medical care or treatment with respect to which the application of the time periods otherwise applicable to such claim (i) could seriously jeopardize, as determined either by a physician with knowledge of the Claimant's medical condition or by the Administrative Provider (applying the judgment of a prudent layperson who possesses an average knowledge of health and medicine), the Claimant's life, health or ability to regain maximum function, or (ii) would subject the Claimant, in the opinion of a physician with knowledge of the Claimant's medical condition, to severe pain that cannot be adequately managed without the care or treatment that is the subject of the claim.

**(wwww)      USERRA:**  The Uniformed Services Employment and Reemployment Rights Act of 1994, as amended.

**(xxxx) USERRA Coverage:**  Coverage under a Health Care Component pursuant to USERRA as provided under Section 14.2.

**(yyyy) USERRA Leave:**  A leave of absence taken pursuant to USERRA as described in Section 14.3.

**(zzzz) Vision Benefit Program:**  The Component Program providing supplemental vision benefits to Covered Persons.

**1.2     Number and Gender**

Where appropriate herein, the singular includes the plural, and vice versa; the masculine gender includes the feminine gender, and vice versa.

**1.3     Miscellaneous Construction**

The headings of articles, sections and paragraphs herein are solely for convenience. All references herein to the capitalized terms "Articles," "Sections," "Paragraphs," "Subparagraphs," "Clauses" and the like are to this document unless otherwise indicated.  The terms "herein" and "hereof," as well as other similar compounds of "here" when appearing in the Plan document, refer to the entire Plan document and not to any particular part, unless the context clearly indicates otherwise.  The terms "includes" and

13

EXHIBIT 10  Page 20  SUF

"including" appearing herein mean "includes but is not limited to" and "including but not limited to," respectively.

**1.4      Reference to Plan Includes Component Programs**

Any reference to the Plan includes each Component Program unless otherwise indicated.

**1.5      Incorporation of Component Programs**

The Component Programs and the Component Program Documents in their entirety are incorporated herein by reference and made a part of the Plan.

**1.6      Inconsistent Provisions in Component Program Documents**

If any provision in a Component Program Document conflicts with, contradicts, or renders ambiguous any provision in this document, the provision in this document will control unless otherwise specifically provided.

**1.7      Effect Upon Other Plans**

Except to the extent provided herein, nothing in the Plan will be construed to affect the provisions of any other plan maintained by the Employer, including a plan intended to comply with the qualification provisions of sections 401(a) and 501(a) of the Code.

**1.8      Jurisdiction**

Except to the extent ERISA or any other federal law applies to the Plan and preempts state law, the Plan will be construed, enforced and administered according to the laws of the State of Kansas.

**1.9      Severability**

If any provision of the Plan is held illegal, invalid or unenforceable for any reason, that holding will not affect the remaining provisions of the Plan. Instead, the Plan will be construed and enforced as if the illegal, invalid or unenforceable provision had not been included herein.

EXHIBIT 10  Page 21  SUF

## ARTICLE II

## ESTABLISHMENT AND PURPOSE

**2.1    Establishment and Purpose**

The Company has adopted and established the Plan for the purpose of providing the benefits under and coordinating the administration of the Component Programs, which provide certain health, accident, life, disability and other welfare benefits for Eligible Participants and their Dependents, where applicable.

**2.2    Intention to be Welfare Benefit Plan**

The Company intends the Plan to be an employee welfare benefit plan under section 3(1) of ERISA, to the extent the benefits provided by each Component Program so permit.  If any benefit provided under a Component Program is determined not to be a benefit eligible to constitute an employee welfare benefit plan under section 3(1) of ERISA, such a determination will not prevent the remainder of the Plan from qualifying as an employee welfare benefit plan within the meaning of such section.

**2.3    Intention to be Cafeteria Plan**

The Company intends the Plan to provide Eligible Employees a choice between taxable compensation (cash) and benefits with respect to the Cafeteria Component Programs. The Company intends the Plan to qualify as a "cafeteria plan" under section 125 of the Code as to the Cafeteria Component Programs.   In no event will the Plan be administered or construed to constitute a plan of deferred compensation.  The cafeteria-plan provisions under this Plan are intended to be severable. If the Plan is determined to be discriminatory within the meaning of section 125 of the Code, then only the Cafeteria Component Programs will be affected thereby.

15

EXHIBIT 10  Page 22  SUF

## ARTICLE III

## PARTICIPATION

**3.1   Commencement of Participation**

Each Eligible Employee, Advisor or Director will become a Participant in the Plan coincident with the date the Eligible Employee, Advisor or Director becomes enrolled in and covered under one or more of the Component Programs. The eligibility provisions for each Component Program are set forth in the summary at Appendix E and in the Component Program documents attached at Appendix F. The Component Program eligibility requirements and the Component Program documents may be revised from time to time without the need for a formal amendment to the Plan, in which case a revised Appendix E or F will be attached hereto.

**3.2   Enrollment in Component Programs**

Rules of eligibility, enrollment, coverage and termination of coverage vary for each Component Program and are set forth in the respective Component Program Documents. Enrollment and coverage in a Component Program will be subject to any required premium payment applicable to such coverage and to all other terms and conditions set forth in the applicable Component Program Document.

**3.3   Amending or Changing Coverage; Re-enrollment**

Participants may amend or change coverage under a Component Program, or, where applicable, re-enroll in a Component Program, only when and as permitted herein or by the applicable Component Program.

**3.4   Termination of Participation**

Except as otherwise specifically provided by the Plan, a Participant will cease to participate in the Plan when any one of the following occurs:

(a)   The date the Participant is no longer enrolled in and covered under at least one Component Program;

(b)   The date the Participant fails to qualify as an Eligible Employee, Advisor or Director or the date the Participant loses coverage under all Component Programs as a result of his failure to qualify as an Eligible Employee, Advisor or Director, whichever is later; or

(c)   The effective date of termination of the Plan.

If a Participant ceases to participate in the Plan, he will be entitled to resume participating in accordance with Section 3.1.

**3.5   Dependent Coverage**

(a)   **Commencement of Participation.** Each Dependent will become a Covered Dependent under the Plan coincident with the date the Dependent becomes enrolled in and covered under at least one Component Program.

16

EXHIBIT 10  Page 23  SUF

(b) **Enrollment in Component Programs.** Rules of eligibility, enrollment, coverage and termination of coverage for Dependents in a Component Program vary for each Component Program and are set forth in the respective Component Program Documents.

(c) **Termination of Participation.** Plan coverage for a Participant's Covered Dependent will terminate when any one of the following occurs:

(i) The date the Dependent is no longer enrolled in and covered by at least one of the Component Programs;

(ii) The date the Covered Dependent ceases to qualify as a Dependent;

(iii) The date the Participant ceases to be enrolled in and covered under at least one Component Program covering the Covered Dependent; or

(iv) The effective date of termination of the Plan.

If coverage for a Covered Dependent terminates, he will be entitled to resume coverage in accordance with Paragraph (a) above.

(d) **QMCSOs.** Notwithstanding Paragraphs (a), (b), and (c) above, each Health Care Component will comply with a QMCSO, but only to the extent required by and under the conditions specified in section 609 of ERISA.

## 3.6 Participation While on Leave

(a) **FMLA and USERRA Leave.** As required by FMLA or USERRA, a Participant may elect to continue coverage under a Health Care Component during his leave. A Participant who elects such continuation is responsible for paying his share of the contributions for that coverage during the leave, and the Employer is obligated to pay its share during the leave. Further, to the extent permitted by the Component Program, a Participant may elect to continue all or a portion of his coverage under the contributory Non-Health Care Components during FMLA Leave or USERRA Leave. A Participant who desires to continue such other coverage must agree to pay his share of the contributions for such other coverage during the leave under one of the options described in this Section 3.6, and the Employer is obligated to pay its share during the leave.

The payment options available to a Participant during FMLA Leave or USERRA Leave are:

(i) **Paid Leave.** If the FMLA Leave or USERRA Leave is a paid leave and the Participant elects to continue his coverage, the Participant's contributions will continue to be paid by the method used prior to the leave.

(ii) **Unpaid Leave.** If the FMLA Leave or USERRA Leave is an unpaid leave and the Participant elects to continue his coverage, the Participant may elect to pay his contributions under any of the following options:

(A) **Pre-Pay Option.** The Participant may elect to pay his contributions prior to going on the leave. Contributions under the

17

EXHIBIT 10  Page 24  SUF

pre-pay option may be made on either a pre-tax or after-tax basis, as elected by the Participant.

(B) **Pay-As-You-Go Option**.   The Participant may elect to pay his contributions during the leave either on the same schedule as payments would be made if the Participant were not on leave, on the schedule applicable to COBRA premiums or on any other schedule as the Employer may establish consistent with regulations issued under the FMLA.  Contributions under the pay-as-you-go option will be made on an after-tax basis.

(C) **Catch-up Option**.  The Participant may elect, with the consent of the Employer, which consent will be granted on a non-discriminatory basis, to continue his benefits during the period of leave and, upon his return from the leave, to reduce his future Compensation in an amount sufficient to pay the contributions incurred during such leave.  Payments under this catch-up option will be made with pre-tax dollars, unless payments relating to coverage provided in one calendar year are withheld in a subsequent calendar year, in which case payments will be made with after-tax dollars.

With respect to Cafeteria Component Programs only, if the FMLA Leave or USERRA Leave will span two different Plan Years, the Participant may not elect the pre-pay option for that portion of the FMLA Leave or USERRA Leave that occurs during the next Plan Year; but, instead, must elect the pay-as-you-go option or catch-up option for the period of FMLA Leave or USERRA Leave during the next Plan Year.  Likewise, if the Participant elects the catch-up option, and the repayment period for the leave will span two Plan Years, the Participant must pay his portion of the cost of benefit coverage during the first Plan Year under that option on an after-tax basis.

If a Participant elects not to continue his coverage under the Health Care Flexible Spending Account Program during an FMLA Leave, then upon his return from that leave, the Participant will be given the option to either (1) resume coverage at the original level and make up the unpaid premiums or (2) resume coverage at a reduced level in which case the Participant's coverage amount under the Health Care Flexible Spending Account Program will be adjusted to reflect the period of his FMLA Leave during which he did not make contributions and his premium payments will resume at the original level.

Any continued coverage provided by the Employer pursuant to this Section in the case of both an FMLA Leave and a USERRA Leave will be in addition to any COBRA continuation coverage the Participant and his covered Spouse and Dependents are entitled to under section 4980B of the Code, section 609 of ERISA and Article V of this Plan.  The Participant and his covered Spouse and Dependents will be provided with notice of their COBRA rights, if any, at the end of the FMLA Leave regardless of whether they elect to continue coverage pursuant to this Section during such FMLA Leave.   In the case of a USERRA Leave, the Participant and his covered Spouse and Dependents will be provided with notice of their COBRA rights, if any, at the **earlier** of the date their continued coverage under this Section ends due to any reason (including a failure to pay premiums) or the end of the USERRA Leave. Where a Participant elects not to

EXHIBIT 10  Page 25  SUF

continue coverage pursuant to this Section or coverage ends due to a failure to pay his portion during such leave, coverage will be reinstated immediately upon his return to work.

(b)   **Non-FMLA and Non-USERRA Leave.**   During an unpaid leave of absence (which does not qualify as FMLA Leave or USERRA Leave or layoff), the Employer will continue to pay the cost of any non-contributory coverage, or core coverage, provided to the Participant under the Plan.  In addition, a Participant may elect to continue coverage under a Health Care Component during such leave or layoff.  A Participant who elects such continuation during a leave or layoff is responsible for paying his share of the contributions for the coverage during such leave or layoff, and the Employer is obligated to pay its share during the leave or layoff.  Further, to the extent permitted by the Non-Health Care Components, a Participant may elect to continue all or a portion of his contributory coverage under such other programs during the leave or layoff.  A Participant who desires to continue such other coverage must agree to pay his share of the contributions for the coverage during the leave or layoff under the pay-as-you-go option described in Paragraph (a) above, and the Employer will continue to pay its share for such other coverage during the leave or layoff.

A Participant who takes a paid leave of absence will not be eligible to revoke his coverage elections pursuant to this Paragraph (b); but, instead, such coverage and the associated Salary Redirections will remain in effect for the duration of such leave.

### 3.7   Enrollment Without Regard to Medicaid or Medicare Eligibility

Each Health Care Component will enroll an individual in the Plan without regard to the fact the individual is eligible for or is provided (a) medical assistance under a state plan for medical assistance approved pursuant to Title XIX of the Social Security Act, or (b) benefits under Part A or B of Medicare.

### 3.8   Special Requirements for Health Care Components

To the extent applicable, each Health Care Component will operate in compliance with the applicable requirements of subtitle K, chapter 100 of the Code (*i.e.*, the special enrollment and portability requirements of section 9801 of the Code, the health status nondiscrimination requirements of section 9802 of the Code, the guaranteed renewability requirements of section 9803 of the Code, the newborns and mothers protection provisions in section 9811 of the Code, the mental parity provisions of section 9812 of the Code, and the genetic information nondiscrimination provisions of section 9802(b)), which provisions are hereby incorporated herein by reference.  Each Health Care Component will also operate in compliance with section 713 of ERISA, regarding mandated coverage of post-mastectomy reconstructive surgery, to the extent applicable.

### 3.9   Correction of Coverage or Enrollment Error

If the Plan Administrator determines in its discretion that an error has occurred with respect to enrollment or coverage under the Plan, the Plan Administrator may correct any such error in any manner it deems appropriate; provided, however, that to the extent any such correction is not a permissible mid-year election change in accordance with Section 4.4 and section 125 of the Code and results in a cost increase or decrease to the affected Participant, such Participant will not be permitted to make a corresponding

EXHIBIT 10  Page 26  SUF

change to the amount of his pre-tax contributions elected for the Plan Year, and any increase in cost to such Participant resulting from such correction must be paid by the Participant on an after-tax basis.

**3.10    Notice of Creditable Coverage**

Coverage under the Plan constitutes Creditable Coverage.  The Plan Administrator or its delegate will provide each Covered Person with a Certificate of Creditable Coverage when (a) the Covered Person ceases to be covered by the Plan; (b) the Covered Person becomes entitled to COBRA continuation coverage; (c) the Covered Person's COBRA continuation coverage under the Plan ends; or (d) the Covered Person requests, provided such request is within twenty-four (24) months after the date he loses coverage under the Plan or becomes entitled to COBRA.  If the Covered Person's Plan coverage ends and he is entitled to COBRA continuation coverage, the Certificate of Creditable Coverage will be provided with or at a time consistent with the notice of COBRA continuation coverage rights.  Otherwise, the Certificate of Creditable Coverage will be provided as soon as administratively practicable after the Covered Person's termination of coverage or request.

EXHIBIT 10  Page 27  SUF

## ARTICLE IV

## CAFETERIA PLAN PROVISIONS

**4.1     Election of Cash or Qualified Benefits**

(a)     **Nature of Election**.  An Eligible Employee may elect either to (i) receive his Compensation for any Plan Year in cash or (ii) participate in one or more of the Cafeteria Component Programs and have his Compensation reduced on a pre-tax basis or after-tax basis, as applicable, with the amount of such reduction applied by the Employer toward his share of the cost of benefit coverage elected by the Eligible Employee under the Cafeteria Component Programs.  In addition, a qualified beneficiary who elects continuation coverage under COBRA pursuant to Article V will pay the premiums for such coverage pursuant to the provisions of this Article IV on an after-tax basis.  However, in no event will an Eligible Employee be allowed to elect a benefit that is offered under a Cafeteria Component Program if such benefit is not a "qualified benefit" within the meaning of section 125(f) of the Code, and any such election will be null and void.

(b)     **Election Procedure**.  An Eligible Employee's election to participate in a Cafeteria Component Program must be made according to the rules and procedures the Plan Administrator establishes.  The Eligible Employee's Compensation will be reduced in accordance with such election, and an amount equal to the reduction will be contributed by the Employer to cover the Eligible Employee's share of the cost of such benefit coverage under the Cafeteria Component Program.

**4.2     Annual Election Procedure**

(a)     **Open Enrollment**.  Prior to the commencement of each Plan Year, the Plan Administrator will allow each Eligible Employee who is already a Participant and each other Eligible Employee who will become a Participant as of the first day of the Plan Year to elect to reduce his Compensation on a pre-tax basis or after-tax basis (as provided by the applicable Component Program) equal to such Eligible Employee's share of the cost of benefit coverage elected under the applicable Cafeteria Component Program.  Such election will be effective as of the first day of the Plan Year.  Subject to an Eligible Employee's ability to revoke his election, as provided in Section 4.4, any Compensation reduction election will, where appropriate, be adjusted automatically in the event of a change in any such cost.  Each election must be completed and returned to the Plan Administrator on or before such date as the Plan Administrator will specify, but not later than the first day of the Plan Year.

(b)     **Failure to Elect**.  A new Eligible Employee who fails to make his election timely will be deemed to have elected to enroll only in the Company provided core benefits package as provided on Appendix B.  Appendix B may be revised from time to time without the need for a formal amendment to the Plan, in which case a revised Appendix B will be attached hereto.

(c)     **Carryover of Prior Election**.  At its discretion, the Employer will determine whether an Eligible Employee who was a Participant and who had an election in effect for the current Plan Year must make a new affirmative election for the subsequent Plan Year.  If the Employer determines that current elections will be

21

EXHIBIT 10  Page 28  SUF

carried over to the subsequent Plan Year, then an Eligible Employee who is a Participant and who fails to make a timely election for the subsequent Plan Year will be deemed to have made the same election and will be enrolled in the same Component Programs (except for the Flexible Spending Account Programs) as enrolled in the preceding Plan Year. An Eligible Employee must make a new election to participate in the Flexible Spending Account Programs for each Plan Year.

(d) **Mid-Year Election for New or Newly Eligible Employees**. As soon as practicable prior to an Eligible Employee (whether a new Employee or a newly eligible current Employee) first becoming eligible for a Cafeteria Component Program, the Plan Administrator will allow such person the opportunity to make the election described in Section 4.1. Except as provided otherwise in a Cafeteria Component Program, any such new or newly Eligible Employee who fails to make a timely election before the date he or she is eligible to participate in the Plan will be deemed to have elected to enroll only in the Company provided core benefits package. Where a newly Eligible Employee terminated employment and is rehired during the same Plan Year, a new election must be made if more than thirty days have passed since termination; however, if 30 or less days have passed since termination, the Eligible Employee's prior elections will be reinstated.

## 4.3 Election Changes by Plan Administrator

Either prior to or during any Plan Year, the Plan Administrator may, as to all or any class of Eligible Employees and under rules uniformly applicable to similarly situated Eligible Employees, change any election then in effect as to future reductions in Compensation, including a modification of elections by (a) "highly compensated participants," as such term is defined in section 125 of the Code, (b) "key employees," as such term is defined in section 416 of the Code, (c) "highly compensated individuals," as such term is defined in section 105(h) of the Code, or (d) highly compensated employees or principal shareholders or owners as defined in section 129 of the Code with or without the consent of such Eligible Employees if the Plan Administrator, in its discretion, determines that such reduction is necessary or advisable in order to satisfy the nondiscrimination requirements under provisions of the Code, including section 125 thereof, or to maintain the nontaxable status of benefits payable under the Cafeteria Component Programs.

## 4.4 Election Revocation and Changes During the Plan Year

(a) **General Rule**. Except as otherwise provided in this Section 4.4, an Eligible Employee who is a Participant may not revoke or change his election during a Plan Year. Similarly, an Eligible Employee who has elected not to participate in the Plan for a Plan Year may not change his election during such Plan Year (except as provided in this Section 4.4).

(b) **Changes in Status**. Subject to such limitations as the Plan Administrator may adopt by rule or regulation, an Eligible Employee who is a Participant may revoke or modify his election for the balance of the Plan Year only if such revocation or modification is on account of and consistent with a Change in Status. If such revocation or modification is on account of and consistent with a Change in Status, the Eligible Employee may make a new election for the remaining portion of the Plan Year; provided, however, that the new election must be on account of

EXHIBIT 10  Page 29  SUF

and consistent with the Change in Status. An Eligible Employee desiring to revoke or modify an election and, if applicable, to file a new election will so advise the Plan Administrator on the form and within the time period prescribed by the Plan Administrator. However, (i) a Change in Status on account of special enrollment rights under section 9801(f) of the Code (which apply in the event of the Eligible Employee's acquisition of a new Dependent or the loss of group health plan or health insurance coverage by the Eligible Employee, Spouse or Child) need not satisfy the above consistency requirements; (ii) with respect to a Component Program that provides life insurance benefits, an election to increase or decrease coverage is deemed to correspond with such Change in Status; and (iii) if an Eligible Employee who is a Participant has a deficit balance under the Dependent Care Flexible Spending Account Program or Health Care Flexible Spending Account Program, such Eligible Employee who is a Participant may not revoke or reduce his election under that plan on account of a Change in Status occurring during such Plan Year unless and until the deficit has been eliminated.

(c)    **Cost or Coverage Changes**. Except as provided otherwise in a Component Program, an Eligible Employee may file a written election with the Plan Administrator to revoke or modify (subject to the conditions below) any prior election and/or to make a new election with respect to the remaining portion of a Plan Year as each separate Component Program (other than the Health Care Flexible Spending Account Program) may allow on account of (1) a significant increase or decrease in the cost of coverage; (2) an improvement or addition of a coverage option; or (3) a significant curtailment in the coverage provided under a Component Program.

(i)    **Cost Changes**. If the cost of an Eligible Employee's portion of coverage under a Component Program increases or decreases during the Plan Year, such Eligible Employee's Compensation reductions will automatically be increased or decreased on a prospective basis, as applicable; provided, however, that if the increase or decrease is significant, the Eligible Employee may make an election as described in the next sentence. If the cost of a Component Program significantly increases or decreases during a period of coverage, an Eligible Employee may prospectively increase payments, decrease payments or revoke his election and, in lieu thereof, elect to receive on a prospective basis coverage under another Component Program option providing similar coverage. If no other Component Program option exists that provides similar coverage, the Eligible Employee may be permitted to revoke coverage altogether on account of a significant increase or decrease in the cost of coverage. The determination of whether a cost increase or decrease is "significant" will be made by the Plan Administrator.

(ii)    **Coverage Changes**. If the coverage under a Component Program is significantly curtailed or a new Component Program or coverage option is added during the Plan Year, an Eligible Employee may file a written election with the Plan Administrator to make the following election changes.

(A)    Significant curtailment without loss of coverage. If an Eligible Employee has a significant curtailment of coverage during the Plan Year that is not a loss of coverage, such as a significant increase in the deductible, the co-pay or the out-of-pocket cost

23

EXHIBIT 10  Page 30  SUF

sharing limit under a Health Care Component Program that is also a Cafeteria Component Program, any Eligible Employee who is participating in the Plan and receiving that coverage may revoke his election for that coverage and make a new election on a prospective basis under a Component Program option providing similar coverage.  The determination of whether a significant curtailment has occurred will be made by the Plan Administrator.  However, coverage under the Medical Benefit Program will be significantly curtailed only if there is an overall reduction in coverage provided to Eligible Employees generally.  Accordingly, in most cases, the loss of one particular physician in a network does not constitute a significant curtailment.

(B)     Significant curtailment with loss of coverage.  If an Eligible Employee has a significant curtailment of coverage during the Plan Year that is a loss of coverage, the Eligible Employee may revoke his election and on a prospective basis elect to either receive new coverage under another Component Program coverage option providing similar coverage or to drop coverage if no similar Component Program coverage option is available.  For this purpose, a loss of coverage means a complete loss of coverage under a Component Program or coverage option (including the elimination of a Component Program coverage option, an HMO ceasing to be available where the individual resides, or the individual losing all coverage under the option by reason of an overall lifetime or annual maximum).  In addition, the following events will also constitute a loss of coverage: (1) a substantial decrease in the medical care providers available under a coverage option under the Medical Benefit Program; (2) a reduction in the benefits for a specific type of medical condition or treatment with respect to an Eligible Employee (or Spouse or Dependent) currently in that course of treatment; or (3) any other similar fundamental loss of coverage.

(iii)   **Addition or improvement of benefit package option.**  If the Plan adds a new Component Program coverage option or Component Program, or if coverage under an existing Component Program or coverage option is significantly improved during a period of coverage, an Eligible Employee (whether or not he has previously made an election under the Plan or has previously elected the Component Program option) may revoke his election under the Plan and elect the newly added or improved Component Program option.  For example, if a new HMO option is added as a Medical Benefit Program coverage option during the Plan Year, the Plan may allow Eligible Employees to elect that option or any existing Medical Benefit Program option provided through the Plan. Conversely, if the Eligible Employee had previously made an election under the Plan, then the Eligible Employee may only elect to revoke his coverage and elect the same type of coverage (*i.e.*, "Employee only" or family coverage) under the Medical Benefit Program option.  For example, if prior to the beginning of the Plan Year, an Eligible Employee elects "Employee plus one" coverage under an indemnity plan coverage option provided under the Medical Benefit Program and during the year the Company adds an HMO option that provides "Employee only" or family coverage, the

EXHIBIT 10  Page 31  SUF

Eligible Employee may elect to revoke his election for indemnity coverage and elect family coverage under the HMO option on a prospective basis. The Eligible Employee could not, however, elect "Employee only" coverage under the HMO option because that election would not be consistent with the addition of the HMO option since, prior to such date, the Eligible Employee had "Employee plus one" coverage.

(d)     **FMLA or USERRA Leave**.  An Eligible Employee may revoke his election for the balance of the Plan Year upon his taking FMLA Leave or USERRA Leave.  In addition, upon his taking of, returning from or during, his FMLA Leave or USERRA Leave, an Eligible Employee may modify or revoke his election in accordance with the Change in Status rules in Paragraph (b) above and/or the cost or coverage changes rules in Paragraph (c) above.

(e)     **Medicare or Medicaid Entitlement**.  An Eligible Employee may file a written election with the Plan Administrator to revoke or modify any prior election and/or to make a new election with respect to the remaining portion of a Plan Year as each separate Component Program may allow on account of entitlement to Medicare or Medicaid (other than coverage solely for pediatric vaccines). Likewise, an Eligible Employee may file a written election with the Plan Administrator to revoke or modify any prior election and/or to make a new election with respect to the remaining portion of a Plan Year as each separate Component Program may allow on account of the loss of entitlement to Medicare or Medicaid.

(f)     **Judgment, Decree or Order**.  If a judgment, decree or order resulting from divorce, legal separation, annulment or a change in legal custody (including a QMCSO) requires accident or health coverage of an Eligible Employee's Dependent Child, the Eligible Employee may change his election to (i) add coverage for himself and/or the Dependent Child under a Health Care Component if the order requires or (ii) cancel coverage under a Health Care Component for the Dependent Child if the order requires the Spouse, former Spouse or someone else to provide coverage for the Child; provided, however, that the Eligible Employee will not be permitted to revoke coverage for the Child unless he provides proof of such alternate coverage.

(g)     **Effective Date of Revocation or Change**.  The Plan Administrator will review an Eligible Employee's request to revoke or modify his election and will determine if the Eligible Employee has met the requirements of Paragraphs (b), (c), (d), (e) or (f) above.  Except as the Plan Administrator may otherwise provide by rule or regulation, the Plan Administrator will approve an Eligible Employee's request to revoke or modify his election only if the request is received by the Plan Administrator no later than 30 days after the occurrence of the reason therefore unless a longer election period is required by law.  Except as required by law, in no event will any revocation or modification be effective earlier than the first day of the first pay period after the request is completed, executed and returned to the Plan Administrator.

(h)     **Health Savings Account**.  An Eligible Employee may increase, decrease or revoke his election for coverage under the Health Savings Account prospectively at any time during the Plan Year to be effective no later than the first day of the next calendar month following the date that the election change was made.

EXHIBIT 10  Page 32  SUF

(i) **Component Programs Control**. An Eligible Employee will not be permitted to revoke or modify an existing election and/or file a new election to the extent such revocation, modification or filing conflicts with the terms of the applicable Component Program.

**4.5   Automatic Termination of Election**

An Eligible Employee's election with respect to a Cafeteria Component Program will automatically terminate on the date on which the Eligible Employee ceases to be a Participant in that program; however, coverage or benefits under that program may continue if and to the extent provided therein.

**4.6   Maintenance of and Adjustments to Flexible Spending Accounts**

(a) **Establishment of Flexible Spending Accounts**. The Plan Administrator will maintain separate accounts for each Eligible Employee who elects to participate in either (or both) of the Flexible Spending Account Programs in accordance with Section 4.1. Likewise, the Plan Administrator will establish a separate account for each Eligible Employee who continues COBRA coverage under the Health Care Flexible Spending Account Program as provided pursuant to Section 5.10. Each such separate account will be credited and charged only with those credits and charges attributable to such account as specified herein and in the Flexible Spending Account Programs. A credit or debit balance in any one such account may not be used to credit or debit any other such account, and each such account will be administered separately. No interest will be credited to or accrue on any balance in such accounts.

(b) **Credits**. Each month or part thereof during which an Eligible Employee has an account pursuant to Paragraph (a) above, such account will reflect: (i) any credit thereto as of the close of the prior month, plus (ii) the amount credited thereto during such month in accordance with the Flexible Spending Account Programs.

(c) **Debits**. Each month, the value of any benefits paid to or on behalf of an Eligible Employee or his Spouse or Dependent under a Flexible Spending Account Program will be charged against such Eligible Employee's account for that program, and will reduce his balance in that account.

(d) **Forfeiture**. Any credit balance remaining in such an account as of the end of a Plan Year will be forfeited and applied in accordance with the provisions of the applicable Flexible Spending Account Program.

**4.7   Limitation of Article**

This Article IV applies only to the Cafeteria Component Programs. While Advisors and Directors are not eligible to participate in the Plan's cafeteria plan, Advisors and Directors are subject to the same limitations and requirements for purposes of making initial and subsequent elections and termination of such elections as provided in this Article IV.

26

EXHIBIT 10  Page 33  SUF

ARTICLE V

COBRA

5.1    **Continuation of Coverage**

(a)    **General Rule**.  Subject to the provisions of this Article V, each "qualified beneficiary" who would "lose coverage" under a Health Care Component as a result of a "qualifying event" will be entitled to elect, within the "election period," continuation of coverage under that Health Care Component.  The foregoing terms in quotations are defined below.

(b)    **Coverage**.  In Paragraph (a) above, "coverage" means coverage which—as of the time coverage is being provided—is identical to the coverage provided under the Health Care Component to similarly situated beneficiaries under the Health Care Component who have not had a qualifying event.  If coverage under the Health Care Component is modified for any group of similarly-situated beneficiaries, coverage under this Article V will likewise be modified for all individuals who are similarly-situated qualified beneficiaries under that Health Care Component.  Further, if there is a choice among coverage options available to participants in the Health Care Component, this choice will be offered to each qualified beneficiary.  Continuation of coverage will not be conditioned upon—or discriminate on the basis of lack of—evidence of insurability or medical underwriting.

5.2    **Qualifying Event and Loss of Coverage**

(a)    **Qualifying Event**.  In this Article V, the term "qualifying event" means, with respect to a Participant, any of the following events which—if not for the continuation of coverage required under Section 5.1—would cause a qualified beneficiary to "lose coverage" under a Health Care Component:

(i)    Death of the Participant;

(ii)   Termination of the Participant's employment (other than for the Participant's gross misconduct) or reduction in hours of service of the Participant's employment;

(iii)  Divorce or legal separation of the Participant from his Spouse;

(iv)   Entitlement by the Participant to Medicare benefits;

(v)    A Child ceasing to qualify as such under the terms of the Plan; or

(vi)   A bankruptcy proceeding in a case under Title 11 of the United States Code, commencing on or after July 1, 1986, with respect to the Employer from whose employment a Participant retired at any time.  For purposes of the foregoing, a loss of coverage includes a substantial elimination of coverage with respect to a qualified beneficiary described in Section 5.3(a)(ii) within one year before or after the date of commencement of the bankruptcy proceeding in a case under Title 11 of the United States Code.  For purposes of this Paragraph and all provisions of Article V applicable to this Paragraph, "Participant" means

27

EXHIBIT 10  Page 34  SUF

an individual who is a retiree of the Employer and is (or was) provided coverage under the Plan because he worked for the Employer.

(b) **Loss of Coverage**.  In this Article V, to "lose coverage" means to cease to be covered under the same terms and conditions as in effect immediately prior to the qualifying event.  If coverage is reduced or eliminated in anticipation of an event, the reduction or elimination is disregarded in determining whether the event causes a loss of coverage.  Moreover, a loss of coverage need not occur immediately after the event, so long as the loss of coverage will occur prior to the end of the coverage period described in Section 5.7.  For purposes of an FMLA Leave, the loss of coverage and the qualifying event occur on the last day of the FMLA Leave, even if the Participant did not maintain coverage under the Health Care Component during the FMLA Leave; provided, however, that if coverage extends beyond the end of the FMLA Leave, then the qualifying event occurs at the time of the actual loss of coverage.

## 5.3    Qualified Beneficiaries

(a) **General Rule**.  In this Article V, the term "qualified beneficiary" means:

(i)    Any individual who (A) was a Participant or a Covered Dependent of a Participant under a Health Care Component on the day before the qualifying event or (B) is a child born to or placed for adoption with the Participant during the period of the Participant's continuation of coverage under this Article V; and

(ii)   For a qualifying event that is the bankruptcy of the Employer as described in Section 5.2(a)(vi), a Participant who had retired on or before the date of substantial elimination of coverage and any other individual who, on the day before such qualifying event, was a Covered Dependent of the Participant.

(b) **Exclusions**.  The term "qualified beneficiary" will not include (i) a Participant whose status as an Eligible Employee is attributable to a period in which he was a nonresident alien and received from the Employer no earned income (within the meaning of section 911(d)(2) of the Code) constituting income from sources within the United States (within the meaning of section 861(a)(3) of the Code) or (ii) a Covered Dependent of such Participant.

## 5.4    Notice Requirements

(a) **Initial Notice of COBRA Rights**.  The Plan Administrator will provide, at the time of commencement of coverage under a Health Care Component, written notice to each Participant and his Covered Dependents, if any, of the rights provided under this Article V.  Such notice will be provided not later than the **earlier** of (i) 90 days after coverage under the Plan begins, or (ii) the first date on which the Plan Administrator is required to provide the Participant or Covered Dependent with notice of the right to elect to continue coverage under the Plan on account of the occurrence of a qualifying event.  Further, in any case where the Plan Administrator is required to provide notice of the right to elect continuation coverage as described in Subparagraph (ii), the furnishing of the notice of the right to elect continuation coverage under Section 5.4(d) will be deemed to satisfy the requirements of this Section 5.4(a).

28

EXHIBIT 10  Page 35  SUF

**(b)** **Employer Notice of Qualifying Event**.   The Employer will notify the Plan Administrator of a qualifying event as described in Section 5.2(a)(i), (ii), (iv) or (vi) (respectively, the Participant's death, termination of employment or reduction in hours, entitlement to Medicare or the bankruptcy of the Employer) within 30 days of the **later** of (i) the date of the qualifying event or (ii) the date coverage under the Plan is lost as a result of the qualifying event.

**(c)** **Participant or Qualified Beneficiary Notice**.   Each Participant or qualified beneficiary must notify the Plan Administrator in writing of the occurrence of any qualifying event that is a divorce, legal separation or loss of dependent status as described in Section 5.2(a)(iii) or (v), or the occurrence of a second qualifying event that would increase the duration of continuation coverage from 18 or 29 months to 36 months within 60 days of the **later** of (i) the date of the qualifying event; (ii) the date the qualified beneficiary would lose coverage because of the qualifying event; or (iii) the date the qualified beneficiary is informed through the distribution of a summary plan description or general notice of the responsibility to provide such notice to the Plan Administrator and the Plan's procedures for doing so.   If this notice of qualifying event is not so provided, the qualified beneficiary will lose his right to elect such continuation of coverage.   For purposes of the foregoing, if more than one qualified beneficiary would lose coverage on account of the divorce or legal separation of a Participant or the occurrence of a second qualifying event, a timely written notice of the divorce or legal separation or second qualifying event that is provided by the Participant or by any one of such qualified beneficiaries will be sufficient to preserve the election rights of the Participant and all such beneficiaries.

Each qualified beneficiary, who is determined under Title II or XVI of the Social Security Act to have been disabled (A) at the time of the qualifying event described in Section 5.2(a)(ii) or (B) within 60 days of such qualifying event (or, in the case of a newborn or recently adopted child of the Participant, within 60 days of the date of birth or placement for adoption), is responsible for notifying the Plan Administrator in writing of the determination before the end of the initial 18 month continuation period and within the date that is 60 days after the **latest** of (1) the date of such disability determination; (2) the date of the qualifying event; (3) the date the qualified beneficiary would lose coverage because of the qualifying event; or (4) the date the qualified beneficiary is informed through the distribution of a summary plan description or a general notice of the responsibility to provide such notice to the Plan Administrator and the Plan's procedures for doing so.   The qualified beneficiary is also responsible for notifying the Plan Administrator in writing of a final determination that the qualified beneficiary is no longer disabled under such titles within 30 days after the **later** of the date of such determination or the date that the qualified beneficiary is informed through the distribution of a summary plan description or a general notice of the responsibility to provide such notice to the Plan Administrator and the Plan's procedures for doing so.

**(d)** **Plan Administrator Notice of Rights to Elect Continuation Coverage**.   Upon receipt of the notice by the Employer described in Section 5.4(b) (regarding a qualifying event which is, respectively, the Participant's death, or termination of employment, or reduction in hours, or entitlement to Medicare, or the bankruptcy of the Employer), or upon receipt of the notice from the Participant or qualified beneficiary described in Section 5.4(c) (regarding an initial qualifying event which is, respectively, divorce or legal separation, loss of dependent status, or a

EXHIBIT 10  Page 36  SUF

second qualifying event), the Plan Administrator will notify any qualified beneficiary of the right to elect COBRA continuation coverage with respect to such qualifying event. This notice will be given to the qualified beneficiary within 14 days of the date on which the Plan Administrator is notified under Section 5.4(b) or (c), whichever is applicable, and will contain the information required by Labor Regulation section 2590.606-4(b)(4). Any such notice to an individual who is a qualified beneficiary as the Spouse of the Participant will be treated as notice to all other qualified beneficiaries who are minors residing with that Spouse at the time the notice is given.

(e)     **Plan Administrator Notice of Unavailability of COBRA**.   If the Plan Administrator receives notice from a Participant or qualified beneficiary of a qualifying event pursuant to Section 5.4(c) and determines that such Participant or qualified beneficiary is not entitled to continuation coverage under COBRA, the Plan Administrator will notify the Participant or qualified beneficiary that COBRA continuation coverage is not available and the reasons why. Such notice of the unavailability of COBRA continuation coverage will be provided within 14 days after the Plan Administrator receives notice of the qualifying event pursuant to Section 5.4(c).

## 5.5     Election Requirements

(a)     **Election Period**.  The term "election period" means the period that begins on the date coverage terminates under the Health Care Component due to a qualifying event and ends 60 days after the **later** of (i) the date on which coverage terminates under the Health Care Component due to the qualifying event or (ii) the date the qualified beneficiary is sent the notice required under Section 5.4(d). Notwithstanding Section 12.7 (regarding notice and filing), an election of continuation coverage will be deemed made when sent by the qualified beneficiary.   An election of continuation coverage made during the election period is retroactive to the date of the qualifying event. If a qualified beneficiary waives his right to elect continuation coverage, the waiver may be revoked by the qualified beneficiary at any time during the election period; provided, however, that if a qualified beneficiary revokes his waiver, continuation coverage will not be provided for any period prior to the waiver.

(b)     **Nature of Election**.  Each qualified beneficiary (including a child who is born to or placed for adoption with a Participant receiving continuation coverage under this Article V) will be offered the opportunity to make an independent election of continuation coverage under this Article V.   However, except as otherwise specified in an election, any election of continuation coverage that is made by a qualified beneficiary who is the Participant or a Spouse of the Participant and that does not specify whether the election is for self-only coverage will be deemed to include an election of continuation on behalf of any other qualified beneficiary who would lose coverage under the Health Care Component due to the qualifying event. If there is a choice among types of coverage under the Health Care Component, each qualified beneficiary is entitled to make a separate selection among the types of coverage.

## 5.6     Cost of Coverage

(a)     **Responsible Party**.  A qualified beneficiary who elects continuation coverage under this Article V will be solely responsible for paying the full cost of such

EXHIBIT 10  Page 37  SUF

continued coverage. Payment is considered made when it is sent to the proper party. The Employer will not be obligated to contribute to the cost of continuation coverage. Payment of any initial premium by or on behalf of a qualified beneficiary will not be required until 45 days after the date continuation coverage is elected and will cover the cost of coverage for the period from the date of the qualifying event.

(b) **Amount**. The cost of continuation coverage will be determined by the Plan Administrator and will not exceed 102 percent of the cost of the Health Care Component for the same period of coverage for other similarly-situated individuals who have not experienced a qualifying event; provided, however, that if an 18-month period of coverage is extended to 29 months for the disabled qualified beneficiary pursuant to Section 5.7(a)(i)(B), any reference in this Paragraph (b) to 102 percent is deemed a reference to 150 percent for each month after 18 months with respect to the disabled qualified beneficiary and any other related qualified beneficiaries extending their coverage. Note, however, that if the disabled qualified beneficiary does not elect continuation beyond 18 months, then the cost for any other related qualified beneficiaries who do elect coverage beyond 18 months remains 102 percent and may not be increased to 150 percent. At the election of the payor, the cost of continuation coverage may be paid in monthly installments. If timely payment of such cost is made in an amount not significantly less than the amount required, then the amount paid will be deemed to satisfy the amount required, unless the qualified beneficiary is notified of the amount of the deficiency and is given a reasonable time not less than 30 days after the date of the notice in which to pay the deficiency.

(c) **Source of Payment**. Premiums for continuation coverage will be paid with after-tax dollars pursuant to the cafeteria plan provisions of this Plan, except to the extent permitted by applicable law and the Plan's administrative procedures.

## 5.7   Period of Coverage

(a) **General Rule**. Except as provided in Section 5.10, continuation coverage will extend for the period beginning on the date of the qualifying event and ending:

(i) For a qualifying event that is a termination or reduction in hours as described in Section 5.2(a)(ii), 18 months after the qualifying event, unless:

(A) A qualifying event (other than a qualifying event that is a bankruptcy of the Employer as described in Section 5.2(a)(vi)) occurs during the 18-month period, in which case coverage with respect to all qualified beneficiaries except the Eligible Employee will end 36 months after the qualifying event described in Section 5.2(a)(ii); or

(B) The qualified beneficiary is determined under Title II or Title XVI of the Social Security Act to have been disabled either at the time of a qualifying event described in Section 5.2(a)(ii) or at any time during the first 60 days of continuation coverage, in which case reference to 18 months in this Subparagraph (i) is deemed a reference to 29 months with respect to all related qualified beneficiaries, but only if the disabled qualified beneficiary (or any

31

EXHIBIT 10  Page 38  SUF

related qualified beneficiary) has provided notice of the determination as required by Section 5.4(c) before the end of the first 18 (not 29) months of continuation coverage and within 60 days of the Social Security disability determination;

(ii)   For a qualifying event not described in Section 5.2(a)(ii) (regarding termination or reduction in hours) or (vi) (regarding bankruptcy), 36 months after the qualifying event with respect to all qualified beneficiaries except the Eligible Employee; and

(iii)   For a qualifying event that is a bankruptcy of the Employer as described in Section 5.2(a)(vi);

(A)   When the Participant or the qualified beneficiary who is the surviving Spouse of the Participant dies; or

(B)   For the surviving Spouse or surviving Children of the Participant, 36 months after the Participant dies.

**(b)   Special Rule for Medicare Entitlement.**   For an event described in Section 5.2(a)(iv) (without regard to whether the event is a qualifying event), the period of coverage for qualified beneficiaries other than the Participant will not terminate before the end of the 36-month period beginning when the Participant becomes entitled to Medicare benefits. In addition, in the case of a qualifying event that is the termination or reduction in hours of the Eligible Employee, the Eligible Employee's subsequent entitlement to Medicare will not constitute a second qualifying event unless becoming covered by Medicare would have caused the qualified beneficiaries (other than the Eligible Employee) to lose coverage under the Plan before the Eligible Employee had terminated employment.

## 5.8   Termination of Coverage

**(a)   Date of Termination.**   Continuation coverage for a qualified beneficiary will terminate prior to the period of coverage described in Section 5.7 when any one of the following occurs:

(i)   The Employer—and all entities that are members of a group that is described in section 414(b), (c), (m) or (o) of the Code and that includes the Employer—cease to provide any group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA;

(ii)   Coverage ceases under the Health Care Component due to a failure to pay any premium required under the Health Care Component within the **latest** of (A) 30 days after the date due; (B) the last date a Participant is permitted to make any required contribution under the terms of that program; or (C) if applicable, the last date the Employer is permitted to pay for coverage of similarly-situated Participants under the terms of a contract between the Employer and any Insurer, HMO, PPO or other entity that provides group-health benefits on behalf of the Employer;

(iii)   The qualified beneficiary first becomes covered under any other group health plan within the meaning of section 5000(b)(1) of the Code or section 607(1) of ERISA of an employer other than the Employer, provided that such coverage does not begin on or before the date on

32

EXHIBIT 10  Page 39  SUF

which continuation coverage is elected, and also provided that such other group health plan does not contain any exclusion or limitation with respect to any preexisting condition of the qualified beneficiary (other than an exclusion or limitation that does not apply to (or is satisfied by) such person because of the creditable coverage provisions of chapter 100 of Title 26, or part 7 of subtitle B of Title I of ERISA);

(iv)    For a qualified beneficiary who is entitled to 29 months of continuation coverage on account of disability and for all related qualified beneficiaries, the **earlier** of (A) the first day of the month that begins more than 30 days after the date of the final determination under Title II or XVI of the Social Security Act that the disabled qualified beneficiary is no longer disabled, or (B) the end of the original 18-month continuation period specified in Section 5.7(a)(i); or

(v)    The qualified beneficiary (other than a qualified beneficiary described in Section 5.3(a)(ii) (regarding bankruptcy)) first becomes entitled to and enrolled in Medicare, provided the qualified beneficiary does not first become entitled to and enrolled in Medicare on or before the date continuation coverage is elected. Also, such entitlement to Medicare may constitute a second qualifying event for qualified beneficiaries other than the Eligible Employee.

**(b)**    **Notification of Termination.**  The Plan Administrator will notify a COBRA Beneficiary that continuation coverage of the COBRA Beneficiary or any person enrolled pursuant to Section 5.9(a) has terminated under the provisions of either Section 5.7 or this Section 5.8, and of the effective date of such termination. The notice must also advise the COBRA Beneficiary of any rights to other group health coverage that are available upon the termination of coverage pursuant to this Article V. The notice will be provided as soon as administratively feasible after the date of termination.

**5.9**    **Rights and Obligations of COBRA Beneficiary**

**(a)**    **Enrollment of Dependents.**  Each qualified beneficiary who becomes a COBRA Beneficiary will be entitled to enroll each family member who would qualify as his Spouse or Child, subject to the same terms and conditions for enrollment of Dependents set forth in the applicable Health Care Component generally; provided, however, that persons enrolled pursuant to this Paragraph (a) are not themselves eligible to become qualified beneficiaries within the meaning of Section 5.3.

**(b)**    **Other Rights.**  Except as otherwise specifically provided in the Plan, each individual who becomes a COBRA Beneficiary pursuant to this Article V will have the same rights and obligations as those provided to Participants and Covered Dependents under the terms of the Plan, including those regarding enrollment, amendment, termination or change of coverage, coordination of benefits, subrogation, claims procedure and review, and provision of information.

**5.10**    **Applicability of Article**

This Article V will apply only to a Health Care Component, Participant or Covered Dependent that or who is subject to or entitled to the continuation of coverage provisions

EXHIBIT 10  Page 40  SUF

of COBRA pursuant to section 4980B of the Code or sections 601 through 608 of ERISA.   Moreover, this Article V will only apply to the Health Care Flexible Spending Account Program for the balance of the Plan Year in which the qualifying event occurred, and even then only to the extent the maximum benefit available to the Participant at the time of the qualifying event for the remainder of the Plan Year is not more than the maximum amount the Health Care Flexible Spending Account Program could require as payment to maintain coverage for the remainder of the Plan Year.

**5.11    Statutory Conflict**

This Article V will be administered in the manner required by COBRA and the regulations issued thereunder.   In the event that there is a discrepancy between the provisions of this Article V and COBRA or the regulations issued thereunder, such discrepancy will be resolved to give full effect to the provisions of COBRA and/or such regulations.

34

EXHIBIT 10  Page 41  SUF

## ARTICLE VI

## COORDINATION OF BENEFITS

**6.1    Coordination With Other Plans**

    (a)    **Other Plan Coverage**.  If a Participant or Covered Dependent is covered under a plan (other than Medicare) of an employer other than the Employer, that provides a benefit of the same type as the applicable benefit provided under the Plan, a claim for a benefit under the Plan will be paid on behalf of the Participant or Covered Dependent as follows:

        (i)    If the Plan is the Primary Plan, a benefit will be paid by the Plan without regard to any amount paid or payable under any other plan.

        (ii)    If the Plan is the Secondary Plan, the amount paid by the Plan will be the difference between (A) the amount the Plan would be required to pay if it were the Primary Plan and (B) the amount paid or payable by the Primary Plan.

    (b)    **Reduction of Plan Benefits**.  If the Plan is the Secondary Plan and a payment of a benefit payable under more than one provision of the Plan to a Participant or Covered Dependent is thereby reduced by the amount paid or payable from the Primary Plan, then each benefit payable under each such provision will be reduced by that portion of the total reduction that each such benefit bears to the total benefit payable under the Plan.

**6.2    Coordination With Medicare**

If a Participant or Covered Dependent is eligible for Medicare, a claim for benefits under the Plan will be paid on behalf of the Participant or Covered Dependent as follows:

    (a)    If the Plan is the Primary Plan, a benefit will be paid without regard to any amount paid or payable under the terms of Medicare.

    (b)    If the Plan is the Secondary Plan, the amount paid by the Plan will be the difference between (i) the amount the Plan would be required to pay if it were the Primary Plan and (ii) the amount paid or payable under the terms of Medicare; provided, however, that no payment will be made under the Plan to the extent such amount would exceed the maximum amount that may be billed to the Plan by the provider pursuant to Medicare.

    (c)    In determining the amount paid or payable under the terms of Medicare for purposes of this Section 6.2, the Plan will consider all Medicare benefits paid or payable to the Participant or Covered Dependent or to the provider directly for the same Condition.

**6.3    Limitation on Coordination of Benefits**

A Participant or Covered Dependent will not recover more under this Article VI than 100 percent of the expense incurred as a result of a Condition.

EXHIBIT 10  Page 42  SUF

**6.4     Right to Receive and Release Information**

For the purpose of administering this Article VI, the Plan Administrator may—without consent of or notice to any Covered Person or other person—release to or obtain from any other individual or entity any information the Plan Administrator deems appropriate. Any Covered Person or other person or entity claiming benefits or reimbursement under the Plan will furnish the Plan Administrator with whatever information the Plan Administrator requests to implement this Article VI.

**6.5     Corrective Payment**

If another plan, person or entity paid a benefit that should have been paid by the Plan in accordance with this Article VI, the Plan Administrator will have the right to pay to any such plan, person or entity an amount the Plan Administrator determines in its discretion to be necessary to comply with the provisions of this Article VI.  Amounts paid pursuant to the preceding sentence will be deemed to be benefits paid under the Plan for all purposes, and the Plan Administrator will be fully discharged from liability under the Plan.

**6.6     Right of Recovery**

If the Plan pays a benefit that should have been paid by another plan, person or entity in accordance with this Article VI, the Plan Administrator will have the right to recover the payment from such plan, person or entity in any manner the Plan Administrator deems appropriate.

**6.7     Effect of Medicaid, Medicare or CHIP Eligibility**

The amount of any benefit under a Health Care Component will be determined and paid without regard to the fact the Participant or Covered Dependent involved is eligible for or is provided (a) medical assistance under a state plan for medical assistance approved under Title XIX or Title XXI of the Social Security Act or (b) benefits under Part A or B of Medicare.

**6.8     Coordination with Component Program Document**

If a Component Program Document contains coordination of benefits provisions, those provisions will control over this Article VI with respect to that Component Program. However, if the provisions in the Component Program Document do not address or are ambiguous with respect to a particular issue, and this Article VI would address that issue or ambiguity, then this Article will apply and will control to the extent necessary to resolve the issue or ambiguity.

36

EXHIBIT 10  Page 43  SUF

## ARTICLE VII

## SUBROGATION

**7.1    Plan's Right of Subrogation**

Subject to the provisions of this Article VII (and except as provided otherwise under a superseding provision of the terms of a Component Program applicable pursuant to Section 7.7), if a Participant or Covered Dependent is entitled to a benefit under the Plan for a Condition caused or possibly caused by a Third Party or for which a Third Party may be liable, as a condition to receiving this benefit such Participant or Covered Dependent shall agree to reimburse the Plan in full and first priority from the amounts recovered by such Third Party (as set forth in Section 7.2), the Plan Administrator may require the Participant or Covered Dependent to sign an agreement to reimburse the Plan, and the Plan shall be subrogated to all rights, however arising, of the Participant or Covered Dependent against the Third Party. The right of subrogation set forth herein shall not limit any additional rights of subrogation the Plan may have under the applicable laws of any State to seek repayment of the benefit from the Third Party.

**7.2    Amounts Recoverable**

(a)    The Plan is subrogated to any right of a Participant or Covered Dependent to recover any and all benefits, which have been paid or are payable—or that are likely (in the opinion of the Plan Administrator) to become payable under the Plan—and that are related to any Condition for which a Third Party is or may be liable, without regard to whether the payment is characterized as recovery for pain and suffering, mental anguish, punitive damages or any other basis of recovery other than for medical or other welfare benefits provided by the Plan and regardless of whether the liability of the Third Party is reduced to a recovery as a result of legal proceedings, arbitration, compromise settlement or otherwise.

(b)    The Plan's subrogation rights under this Article VII shall be a first priority claim against all Third Parties and the amount to which the Plan is entitled pursuant to its rights under this Article VII shall be paid to the Plan before any amounts are paid to the Participant or Covered Dependent, or in the event such amount to which the Plan is entitled is not paid immediately to the Plan, such amount shall be segregated and held in constructive trust for the Plan. In addition, the Plan may recover from the amounts recovered from such Third Parties its reasonable costs and attorneys' fees.

(c)    The amount to which the Plan is subrogated, or the amount to which the Plan is entitled to reimbursement, shall not be limited or reduced because the Third Party is liable only in part, the Third Party's resources or insurance is limited, the Participant has not been fully compensated (*i.e.,* made whole), or to share in a pro rata allocation of a Participant's fees and costs (including attorney fees) incurred in pursuit of a claim (*e.g.,* "common fund doctrine"), or because of any other reason.

(d)    To the extent the amount to which the Plan is subrogated, or entitled to reimbursement, is so limited or reduced under the applicable laws of any State then the Plan will have the right to reimbursement from a Participant for the amount by which the Plan's rights are limited or reduced by State law.

37

EXHIBIT 10  Page 44  SUF

**7.3**     **Limitation on Plan's Recovery**

The Plan's right of subrogation shall not exceed either the sum of the amount of benefits paid, payable or likely (in the opinion of the Plan Administrator) to become payable under the Plan, plus the Plan's reasonable costs and attorneys' fees, or the total amount of the recovery from Third Parties.

**7.4**     **Enforcement**

To enforce any provision of this Article VII, the Plan Administrator may:

**(a)**     Bring an action in the name of the Plan, Participant or Covered Dependent against a Third Party or the Third Party's liability carrier or, in the case of uninsured or underinsured motorist coverage, the Participant's or Covered Dependent's automobile insurance carrier;

**(b)**     Join in any action by a Participant or Covered Dependent against a Third Party or the Third Party's liability carrier or, in the case of uninsured or underinsured motorist coverage, the Participant's or Covered Dependent's automobile insurance carrier;

**(c)**     Offset future benefits by amounts that a Participant or Covered Dependent has obtained (or could have obtained with reasonable diligence) from a Third Party or the Third Party's liability carrier or, in the case of uninsured or underinsured motorist coverage, the Participant's or Covered Dependent's automobile insurance carrier;

**(d)**     Bring an action to set aside any settlement agreement entered into without the consent of the Plan Administrator;

**(e)**     Bring an action against a Participant or Covered Dependent for an equitable lien or constructive trust against amounts recovered by a Third Party;

**(f)**     Without the consent of or notice to any Participant or Covered Dependent, to the extent permitted by law, release to or obtain from any other individual or entity any information that the Plan Administrator deems necessary or advisable for the enforcement of the Plan's subrogation rights under this Article VII; or

**(g)**     Take any other action it deems appropriate.

**7.5**     **Obligations of Participants**

In addition to the other obligations set forth in this Article VII, the following obligations apply to Participants and Covered Dependents:

**(a)**     The Participant or Covered Dependent shall execute and deliver to the Plan Administrator any reimbursement agreement, assignment and other documents the Plan Administrator requests for enforcing the Plan's rights under this Article VII, shall provide to the Plan Administrator any information regarding recovery sought or received from any third party (including the amount and source of such recovery), shall not take any action that might prejudice the Plan's rights under this Article VII, and shall not release any Third Party (even if the release purports to be a partial release or a release for the excess liability over Plan benefits)

38

EXHIBIT 10  Page 45  SUF

without the Plan Administrator's advance written consent. The Plan's rights shall not be affected by a release of any Third Party entered into without such consent.

**(b)**    If a Participant or Covered Dependent initiates a liability claim against any Third Party or the Third Party's liability carrier, or if recovery is sought against the Participant's or Covered Dependent's automobile insurance carrier under the uninsured or underinsured endorsement, the amounts described in Section 7.2 must be included in the claim.

**(c)**    If a Participant or Covered Dependent receives money from or on behalf of any Third Party, the Participant or Covered Dependent shall serve as a constructive trustee for the Plan and hold such money in trust for the Plan, to the extent of the Plan's rights under this Article VII. Failure to do so shall constitute a breach of the Participant's or Covered Dependent's fiduciary duty under the Plan.

**(d)**    Each Participant or Covered Dependent who incurs any Condition shall inform the Plan Administrator whenever it appears a Third Party is or may be liable to the Participant or Covered Dependent as a result of that Condition. Each Participant or Covered Dependent shall inform any Third Party, attorney and insurance carrier, as well as any other individual or entity connected with a Condition or involved in the collection of any amount connected with a Condition, of the Plan's right of subrogation.

**(e)**    Failure of the Participant or Covered Dependent to comply in all respects with this may, in the Plan Administrator's discretion, cause a denial of benefits for a Condition or a termination of coverage for the Participant or Covered Dependent under the applicable Component Program.

**7.6**    **Waiver**

The Plan Administrator in its sole and absolute discretion may waive or modify any of the provisions of this Article VII whenever it deems appropriate under the facts and circumstances of a particular case.

**7.7**    **Coordination with Component Program Document**

If a Component Program Document contains subrogation provisions, those provisions shall control over this Article VII with respect to that Component Program to the extent those provisions are in compliance with the law, including any applicable case law, and are drafted to provide for maximum allowable recovery by the Component Program. However, if the provisions in the Component Program Document do not address or are ambiguous with respect to a particular issue, and this Article VII would address that issue or ambiguity, then this Article VII shall apply and shall control to the extent necessary to resolve the issue or ambiguity.

EXHIBIT 10  Page 46  SUF

## ARTICLE VIII

## CLAIMS PROCEDURE

**8.1    Claims For Benefits**

Claims for benefits or reimbursement under the Plan will be submitted and processed in accordance with this Article VIII, unless a Component Program Document contains its own claims procedures, in which case the Component Program Document's claims procedures will apply with respect to that Component Program.   However, if the Component Program Document's claims procedures do not address or are ambiguous with respect to a particular issue, and this Article VIII would address that issue or ambiguity, then this Article VIII will apply and will control to the extent necessary to resolve the issue or ambiguity.   Alternatively, in the Plan Administrator's discretion and subject to any restrictions imposed by the Plan Administrator, benefits may be claimed through the Participant's use of a debit card or other stored-value card; provided, however that the receipt of benefits in this manner will be conditioned on substantiation of the expenses as required by the Plan Administrator.

**8.2    Filing A Claim for Benefits**

A Claimant must file with the Administrative Provider a written claim for benefits under the Plan with written proof of loss in accordance with procedures set forth by the Administrative Provider.    For purposes of applying the time periods for benefit determination pursuant to Sections 8.5, 8.6 or 8.7, filing a claim with the Administrative Provider will be treated as filing a claim with the Plan Administrator.  In connection with the submission of a claim, the Claimant may examine the Plan and any other relevant documents relating to the claim, and may submit written comments relating to such claim to the Administrative Provider coincident with the filing of the benefit claim form.  Failure of a Claimant to furnish written proof of loss or to comply with the claim submission procedure will invalidate such claim unless the Administrative Provider in its discretion determines that it was not reasonably possible to provide such proof or comply with such procedure; provided that, if a Claimant's communication regarding a Pre-Service Claim is received by the Administrative Provider and names the Claimant, his specific medical condition or symptom, and the specific treatment, service or product for which approval is requested, but otherwise fails to follow the claims submission procedure, the Administrative Provider will notify the Claimant of the failure and the proper procedures to be followed to file a claim for benefits.  Such notification will be provided as soon as possible, but not later than five days (24 hours in the case of an Urgent Care Claim) following the failure and may be oral unless the Claimant requests written notification.

**8.3    Processing of Benefit Claim**

Upon receipt of fully completed benefit claim forms from a Claimant, the Administrative Provider will determine if the Claimant's right to the requested benefit, payable at the time or times and in the form requested, is clear and, if so, will process such benefit claim without resort to the Plan Administrator.  In the case of either an Urgent Care Claim other than a Concurrent Care Claim or a Pre-Service Claim, the Administrative Provider will affirmatively notify the Claimant of the approval of the claim not later than 72 hours after receipt of the benefit claim in the case of an Urgent Care Claim other than a Concurrent Care Claim and not less than 15 days after receipt of the benefit claim in the case of a Pre-Service Claim.  If the Administrative Provider determines that the Claimant's right to the requested benefit, payable at the time or times and in the form

40

EXHIBIT 10  Page 47  SUF

requested, is not clear, it will refer the benefit claim to the Plan Administrator for review and determination, which referral will include:

**(a)**    All materials submitted to the Administrative Provider by the Claimant in connection with the claim;

**(b)**    A written description of why the Administrative Provider was of the view that the Claimant's right to the benefit, payable at the time or times and in the form requested, was not clear;

**(c)**    A description of all Plan provisions pertaining to the benefit claim;

**(d)**    Where appropriate, a summary as to whether such Plan provisions have in the past been consistently applied with respect to other similarly situated Claimants; and

**(e)**    Such other information as may be helpful or relevant to the Plan Administrator in its consideration of the claim.

If the Claimant's claim is referred to the Plan Administrator, the Claimant may examine any relevant document relating to his claim and may submit written comments or other information to the Plan Administrator to supplement his benefit claim. Within the time period described in Sections 8.5, 8.6 or 8.7, as applicable, the Plan Administrator will consider the referral regarding the claim of the Claimant and make a decision as to whether it is to be approved, modified or denied. If the claim is approved, the Plan Administrator will direct the Administrative Provider to process the approved claim as soon as administratively practicable and in the case of either an Urgent Care Claim other than a Concurrent Care Claim or a Pre-Service Claim, the Plan Administrator will affirmatively notify the Claimant of the approval of the claim not later than 72 hours after receipt of the benefit claim in the case of an Urgent Care Claim other than a Concurrent Care Claim and not less than 15 days after receipt of the benefit claim in the case of a Pre-Service Claim.

**8.4**    **Notification of Adverse Determination Regarding All Claims**

In any case of an Adverse Benefit Determination of a claim for a Plan benefit, the Plan Administrator will furnish written notice to the affected Claimant within the notification periods described in Sections 8.5, 8.6 or 8.7, as applicable. Any notice that denies a benefit claim of a Claimant in whole or in part will, in a manner calculated to be understood by the Claimant:

**(a)**    State the specific reason or reasons for the Adverse Benefit Determination;

**(b)**    Provide specific reference to pertinent Plan provisions on which the Adverse Benefit Determination is based;

**(c)**    In the case of a health or disability benefit claim and if an internal rule, guideline, protocol or other similar criterion was relied upon in making the Adverse Benefit Determination, either provide such criterion or state that such criterion was relied upon and that a copy of the criterion will be provided free of charge to the Claimant upon request;

**(d)**    In the case of a health or disability benefit claim and if the Adverse Benefit Determination is based on a medical necessity, experimental treatment or similar

41

EXHIBIT 10  Page 48  SUF

exclusion or limit, either explain the scientific or clinical judgment for the determination, applying the terms of the Plan to the Claimant's medical circumstances, or state that such explanation will be provided free of charge to the Claimant upon request;

(e)     Describe any additional material or information necessary for the Claimant to perfect the claim and explain why such material or information is necessary;

(f)     Describe the Plan's internal and external review procedures and time limits applicable to such procedures, including information on how to initiate an appeal and a statement of the Claimant's right to bring a civil action under section 502(a) of ERISA following an Adverse Benefit Determination on review;

(g)     If an Urgent Care Claim is involved, provide a description of the expedited review process available for Urgent Care Claims (see Section 8.11);

(h)     In the case of a health benefit claim and if new or additional evidence was considered, relied upon or generated by the Plan in connection with the claim, provide such evidence free of charge as soon as possible and sufficiently in advance of the date the Claimant must receive notice of an Adverse Benefit Determination as provided in Sections 8.5 and 8.11 to give Claimant a reasonable opportunity to respond prior to that date;

(i)     In the case of a health benefit claim and if a final internal Adverse Benefit Determination based on new or additional rationale is to be issued under Sections 8.5 or 8.11, provide such new or additional rationale free of charge as soon as possible and sufficiently in advance of the date the Claimant must receive notice of an Adverse Benefit Determination as provided in Section 8.5 or 8.11 to give Claimant a reasonable opportunity to respond prior to that date;

(j)     In the case of a health benefit claim, provide information sufficient to identify the claim involved, including the date of the service, the health care provider, the claim amount (if applicable), and a statement indicating that the Claimant may request the diagnosis code and its corresponding meaning, and the treatment code and its corresponding meaning, and that such information will be provided upon such request;

(k)     In the case of a health benefit claim, provide the reason(s) for the Adverse Benefit Determination, including the denial code and its corresponding meaning, a description of the Plan's standard, if any, that was used to deny the claim, and if the final determination, then a discussion of the decision; and

(l)     In the case of a health benefit claim, disclose the availability of and contact information for, any applicable office of health insurance consumer assistance or ombudsman established under the Public Health Service Act of 1944 ("PHS Act") section 2793 to assist individuals with the internal and external review process.

EXHIBIT 10  Page 49  SUF

**8.5**    **Timing of Adverse Benefit Determination Notification Regarding Health Claims**

The Plan Administrator will provide a Claimant with notice of an Adverse Benefit Determination regarding a health claim that is not a disability claim within the following time periods:

**(a)**    In the case of an Urgent Care Claim other than a Concurrent Care Claim, as soon as possible, taking into account the medical exigencies, but not later than 72 hours after the claim is filed with the Plan Administrator; provided, however, that if additional information from the Claimant is necessary to complete the claim, the Claimant will be notified within 24 hours after such claim is filed with the Plan Administrator and will be given at least 48 hours to provide the specified information, and notice of the Plan Administrator's benefit determination will be provided to the Claimant within 48 hours after the **earlier** of (i) the Plan Administrator's receipt of the specified information or (ii) the end of the period afforded the Claimant to provide the specified information.  In addition, such notification may be provided orally (provided that written or electronic notification is provided within three days following such oral notification).

**(b)**    In the case of a properly submitted Urgent Care Claim that is a Concurrent Care Claim, if such claim is made at least 24 hours prior to the scheduled expiration of treatment, notice of the disposition of the claim will be furnished to the Claimant as soon as possible, taking into account the medical exigencies, but not later than 24 hours after such claim is filed with the Plan Administrator.  If such claim is not made at least 24 hours prior to the scheduled expiration of treatment, the claim will be governed by Paragraph (a) above.

**(c)**    In the case of a decision to reduce or terminate a previously approved ongoing course of health benefit treatment that was to be provided over a period of time or a number of treatments, the Plan Administrator will notify the Claimant of the Adverse Benefit Determination at a time sufficiently in advance of the reduction or termination to allow the Claimant to appeal and obtain a determination on review of such Adverse Benefit Determination before the benefit is reduced or terminated.

**(d)**    In the case of a Pre-Service Claim not described in Paragraphs (a) through (c) above, the Plan Administrator will notify the Claimant of the Adverse Benefit Determination within a reasonable period of time appropriate to the medical circumstances but not later than 15 days after receipt of the claim by the Plan (which period may be extended one time for up to an additional 15 days provided that the Plan Administrator both determines that such extension is necessary due to matters beyond the control of the Plan and notifies the Claimant prior to the expiration of the initial 15-day period of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision).

**(e)**    In the case of a Post-Service Claim not described in Paragraphs (a) through (c) above, the Plan Administrator will notify the Claimant of the Adverse Benefit Determination within a reasonable period of time but not later than 30 days after receipt of the claim (which period may be extended one time for up to 15 days provided that the Plan Administrator both determines that such extension is necessary due to matters beyond the control of the Plan and notifies the Claimant prior to the expiration of the initial 30-day period of the circumstances

43

EXHIBIT 10  Page 50  SUF

requiring the extension of time and the date by which the Plan expects to render a decision).

The period of time within which an Adverse Benefit Determination will be made, as described above, will begin at the time a claim is filed in accordance with the reasonable procedures of the Plan, without regard to whether all the information necessary to make a benefit determination accompanies the filing. In the case of claims described in Paragraphs (d) or (e) above, in the event an extension of the period of time for an Adverse Benefit Determination is required because additional information is necessary to decide the claim, (including examination by a physician selected by the Plan Administrator or the performance of an autopsy), the notice of extension will specifically describe the required information, the Claimant will be afforded at least 45 days from receipt of the notice to provide such specified information, and the period for making the Adverse Benefit Determination will be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

## 8.6 Timing of Adverse Benefit Determination Notification Regarding Disability Claims

The Plan Administrator will notify the Claimant of the Adverse Benefit Determination regarding a disability claim within a reasonable period of time, but not later than 45 days after receipt of the claim. This period may be extended by the Plan Administrator for up to 30 days, provided that the Plan Administrator both determines that such extension is necessary due to matters beyond the control of the Plan and notifies the Claimant, prior to expiration of the initial 45-day period, of the circumstances requiring the extension of time and the date by which the Plan expects to render a decision. If, prior to the end of the first 30-day extension period, the Plan Administrator determines that, due to matters beyond the control of the Plan, a decision cannot be rendered within that extension period, the period for making the determination may be extended for up to an additional 30 days, provided that the Plan Administrator notifies the Claimant prior to the expiration of the first 30-day extension period of the circumstances requiring the extension and the date as of which the Plan expects to render a decision. Any extension notice provided to a Claimant will specifically explain the standards on which entitlement to the benefit at issue is based, the unresolved issues that prevent a decision on the claim, and the additional information needed to resolve those issues, and the Claimant will be afforded at least 45 days in which to provide the specified information. In the event of such an extension, the period for making the Adverse Benefit Determination will be tolled from the date on which the notification of extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information. The period of time within which an Adverse Benefit Determination will be made, as described above, will begin at the time a claim is filed in accordance with the reasonable procedures of the Plan, without regard to whether all the information necessary to make a benefit determination accompanies the filing.

## 8.7 Timing of Adverse Benefit Determination Notification Regarding Non-Health and Non-Disability Claims

In any case of an Adverse Benefit Determination of a claim for a Plan benefit that is not a health claim or a disability claim, the Plan Administrator will furnish written notice to the affected Claimant within a reasonable period of time but not later than 90 days after receipt of such claim for Plan benefits (or within 180 days if special circumstances necessitate an extension of the 90-day period and the Claimant is informed of such extension in writing within the 90-day period and is provided with an extension notice

44

EXHIBIT 10  Page 51  SUF

consisting of an explanation of the special circumstances requiring the extension of time and the date by which the benefit determination will be rendered). The period of time within which an Adverse Benefit Determination will be made, as described in this Section 8.7, will begin at the time a claim is filed in accordance with the reasonable procedures of the Plan, without regard to whether all the information necessary to make a benefit determination accompanies the filing.

**8.8** **Review of Adverse Benefit Determination Regarding Health and Disability Claims**

A Claimant has the right to have an Adverse Benefit Determination regarding health and disability claims reviewed in accordance with the following claims review procedure:

(a) To exercise the right to request a review of an Adverse Benefit Determination, a Claimant must submit a written request for such review to the Plan Administrator or, as applicable to the Independent Fiduciary, not later than 180 days following receipt by the Claimant of the Adverse Benefit Determination notification;

(b) The Claimant will have the opportunity to submit written comments, documents, records and other information relating to the claim for benefits to the Plan Administrator or, as applicable, to the Independent Fiduciary;

(c) The Claimant will have the right to have all comments, documents, records and other information relating to the claim for benefits that have been submitted by the Claimant considered on review without regard to whether such comments, documents, records or information were considered in the initial benefit determination;

(d) The Claimant will have reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits free of charge upon request, including (i) documents, records or other information relied upon for the benefit determination; (ii) documents, records or other information submitted, considered or generated without regard to whether such documents, records or other information were relied upon in making the benefit determination; (iii) documents, records or other information that demonstrates compliance with the standard claims procedure in making the benefit determination on the Claimant's claim; and (iv) documents, records or other information that constitutes a statement of policy or guidance with respect to the Plan concerning the denied treatment option or benefit for the Claimant's diagnosis, without regard to whether such statement of policy or guidance was relied upon in making the benefit determination;

(e) The review of the Adverse Benefit Determination will not give deference to the original decision;

(f) The review of the Adverse Benefit Determination will be conducted solely by an Independent Fiduciary;

(g) If the initial benefit determination was based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug or other item is experimental, investigational or not medically necessary or appropriate, the Independent Fiduciary conducting the review will consult with a Health Care Professional with appropriate training and experience in the

45

EXHIBIT 10  Page 52  SUF

applicable field of medicine who was not consulted, and is not the subordinate of someone who was consulted, during the initial benefit determination;

(h)     The Claimant will have the right to have identified to him the medical or vocational experts whose advice was obtained in connection with the Adverse Benefit Determination (without regard to whether the advice was relied upon in making such determination);

(i)     In the case of a health benefit claim, the Claimant will have the right to have provided any new or additional evidence that was considered, relied upon or generated by the Plan in connection with the claim free of charge as soon as possible and sufficiently in advance of the date the Claimant must receive notice of an Adverse Benefit Determination as provided in Sections 8.5 and 8.11 to give the Claimant a reasonable opportunity to respond prior to that date; and

(j)     In the case of a health benefit claim, the Claimant will have the right to have provided any new or additional rationale on which the Adverse Benefit Determination is to be issued free of charge as soon as possible and sufficiently in advance of the date the Claimant must receive notice of an Adverse Benefit Determination as provided in Sections 8.5 or 8.11 to give the Claimant a reasonable opportunity to respond prior to that date.

The decision on review by the Independent Fiduciary will be binding and conclusive upon all persons, and the Claimant will neither be required nor be permitted to pursue further appeals to the Plan Administrator or Independent Fiduciary.  Notwithstanding anything to the contrary in this Section 8.8, an expedited review process is available for Urgent Care Claims.  A request for expedited review may be submitted orally or in writing, in which case all necessary information will be transmitted between the Plan Administrator or Independent Fiduciary and the Claimant by telephone, facsimile or other similarly expeditious method.

8.9     **Review of Adverse Benefit Determination Regarding Non-Health and Non-Disability Claims**

A Claimant has the right to have an Adverse Benefit Determination regarding a claim that is not a health claim or a disability claim reviewed in accordance with the following claims review procedure:

(a)     The Claimant must submit a written request for such review to the Plan Administrator not later than 60 days following receipt by the Claimant of the Adverse Benefit Determination notification;

(b)     The Claimant will have the opportunity to submit written comments, documents, records and other information relating to the claim for benefits to the Plan Administrator;

(c)     The Claimant will have the right to have all comments, documents, records and other information relating to the claim for benefits that have been submitted by the Claimant considered on review without regard to whether such comments, documents, records or information was considered in the initial benefit determination; and

(d)     The Claimant will have reasonable access to, and copies of, all documents, records and other information relevant to the claim for benefits free of charge

46

EXHIBIT 10  Page 53  SUF

upon request, including (i) documents, records or other information relied upon for the benefit determination; (ii) documents, records or other information submitted, considered or generated without regard to whether such documents, records or other information were relied upon in making the benefit determination; and (iii) documents, records or other information that demonstrates compliance with the standard claims procedure.

The decision on review by the Plan Administrator will be binding and conclusive upon all persons, and the Claimant will neither be required nor be permitted to pursue further appeals to the Plan Administrator.

### 8.10 Notification of Benefit Determination on Review Regarding All Claims

(a)   Notice of the final benefit determination regarding an Adverse Benefit Determination will be furnished in writing or electronically to the Claimant after a full and fair review.  Notice of an Adverse Benefit Determination upon review will be provided at the time described in Sections 8.11, 8.12 or 8.13, as applicable, and will:

(i)   State the specific reason(s) for the Adverse Benefit Determination;

(ii)   Provide specific reference to pertinent Plan provisions on which the Adverse Benefit Determination is based;

(iii)   State that the Claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of all documents, records and other information relevant to the Claimant's claim for benefits, including (A) documents, records or other information relied upon for the benefit determination; (B) documents, records or other information submitted, considered or generated without regard to whether such documents, records or other information were relied upon in making the benefit determination; (C) documents, records or other information that demonstrates compliance with the standard claims procedure in making the benefit determination on the Claimant's claim; and (D) in the case of claims regarding health or disability benefits, documents, records or other information that constitutes a statement of policy or guidance with respect to the Plan concerning the denied treatment option or benefit for the Claimant's diagnosis, without regard to whether such statement of policy or guidance was relied upon in making the benefit determination; and

(iv)   Describe the Claimant's right to bring an action under section 502(a) of ERISA.

(b)   In the case of an Adverse Benefit Determination regarding health or disability benefits, such notice will also:

(i)   If an internal rule, guideline, protocol or other similar criterion was relied upon in making the Adverse Benefit Determination, either provide such criterion or state that such criterion was relied upon and that a copy of the criterion will be provided free of charge to the Claimant upon request;

(ii)   If the Adverse Benefit Determination is based on a medical necessity, experimental treatment or similar exclusion or limit, either explain the scientific or clinical judgment for the determination, applying the terms of

47

EXHIBIT 10  Page 54  SUF

the Plan to the Claimant's medical circumstances, or state that such explanation will be provided free of charge to the Claimant upon request; and

(iii)   Include the following statement:  "You and your plan may have other voluntary alternative dispute resolution options, such as mediation.  One way to find out what may be available is to contact your local U.S. Department of Labor Office and your State insurance regulatory agency."

(c)   In the case of an Adverse Benefit Determination regarding health benefits, such notice will also:

(i)   Provide information sufficient to identify the claim involved, including the date of the service, the health care provider, the claim amount (if applicable), and a statement indicating that the Claimant may request the diagnosis code and its corresponding meaning, and the treatment code and its corresponding meaning, and that such information will be provided upon such request;

(ii)   Provide the reason(s) for the Adverse Benefit Determination, including the denial code and its corresponding meaning, a description of the Plan's standard, if any, that was used to deny the claim, and if the final determination, then a discussion of the decision; and

(iii)   Disclose the availability of, and contact information for, any applicable office of health insurance consumer assistance or ombudsman established under the PHS Act section 2793 to assist individuals with the internal and external review process.

## 8.11   Timing of Notification Regarding Review of Health Claims

For Urgent Care Claims, such notice will be furnished as soon as possible, taking into account the medical exigencies, but not later than 72 hours following a request for review.  For other health claims that are not disability claims, such notice will be furnished (a) within a reasonable period of time appropriate to the medical circumstances but not later than 30 days following a request for a review of a Pre-Service Claim, and (b) within a reasonable period of time but not later than 60 days following a request for a review of a Post-Service Claim.  The period of time within which a benefit determination on review will be made begins at the time an appeal is filed in accordance with the reasonable procedures of the Plan, without regard to whether all the information necessary to make a benefit determination on review accompanies the filing.

## 8.12   Timing of Notification Regarding Review of Disability Claims

For disability claims, such notice will be furnished within a reasonable period of time but not later than 45 days following receipt of a request for a review (which period may be extended for up to 45 additional days provided that the Plan Administrator both determines that such an extension is necessary due to special circumstances and notifies the Claimant prior to the expiration of the initial 45-day period of the special circumstances requiring an extension and the date by which the Independent Fiduciary expects to render the determination on review).  The period of time within which a benefit determination on review will be made begins at the time an appeal is filed in accordance with the reasonable procedures of the Plan, without regard to whether all the

EXHIBIT 10  Page 55  SUF

information necessary to make a benefit determination on review accompanies the filing. In the event an extension of time is necessary due to the Claimant's failure to submit necessary information, the period for making the Adverse Benefit Determination will be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

**8.13    Timing of Notification Regarding Review of Non-Health and Non-Disability Claims**

The Plan Administrator will notify a Claimant of its determination on review with respect to the Adverse Benefit Determination of the Claimant regarding a claim that is not a health or disability claim within a reasonable period of time but not later than 60 days after the receipt of the Claimant's request for review unless the Plan Administrator determines that special circumstances require an extension of time for processing the review of the Adverse Benefit Determination. If the Plan Administrator determines that such extension of time is required, written notice of the extension (which will indicate the special circumstances requiring the extension and the date by which the Plan Administrator expects to render the determination on review) will be furnished to the Claimant prior to the termination of the initial 60-day review period. In no event will such extension exceed a period of 60 days from the end of the initial 60-day review period. In the event such extension is due to the Claimant's failure to submit necessary information, the period for making the determination on a review will be tolled from the date on which the notification of the extension is sent to the Claimant until the date on which the Claimant responds to the request for additional information.

**8.14    Exhaustion Required**

Completion of the claims procedures described in this Article VIII will be a condition precedent to commencing any legal or equitable action regarding a claim for benefits under the Plan by a Claimant, or by any other person or entity claiming rights through such Claimant. However, the Plan Administrator may waive in writing this completion requirement. If the Claimant chooses to pursue remedies under section 502(a) of ERISA under such circumstances, the claim or appeal is deemed denied on review without the exercise of discretion by an appropriate fiduciary except for errors that are (a) de minimis; (b) non-prejudicial; (c) attributable to good cause or matters beyond the Plan's control; (d) in the context of an ongoing good faith exchange of information; and (e) not reflective of a pattern or practice of non-compliance. The Claimant is entitled, upon written request, to an explanation of the Plan's basis for asserting that it meets this standard, so that the Claimant can make an informed judgment about whether to seek immediate review.

**8.15    External Review of Health Claims**

To the extent that the Plan must comply with the Federal external review process as provided in the PPACA, the following provisions will apply:

(a)     **Application of Procedures.** These external review procedures will apply only to claims involving medical judgment such as medical necessity or effectiveness of in-network services and rescission of coverage claims.

(b)     **Request for External Review.** The Claimant is entitled to file a request for external review if the appeal is filed within four months after the date of receipt of a notice of Adverse Benefit Determination or final internal Adverse Benefit Determination. If there is no corresponding date four months after the date of

49

EXHIBIT 10  Page 56  SUF

receipt of such a notice, then the request must be filed by the first day of the fifth month following receipt of the notice.

(c) **Preliminary Review**. Within five business days following the date of receipt of the external review request, the Plan must complete a preliminary review of the request to determine as follows:

(i) Whether the Claimant is or was covered under the Plan at the time the health care item or service was requested or, in the case of a retrospective review, was covered under the Plan at the time the health care item or service was provided;

(ii) Whether the Adverse Benefit Determination or the final Adverse Benefit Determination relates to the Claimant's failure to meet the requirements for eligibility under the Plan;

(iii) Whether the Claimant has exhausted the Plan's internal appeal process, unless the Claimant is not required to exhaust the internal appeals process; and

(iv) Whether the Claimant has provided all the information and forms required to process an external review.

(d) **Preliminary Review Notification**. Within one business day after completion of the preliminary review, the Plan must issue a notification in writing to the Claimant as follows:

(i) If the request is complete but not eligible for external review, such notification must include the reasons for ineligibility and contact information for the EBSA.

(ii) If the request is not complete, such notification must describe the information or materials needed to make the request complete and the Plan must allow the Claimant to perfect the request within the 4-month filing period or within the 48-hour period following receipt of the notification, whichever is later.

(e) **Referral to Independent Review Organization**. The Plan or its delegate must assign an IRO to conduct the external review. The Plan or its delegate must contract with at least three IROs for assignments under the Plan and rotate claims assignments among them (or incorporate other independent, unbiased methods for selection of IROs).

The contract between the Plan and IRO must provide the following:

(i) The assigned IRO will utilize legal experts where appropriate to make coverage determinations under the Plan;

(ii) The assigned IRO will timely notify the Claimant in writing of the request's eligibility and acceptance for external review. This notice will include a statement that the Claimant may submit in writing to the assigned IRO within 10 business days following the date of receipt of the notice additional information that the IRO must consider when conducting the

50

EXHIBIT 10  Page 57  SUF

external review. The IRO is not required to, but may, accept and consider additional information submitted after 10 business days.

(iii)    Within five business days after the date of assignment of the IRO, the Plan must provide to the assigned IRO the documents and any information considered in making the Adverse Benefit Determination or final internal Adverse Benefit Determination. Failure by the Plan to timely provide the documents and information must not delay the conduct of the external review.  If the Plan fails to timely provide the documents and information, the assigned IRO may terminate the external review and make a decision to reverse the Adverse Benefit Determination.  Within one business day of making the decision, the IRO must notify the Plan and the Claimant.

(iv)    Upon receipt of any information submitted by the Claimant, the assigned IRO must within one business day forward the information to the Plan. Upon receipt of any such information, the Plan may reconsider its Adverse Benefit Determination or final internal Adverse Benefit Determination that is the subject of the external review.  Reconsideration by the Plan must not delay the external review.  The external review may be terminated as a result of the reconsideration only if the Plan decides, upon completion of its reconsideration, to reverse its Adverse Benefit Determination or final internal Adverse Benefit Determination and provide coverage or payment.  Within one business day after making such a decision, the Plan must provide written notice of its decision to the Claimant and assigned IRO.  The assigned IRO must terminate the external review upon receipt of the notice from the Plan.

(v)     The IRO will review all of the information and documents timely received. In reaching a decision, the assigned IRO will review the claim de novo and not be bound by any decisions or conclusions reached during the Plan's internal claims and appeals process applicable above in this Article VIII.  In addition to documents and information provided, the assigned IRO, to the extent the information or documents are available and the IRO considers them appropriate, will consider the following in reaching a decision:

(A)     The Claimant's medical records;

(B)     The attending health care professional's recommendation;

(C)     Reports from appropriate health care professionals and other documents submitted by the Plan, Claimant or the Claimant's treating provider;

(D)     The terms of the Claimant's Plan to ensure that the IRO's decision is not contrary to the terms of the Plan, unless the terms are inconsistent with applicable law;

(E)     Appropriate practice guidelines, which must include applicable evidence-based standards and may include any other practice guidelines developed by the Federal government, national or professional medical societies, boards and associations;

51

EXHIBIT 10  Page 58  SUF

(F)     Any applicable clinical review criteria developed and used by the Plan, unless the criteria are inconsistent with the terms of the Plan or with applicable law;

(G)     The opinion of the IRO's clinical reviewer or reviewers after considering the information described in this notice to the extent the information or documents are available and the clinical reviewer or reviewers consider appropriate; and

(H)     With respect to claims involving experimental or investigational treatments, adequate clinical and scientific experience and protocols must be taken into account as part of the review process.

(vi)    The assigned IRO must provide written notice of the final external review decision within 45 days after the IRO receives the request for external review.  The IRO must deliver the notice of final external review decision to the Claimant and the Plan.

(vii)   The assigned IRO's decision notice will contain the following:

(A)     A general description of the reason for the request for external review, including information sufficient to identify the claim, including date(s) of service, health care provider, the claim amount (if applicable), the diagnosis code and its corresponding meaning, the treatment code and its corresponding meaning, and the reason for previous denial;

(B)     The date the IRO received the assignment to conduct the external review and the date of the IRO decision;

(C)     References to the evidence or documentation, including the specific coverage provisions and evidence-based standards considered in reaching its decision;

(D)     A discussion of the principal reason(s) for its decision, including the rationale for its decision and any evidence-based standards that were relied on in making its decision;

(E)     A statement that the determination is binding, except to the extent that other remedies may be available under state or Federal law to either the Plan or the Claimant;

(F)     A statement that judicial review may be available to the Claimant; and

(G)     Current contact information, including phone number, for any applicable office of health insurance consumer assistance or ombudsman established under PHS Act section 2793.

(viii)  After a final external review decision, the IRO must maintain records of all claims and notices associated with the external review process for six years.  An IRO must make such records available for examination by the

52

EXHIBIT 10  Page 59  SUF

Claimant, Plan or state or Federal oversight agency upon request, except where such disclosure would violate state or Federal privacy laws.

**(f)**    **Reversal of Plan's Decision.**  Upon receipt of a final external review decision reversing the Adverse Benefit Determination or final internal Adverse Benefit Determination, the Plan immediately must provide coverage or payment (including immediately authorizing or immediately paying benefits) for the claim.

**(g)**    **Expedited Review.**

    (i)    The Plan must allow a Claimant to make a request for an expedited external review with the Plan at the time the Claimant receives:

        (A)    An Adverse Benefit Determination that involves a medical condition of the Claimant for which the timeframes for completion of an expedited internal appeal under this Article VIII would seriously jeopardize the life or health of the Claimant or would jeopardize the Claimant's ability to regain maximum function and the Claimant has requested an expedited internal appeal under this Article VIII.

        (B)    A final internal Adverse Benefit Determination, if the Claimant has a medical condition where the timeframe for completion of a standard external review would seriously jeopardize the life or health of the Claimant or would jeopardize the Claimant's ability to regain maximum function, or if the final internal Adverse Benefit Determination concerns an admission, availability of care, continued stay or health care service for which the Claimant received emergency services, but has not been discharged from a facility.

    (ii)    Immediately upon receipt of the request for expedited external review, the Plan must determine whether the request meets the reviewability requirements set forth in Section 8.15(c).  The Plan must immediately send a notice that meets the requirements set forth in Section 8.15(d) for standard external review to the Claimant of its eligibility determination.

    (iii)    Upon a determination that a request is eligible for external review following the preliminary review, the Plan will assign an IRO pursuant to the requirements set forth in Section 8.15(e) for standard review.  The Plan must provide or transmit all necessary documents and information considered in making the Adverse Benefit Determination or final internal Adverse Benefit Determination to the assigned IRO electronically or by telephone or facsimile or any other available expeditious method.  The assigned IRO, to the extent the information or documents are available and the IRO considers them appropriate, must consider the information or documents described above under the procedures for standard review.  In reaching a decision, the assigned IRO must review the claim de novo and is not bound by any decisions or conclusions reached during the Plan's internal claims and appeals process.

    (iv)    The Plan's contract with the assigned IRO must require the IRO to provide notice of the final external review decision, in accordance with

53

EXHIBIT 10  Page 60  SUF

requirements set forth in Section 8.15(e)(vii), as expeditiously as the Claimant's medical condition or circumstances require, but in no event more than 72 hours after the IRO receives the request for an expedited external review. . If the notice is not in writing, within 48 hours after the date of providing that notice, the assigned IRO must provide written confirmation of the decision to the Claimant and the Plan.

### 8.16   Payment of Benefits

(a)   **Time and Form of Payment**.  If the Administrative Provider, Plan Administrator or Independent Fiduciary determines that a Claimant is entitled to a benefit hereunder, payment of such benefit will be made to such Claimant (or commence, as applicable) as soon as administratively practicable after the date the Administrative Provider, Plan Administrator or Independent Fiduciary determines that such Claimant is entitled to such benefit or on such other date as may be established pursuant to the terms of the applicable Component Program and, in the absence of such terms, in accordance with the following:

(i)   Any benefit assigned to a provider of services or to a former spouse will be paid directly to such provider or former spouse, or to the Covered Person, whichever the Administrative Provider, Plan Administrator or Independent Fiduciary chooses;

(ii)   Any benefit payable upon the death of a Covered Person will be paid to the estate of the Covered Person or to the designated beneficiary, whichever the Administrative Provider, Plan Administrator or Independent Fiduciary chooses;

(iii)   Any benefit payable with respect to a child covered by a QMCSO (within the meaning of section 609 of ERISA)—other than a benefit described in Subparagraph (i) or (ii) above—will be paid to the custodial parent of such child, if the Administrative Provider, Plan Administrator or Independent Fiduciary so chooses; and

(iv)   Any other benefit payable will be paid to the Covered Person (or in the case of a Covered Dependent, the Participant) subject to Section 12.2 (regarding payments to minors or incompetents).

(b)   **Special Rules**.  The following additional special rules apply to the payment of benefits:

(i)   Benefits under a Health Care Component will be paid in accordance with any assignment of rights made by or on behalf of a Covered Person in such Health Care Component as required by a state plan for medical assistance approved under Title XIX of the Social Security Act pursuant to section 1912(a)(1)(A) of such Act; and

(ii)   To the extent a state plan for medical assistance approved under Title XIX of the Social Security Act has paid benefits in any case in which a Health Care Component has a legal liability to pay for the items or services constituting such assistance, payment under the Health Care Component will be made in accordance with any state law giving the state the rights to such payment for a Covered Person.

54

EXHIBIT 10  Page 61  SUF

## 8.17    Authorized Representatives

An authorized representative may act on behalf of a Claimant in pursuing a benefit claim or an appeal of an Adverse Benefit Determination.  An individual or entity will only be determined to be a Claimant's authorized representative for such purposes if the Claimant has provided the Plan Administrator with a written statement identifying such individual or entity as his authorized representative and describing the scope of the authority of such authorized representative; provided that, for an Urgent Care Claim, a Health Care Professional with knowledge of a Claimant's medical condition will be permitted to act as the authorized representative of the Claimant.   In the event a Claimant identifies an individual or entity as his authorized representative in writing to the Plan Administrator but fails to describe the scope of the authority of such authorized representative, the Plan Administrator will assume that such authorized representative has full powers to act with respect to all matters pertaining to the Claimant's benefit claim under the Plan or appeal of an Adverse Benefit Determination with respect to such benefit claim.

EXHIBIT 10  Page 62  SUF

## ARTICLE IX

## FUNDING OF PLAN

**9.1    Source of Benefits**

Except for benefits provided by an Insurer, benefits under the Plan will be paid from the general assets of the Employer; provided, however, that with respect to any Component Program, the Employer may establish a trust for that purpose (including any trust that is or is intended to be a voluntary beneficiary association under section 501(a)(9) of the Code).

**9.2    Premiums**

Premiums will be paid to the applicable company from the general assets of the Employer and/or from Participants' contributions, within the time required by the applicable Component Program or applicable contract.  Insurance premiums for any Component Program whose benefits are provided through an Insurer will be paid to the applicable Insurer from the general assets of the Employer and/or from Participants' contributions within the time required by the applicable Component Program or applicable contract with the Insurer.  All premiums will be paid within the time prescribed by Department of Labor regulation section 2510.3-102.

**9.3    Participant Contributions**

**(a)    Amount**.  Participants' contributions will be determined by the Employer and will be set forth in or attached to each Component Program Document.  Participants will be timely notified of required contributions for each Component Program offered pursuant to the Plan.  Upon enrollment of a Participant in, amendment of coverage under, or enrollment of a Dependent in any Component Program, the Participant will be advised of any required contributions under that Component Program.  Further, Participants' contributions may be changed by and in the sole discretion of the Employer (subject to the rules regarding changes in Participant contributions under the Cafeteria Component Programs), and each Participant will be advised of any change in the amount of contributions as provided in the applicable Component Program or, in the absence of such provision, in writing no later than 31 days prior to the effective date of the change.  A COBRA Beneficiary will be required to contribute any additional amount determined in accordance with Section 5.6.

**(b)    Payment**.  Participants will pay their contributions in the manner and within the time period set forth by the applicable Component Program.

**(c)    Certain Amounts Pre-Tax**.  Subject to the terms and conditions set forth in Article IV regarding the Cafeteria Component Programs, Participants will be permitted to elect to pay for coverage under certain Component Programs on a pre-tax basis.  If a Participant makes such an election, the Participant's Compensation will be reduced and an amount equal to the reduction will be contributed by the Employer and applied to the Participant's share of any cost of coverage under the applicable Component Program.

EXHIBIT 10  Page 63  SUF

## ARTICLE X

## ADMINISTRATION OF PLAN

**10.1   Plan Administrator**

The Company will be the Plan Administrator.  The general administration of the Plan will be vested in the Plan Administrator.  For purposes of ERISA, the Plan Administrator will be the "administrator" and the "named fiduciary" with respect to the general administration of the Plan.  The Plan Administrator will designate persons who will be authorized to sign for the Plan Administrator and, upon such designation, the signature of such persons will bind the Plan Administrator.

**10.2   Discretion to Interpret Plan**

The Plan Administrator will have full and absolute discretion to construe and interpret all provisions of the Plan and the Component Programs, including the discretion to resolve ambiguities, inconsistencies or omissions conclusively; provided, however, that all such discretionary interpretations and decisions will be applied in a uniform and nondiscriminatory manner to all Participants, beneficiaries and Covered Dependents who are similarly situated.  All decisions of the Plan Administrator upon all matters within the scope of its authority will be binding and conclusive upon all persons.

**10.3   Powers and Duties**

In addition to the powers described, in Section 10.2 and all other powers specifically granted under the Plan, the Plan Administrator will have all powers necessary or proper to administer the Plan and to discharge its duties under the Plan, and it will have full and absolute discretion in its exercise thereof.  Such powers will include the following:

**(a)**   To make and enforce any rules, regulations and procedures it deems necessary or proper for the orderly and efficient administration of the Plan;

**(b)**   To enter an Administrative Agreement with any individual or entity to perform services relating to one or more Component Programs;

**(c)**   To interpret and decide all matters of fact in granting or denying benefits and claims under the Plan, its interpretation and decision thereof to be final and conclusive on all persons claiming benefits under the Plan;

**(d)**   To determine eligibility under the terms of the Plan, its determination thereof to be final and conclusive on all persons;

**(e)**   To determine the amount of and authorize the payment of benefits under the Plan, its determination and authorization thereof to be final and conclusive on all persons;

**(f)**   To prepare and distribute information explaining the Plan;

**(g)**   To obtain from the Employer, Eligible Employees, Advisors and Directors, beneficiaries and Dependents any information it deems necessary for the proper administration of the Plan;

**(h)**   To appoint an Administrative Provider as set forth in Section 10.7;

57

EXHIBIT 10  Page 64  SUF

(i)     To sue or cause suit to be brought in the name of the Plan; and

(j)     Subject to the provisions of Article VIII, to establish claims procedures, including a procedure for the review of any claims denied by an Administrative Provider.

### 10.4   Expenses; Records

All expenses that arise in connection with the administration of the Plan will be paid by the Plan; however, to the extent not paid by the Plan, the Employer will pay (a) the reasonable expenses incident to the administration of the Plan, including the compensation of any legal counsel, accountants, advisors or other technical or clerical assistance as may be required, and (b) any other expenses incidental to the operation of the Plan that the Plan Administrator determines are proper. Expenses of the Plan may be prorated, as determined by the Plan Administrator, among the Company and Participating Employers. The Plan Administrator will keep appropriate records and will make available to any Participant or beneficiary for examination during business hours any records pertaining to that individual's interest in the Plan.

### 10.5   Delegation by Plan Administrator

(a)     **Delegation**. The Plan Administrator may delegate any of its powers, duties and responsibilities with respect to the operation and administration of the Plan, including the administration of claims, the authority to authorize payment of benefits, the review of denied or modified claims, and the discretion to decide matters of fact and to interpret Plan provisions. The Plan Administrator also may employ, and authorize any of its delegates to employ, persons to render advice regarding any fiduciary responsibility hereunder. All delegations will be terminable by the Plan Administrator upon such notice as it deems appropriate. Except as may otherwise be specifically provided in the applicable Component Program Document, in the case of any insured Component Program, the applicable Insurer is hereby delegated the powers and duties of the Plan Administrator, including, without limitation, the discretion to interpret the Plan provisions, with respect to such insured Component Program.

(b)     **Liability and Indemnification**. Upon designation and acceptance of such delegation, employment or authorization, the Plan Administrator will have no liability for the acts or omissions of any such designee as long as the Plan Administrator does not violate its fiduciary responsibility in making or continuing such designation. However, if the delegate is an individual Employee of the Company or a member of the Board, the Company will indemnify and hold harmless such individual against all expenses and liabilities arising out of their administrative functions or fiduciary responsibilities hereunder, including any expenses and liabilities caused by or resulting from an act or omission constituting the negligence of such individual in the performance of such functions or responsibilities, but excluding expenses and liabilities arising out of the individual's gross negligence or willful misconduct. Expenses against which the individual will be indemnified include the amounts of any settlement, judgment, costs, counsel fees and related charges reasonably incurred. Notwithstanding the foregoing provisions of this Paragraph (b), this indemnification will not apply to any expense incurred without the consent or approval of the Company, unless the Company waives the consent or approval in writing.

58

EXHIBIT 10  Page 65  SUF

**10.6    Reliance on Reports, Certificates and Participant Information**

The Plan Administrator will be entitled to rely conclusively upon all tables, valuations, certificates, opinions and reports furnished by an actuary, accountant, controller, counsel, insurance company, Administrative Provider, or other person employed or engaged for such purposes.  Moreover, the Plan Administrator and the Employer will be entitled to rely upon information furnished to the Plan Administrator or the Employer by a Covered Person, including such person's current mailing address.

**10.7    Administrative Provider**

The Plan Administrator may appoint one or more Administrative Providers.  Subject to the direction and ultimate discretion of the Plan Administrator, the Administrative Provider will have the duties and powers necessary to process claims and make payments under the Plan, including the following:

**(a)**    To act under the direction and control of the Plan Administrator;

**(b)**    To determine eligibility for participation in the Plan and entitlement to benefits thereunder;

**(c)**    To receive, review, verify and investigate all requests for benefits under the Plan;

**(d)**    To the extent delegated by the Plan Administrator, to decide matters of fact, determine eligibility for benefits and determine the amount of benefits in its sole and absolute discretion;

**(e)**    To inform the Plan Administrator as to the amount and timing of benefit payments and expenses under the Plan;

**(f)**    To prescribe procedures to be followed by Participants in filing requests for benefits under the Plan;

**(g)**    To secure from the Employer, the Plan Administrator, Participants, beneficiaries and Covered Dependents any information necessary for the proper processing and payment of benefits under the Plan;

**(h)**    To furnish the Employer and the Plan Administrator, upon request, with reasonable and appropriate reports with respect to the processing and payment of benefits under the Plan;

**(i)**    To maintain records relating to requests for benefits, processing of benefits, and payment or denial of requests for benefits; and

**(j)**    To do such other acts as may be necessary or requested by the Plan Administrator to handle the processing and payment of benefits under the Plan;

provided, however, that the Administrative Provider will have only those powers specifically designated by the Plan Administrator and set forth in the applicable Administrative Agreement.

EXHIBIT 10  Page 66  SUF

**10.8   Fiduciary Duty**

    **(a)**   **General Rule.**   Each fiduciary under the Plan will discharge his duties and responsibilities with respect to the Plan:

        (i)   Solely in the interest of Covered Persons and for the exclusive purposes of providing them benefits and of defraying reasonable expenses of administering the Plan;

        (ii)   With the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

        (iii)   In accordance with the documents and instruments governing the Plan insofar as such documents and instruments are consistent with applicable law.

    **(b)**   **Prohibited Transactions.**   No fiduciary under the Plan will cause the Plan to enter into a "prohibited transaction" as provided in section 406 of ERISA for which an individual or class exemption is not available to the extent such sections are applicable to the Plan or any fiduciary under the Plan.

EXHIBIT 10  Page 67  SUF

## ARTICLE XI

## AMENDMENT AND TERMINATION OF PLAN

**11.1    Right to Amend**

The Company reserves the absolute and unconditional right to amend the Plan and any or all Component Programs, at any time, prospectively or retroactively, on behalf of itself and each Participating Employer, including the right to reduce or eliminate benefits provided pursuant to the provisions of the Plan or any Component Program. Amendments to the Plan and/or a Component Program may be effectuated by an action of the Board; provided, however, that any amendments to the Plan and/or a Component Program that do not have a significant cost impact on the Employer may also be made by the Benefits Committee. Any oral statements or representations made by the Employer, an Administrative Provider or any other individual or entity that alter, modify, amend or are inconsistent with the written terms of the Plan will be invalid and unenforceable and may not be relied upon by any Participant, Eligible Employee, Advisor or Director, beneficiary, Dependent, service provider, or other individual or entity.

**11.2    Right to Terminate; Automatic Termination**

The Company hopes and expects to continue the Plan.   However, the Company reserves the absolute and unconditional right to terminate the Plan and any Component Programs, in whole or in part, on behalf of itself and each Participating Employer.

**11.3    Effect of Amendment or Termination**

If the Plan is amended or terminated, each Covered Person and beneficiary will have no further rights hereunder and the Employer will have no further obligations hereunder, except as otherwise specifically provided under the terms of the Plan and each Component Program; provided, however, that no modification, alteration, amendment, suspension or termination will be made that would diminish any vested accrued benefits arising from incurred but unpaid claims of Covered Persons or beneficiaries existing prior to the effective date of such modification, alteration, amendment, suspension or termination.

**11.4    Merger or Consolidation**

If the Employer does not survive any dissolution, merger, consolidation or reorganization, the Plan will terminate with respect to the Employer and its Employees, Advisors and Directors unless the Plan is continued by the successor to the Employer and such successor agrees to be bound by the terms and conditions of the Plan such that the successor will be substituted hereunder for the Employer.

EXHIBIT 10  Page 68  SUF

## ARTICLE XII

## MISCELLANEOUS PROVISIONS

### 12.1   No Guarantee of Employment

Nothing herein will alter the presumption of employment at will.  Nothing herein will be construed to be a contract between the Employer and an Employee, Advisor or Director to be consideration for, or an inducement of, the employment of any employee by the Employer. Nothing herein will grant any employee the right to be retained in the service of the Employer or limit in any way the right of the Employer to discharge or terminate the service of any Employee, Advisor or Director at any time without regard to the effect such discharge or termination may have on any rights under the Plan.

### 12.2   Payments to Minors and Incompetents

If a Covered Person entitled to receive any benefits under the Plan is a minor, is determined by the Plan Administrator to be incompetent, or is adjudged by a court of competent jurisdiction to be legally incapable of giving valid receipt and discharge for benefits provided under the Plan, the Plan Administrator may pay such benefits to the duly-appointed guardian or conservator of such person or to any third party who is authorized (as determined by the Plan Administrator) to receive any benefit under the Plan for the Covered Person.  Such payment will fully discharge all liabilities and obligations of the Plan Administrator under the Plan with respect to such benefits.

### 12.3   No Vested Right to Benefits

No Covered Person or anyone claiming through such Covered Person will have any right to or interest in any benefits hereunder, except as specifically provided herein.

### 12.4   Non-alienation of Benefits

Except as provided in Section 3.5(d) (regarding QMCSO coverage), Section 12.8 (regarding incorrect information), and Section 12.10 (regarding compromise of claims), or except as the Plan Administrator may otherwise permit by rule or regulation, no interest in or benefit payable under the Plan will be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge, and any attempt by a Covered Person to anticipate, alienate, sell, transfer, assign, pledge, encumber or charge the same will be void and of no effect; nor will any interest in or benefit payable under the Plan be in any way subject to any legal or equitable process, including garnishment, attachment, levy, seizure or lien.  This provision will be construed to provide each Covered Person, or other person claiming any interest or benefit in the Plan through a Covered Person, with the maximum protection afforded such Covered Person's interest in the Plan (and benefits thereunder) by law against alienation or encumbrance, and against any legal and equitable process, including attachment, garnishment, levy, seizure or lien.

### 12.5   Unknown Whereabouts

Each Participant will inform the Plan Administrator or its delegate of his current mailing address and the current mailing address of his Covered Dependents and beneficiaries. If a Participant fails to inform the Plan Administrator of his current mailing address or the current mailing address of each Covered Dependent or beneficiary, neither the Plan Administrator, any Administrative Provider, nor the Employer will be responsible for any

EXHIBIT 10  Page 69  SUF

late payment or loss of benefits, nor for failure of any notice to be provided or provided timely under the terms of the Plan to such individual.   In the event that the Plan Administrator is unable to locate a Participant or beneficiary within two years after a payment is due or a check issued to pay such benefit has not been presented to the issuing financial institution within two years after issuance, that amount will be forfeited.

### 12.6   Participating Employers

**(a)**   **Designation by Company**.  The Company may designate any Affiliate to adopt and thereby participate in the Plan as a Participating Employer.  Participating Employers are provided on Appendix D.  Appendix D may be revised from time to time without the need for a formal amendment to the Plan, in which case a revised Appendix D will be attached hereto.

**(b)**   **Termination of Participation**.  Any Participating Employer may terminate its participation in the Plan or in any Component Program(s) as allowed by the Company.  Moreover, the Company in its discretion may terminate a Participating Employer's participation in the Plan or in any Component Program(s) at any time.

**(c)**   **Transfers of Employment**.  Transfer of employment among the Company and Participating Employers will not be considered as a termination of employment for purposes of the Plan.

### 12.7   Notice and Filing

Any notice, administrative form or other communication required to be provided to, delivered to or filed with the Plan Administrator will include provision to, delivery to or filing with any person or entity designated by the Plan Administrator to be an agent for the disbursement and receipt of administrative forms and communications.  Except as otherwise provided herein, where such provision, delivery or filing is required, it will be deemed given or made only upon actual receipt of such notice, administrative form or other communication by the Plan Administrator or designee.  Unless otherwise provided by law, any notice or other document sent by the Employer, the Plan Administrator or an Administrative Provider will be deemed given or made when deposited in the mail, when entrusted to a courier or delivery service, or when sent by telefax or other electronic means.

### 12.8   Incorrect Information, Fraud, Concealment, or Error

**(a)**   **Recovery Due to Errors**.  If because of a human or systems error, or because of incorrect information provided by or correct information failed to be provided by fraud, misrepresentation or concealment of any relevant fact (as determined by the Plan Administrator) by any Covered Person, beneficiary or other individual, the Plan: (i) enrolls any individual in a Component Program; (ii) provides continuation coverage pursuant to Article V; (iii) pays a claim under the Plan; (iv) incurs a liability for failure to enroll, provide continuation coverage, pay a benefit claim, or for terminating enrollment or continuation coverage; or (v) makes any overpayment or erroneous payment, the Plan Administrator will be entitled to recover from such Covered Person, beneficiary or other individual the benefit paid or the liability incurred, together with all expenses incidental to or necessary for such recovery.  This recovery may be by whatever means the Plan Administrator chooses, including by offset against benefits otherwise properly due hereunder.

63

EXHIBIT 10  Page 70  SUF

(b) **No Diminished Right to Benefits**.  Human or systems error will not deprive an Eligible Employee or a Dependent of coverage or affect the amount of benefits to which a Covered Person or beneficiary is otherwise entitled under the terms of the Plan.

(c) **Termination of Coverage and Repayment of Benefits or Contributions by an Employee**.  Except as otherwise required by federal law, the Plan reserves the right to terminate coverage of any Covered Person for any action taken by such Covered Person with the intent to commit fraud against the Plan.  Further, with regard to such action, the Plan may seek repayment from the Employee or Covered Person for (i) any payments made to or on behalf of a Covered Person pursuant to the Plan; (ii) any administrative fees or costs incurred in processing any claims related to such actions; and/or (iii) any contributions made to the Plan on behalf of the Covered Person by the Employer.

## 12.9  Medical Responsibilities

With regard to Component Programs providing medical and other health-related benefits, all responsibility for medical decisions concerning any treatment, drug, service or supply for a Covered Person rests with the Covered Person and such person's treating physician.  Neither the Employer, the Plan, the Plan Administrator nor an Administrative Provider has any responsibility for any such medical decision or for any act or omission of any physician, hospital, pharmacist, nurse or other provider of medical goods or services; each may rely upon the representations of any physician, hospital, pharmacist, nurse or other provider of goods or services without any duty to verify independently the truth of such representations.  A decision concerning any treatment, drug, service or supply or any other decision made by a Covered Person or medical provider, will in no way affect the decision by the Plan Administrator or its delegate whether a benefit is payable under the Plan with respect to such treatment, drug, service or supply.

## 12.10  Compromise of Claims

A claim for benefits may be compromised on any terms acceptable to both the Participant and the Plan Administrator.

## 12.11  Electronic Administration

The Plan may be administered electronically by use of telephonic and/or computer resources.  It is specifically contemplated that, where the Plan refers to communications such as designations, writings, notices, elections and the like, these communications may occur electronically pursuant to such procedures as the Plan Administrator may establish.

## 12.12  Qualified Medical Child Support Orders

(a) **Notification**.  If a medical child support order (as defined by ERISA section 609(a)(2)(B)) is received by the Plan with respect to coverage of an Alternate Recipient under a Component Program, the Plan Administrator will promptly notify the parent Participant and each Alternate Recipient of the receipt of such order and the Plan's procedures for determining whether the order is qualified.

(b) **Procedures**.  The Plan Administrator will establish reasonable procedures to determine whether a medical child support order is qualified and to administer

EXHIBIT 10  Page 71  SUF

the provision of benefits under such an order.  Such procedures will be in writing, provide for notification as described above, and permit an Alternate Recipient to designate a personal representative to receive copies of notice sent with respect to the order.

(c)     **Determination of Qualification**.  Within a reasonable time after receipt of an order, the Plan Administrator will determine whether the order is qualified and will notify the parent Participant and each Alternate Recipient of such determination.

EXHIBIT 10  Page 72  SUF

## ARTICLE XIII

## FMLA COVERAGE

**13.1   Article Controls**

This Article XIII is intended to comply with the FMLA. All provisions in this Article XIII will be interpreted, construed and limited in accordance with this intent.  This Article will be applied only as required by the FMLA and only to (a) Health Care Components and (b) those other Component Programs that specifically permit continuation of coverage during FMLA Leave.   This Article XIII will control over any contrary, inconsistent or ambiguous provisions herein.

**13.2   FMLA Coverage**

    **(a)**    **Eligible Participants**.  Each Participant who:

        (i)    Is an Employee of the Company or of any Participating Employer with at least 50 employees (hereinafter referred to as the "Employer" for purposes of this Article XIII); and

        (ii)    On the first date of a proposed FMLA Leave, has completed at least 12 months of service for the Employer, of which at least 1,250 hours of service were completed during the immediately preceding 12-month period and works at a location where the Company employs 50 or more employees within 75 miles,

(hereinafter referred to as "Participant" for purposes of this Article XIII), may elect, consistent with Section 3.6, to maintain coverage under any Component Program set forth in Section 13.1 during any FMLA Leave for the duration of his FMLA Leave, at the level and under the conditions that coverage would have been provided if the Participant had continued in employment continuously for the duration of his FMLA Leave.

    **(b)**    **Health Care Components**.  With respect to Health Care Components, the same health benefits provided to a Participant under the applicable Health Care Component prior to the commencement of FMLA Leave will be maintained during FMLA Leave subject to the provisions of Section 3.6(a). While a Participant is on FMLA Leave, if the Employer provides a new health program or new health benefits, or if the Employer changes health benefits or programs, the Participant is entitled to or subject to the new or changed program and/or benefits to the same extent as if he were actively employed and not on FMLA Leave, and the Employer will provide timely notice to a Participant on FMLA Leave of any opportunity to change programs or benefits or of any increase or decrease in benefits.

**13.3   FMLA Leave**

"FMLA Leave" means no more than a total of 12 work weeks of leave of absence (paid or unpaid) during any Plan Year (26 work weeks in a single 12 month period in the case of military caregiver leave) for one or more of the following:

    **(a)**    Because of the birth of a son or daughter of a Participant and in order to care for such son or daughter;

EXHIBIT 10  Page 73  SUF

(b)    Because of the placement of a son or daughter with a Participant for adoption or foster care;

(c)    In order to care for the spouse, son, daughter or parent of a Participant if such spouse, son, daughter or parent has a serious health condition;

(d)    Because of a serious health condition that renders a Participant unable to perform the functions of the employment position of such Participant;

(e)    Because of any qualifying exigency arising out of the fact that a spouse, son, daughter or parent of a Participant is a covered military member on active duty (or has been notified of an impending call or order to active duty) in support of a contingency operation; and/or

(f)    In order to care for the Participant's spouse, son, daughter, parent or next of kin who is a member of the armed forces (including the national guard or reserves) (a "covered service member") with a serious injury or illness incurred in the line of duty on active duty (*i.e.*, military caregiver leave);

provided, however, that FMLA Leave described in Paragraphs (a) and (b) above will not include a period after the date 12 months following the birth or placement of such son or daughter.

### 13.4    Participant Contributions

A Participant who elects to maintain Health Care Component coverage during FMLA Leave must continue making any contributions required for that coverage and the Employer will continue to pay its portion of such coverage. Likewise, to the extent any non-Health Care Component may provide, the Participant may elect to continue his coverage under such other Component Programs and must continue making any contributions required for that coverage. If the required contributions are increased or decreased during FMLA Leave, the Participant will be required to pay the increased or decreased amount. Such contributions will be paid in accordance with Section 3.6 and subject to the change in election provisions of Section 4.4. Prior to the commencement of his FMLA Leave, the Plan Administrator will provide a Participant with written notice of the terms and conditions under which Component Program coverage may be continued and the basis on which the Participant's contributions will be made. The terms and conditions will not be more onerous than what is required of other Participants in the applicable Component Program who are on non-FMLA leave without pay. The Employer, in its discretion, may elect to pay any required Participant contributions with respect to FMLA Coverage if such contributions have not otherwise been paid on or before their due date.

### 13.5    Termination of FMLA Coverage

(a)    **General Rule**.   FMLA Coverage will terminate when any one of the following occurs:

(i)    The Participant notifies the Employer of his intent not to return to employment at the end of FMLA Leave;

(ii)    The Participant fails to return to employment at the end of FMLA Leave;

(iii)    The Participant exhausts his entitlement to FMLA Leave;

67

EXHIBIT 10  Page 74  SUF

(iv)    The Participant elects not to continue FMLA Coverage during his FMLA Leave;

(v)    Any required Participant contributions are more than 30 days overdue; or

(vi)    The applicable Component Program terminates.

**(b)**    **Exception for Key Employees.** Notwithstanding Paragraph (a), if a Participant who is a "key employee" (as defined in 29 C.F.R. § 825.217) does not return from FMLA Leave when notified by the Employer that substantial or grievous economic injury (as defined in 29 C.F.R. § 825.218) will result from restoration of his employment, the key employee's entitlement to FMLA Coverage ends when any one of the following occurs:

(i)    The key employee notifies the Employer that he does not desire restoration of employment at the end of his FMLA Leave;

(ii)    His entitlement to FMLA Leave is exhausted; or

(iii)    Such restoration is denied.

**13.6**    **Recovery of Certain Contributions by Employer**

**(a)**    **Right to Recovery.** The Employer may recover from the Participant any contributions it made on behalf of the Participant pursuant to Section 13.4 for maintaining Component Program coverage (including Health Care Component coverage), regardless of whether the Participant returns to employment following his FMLA Leave. In addition, the Employer may recover any amounts it paid for maintaining Health Care Component coverage for a Participant on FMLA Leave during any period of unpaid (but not paid) FMLA Leave if the Participant fails to return from his FMLA Leave, unless such failure is due to:

(i)    The continuation, recurrence or onset of a serious health condition entitling the Participant to FMLA Leave under Section 13.3(c) or (d) or a serious injury or illness of a covered service member under Section 13.3(f), in which case the Employer may require a written certification issued by the health care provider of the son, daughter, spouse or parent of the Participant, which certification will state that the Participant is needed to care for the son, daughter, spouse, parent or covered service member of the Participant when FMLA Leave expired; or

(ii)    Circumstances beyond the Eligible Employee's control, including the following:

(A)    The Eligible Employee chooses to stay home with a newborn Child that has a serious health condition;

(B)    The Eligible Employee's Spouse is subject to an unexpected job location transfer more than 75 miles from the Eligible Employee's worksite;

(C)    The Eligible Employee's relative has a serious health condition and the Eligible Employee is needed to provide care; or

68

EXHIBIT 10  Page 75  SUF

(D)    The Eligible Employee is a key employee who decides not to return to work upon being notified of the Employer's intent to deny the Eligible Employee job restoration because of substantial and grievous economic injury to the Employer's operations that would result from the restoration.

**(b)**    **"Return to Work" Defined**.  For purposes of this Section, a Participant on FMLA Leave who returns to work for at least 30 days is considered to have "returned" to work.

**(c)**    **Limitation of Recovery from Health Care Component**.  For coverage under a Health Care Component, the Employer may not recover from a Participant pursuant to this Section 13.6 an amount in excess of the maximum amount that would be permitted under Section 5.6 if the Participant had elected continuation coverage pursuant to Article V.  For coverage under any other Component Program, the Employer may recover only the costs incurred for paying such Participant's share of any premiums.

**(d)**    **Right to Benefits**.  The right of the Employer to recover contributions pursuant to this Paragraph will not nullify a Participant's right otherwise to receive benefits under the applicable Component Program for claims incurred during the FMLA Leave.

## 13.7   Reinstatement of Health Care Component Coverage

If a Participant chooses not to retain coverage under a Health Care Component during FMLA Leave or if FMLA Coverage is terminated during FMLA Leave because of a failure to make contributions as required, coverage of the Participant under the applicable Health Care Component will nonetheless be reinstated when the Participant returns to active employment with an Employer following FMLA Leave, on the same terms and conditions as existed prior to the FMLA Leave and without any qualifying period requirement, evidence of insurability or medical underwriting requirement, or preexisting condition restrictions that the Participant met before his coverage lapsed, but subject to any changes occurring during the period of FMLA Leave that affect all similarly-situated employees of the Employer.  Upon a Participant's reinstatement into the Health Care Flexible Spending Account Program in accordance with this Section, such Participant may elect to resume coverage under such program either (a) at the level in effect at the time of commencement of the FMLA Leave (without any reduction for unpaid premiums during such FMLA Leave, which would be made up ratably over the period of coverage remaining in the Plan Year upon such Participant's return), or (b) at a level proportionately reduced by unpaid premiums during the period of FMLA Leave.  A Participant on unpaid FMLA Leave will not be entitled to accrue any additional benefits or seniority during such leave.  However, for purposes of any changes in benefit levels occurring during FMLA Leave, a Participant on FMLA Leave (paid or unpaid) will be treated as if he had been in continuous employment.

EXHIBIT 10  Page 76  SUF

## ARTICLE XIV

## USERRA

### 14.1   Purpose of Article

This Article XIV is intended to comply with USERRA.  All provisions in this Article will be interpreted, construed and limited in accordance with this intent and will be applied only as required by USERRA and only to those Component Programs that provide benefits under "health plans," as defined by section 4303(7) of USERRA, and to those Component Programs that specifically permit continuation of coverage during USERRA Leave.   This Article XIV will control over any contrary, inconsistent or ambiguous provisions herein.

### 14.2   USERRA Coverage

**(a)**   **General Rule**.  Each Participant who is a Uniformed Person, and each Covered Dependent of a Uniformed Person, may elect to maintain coverage under the Component Programs set forth in Section 14.1 during any USERRA Leave for the duration of that USERRA Leave at the level and under the conditions that coverage would have been provided if such Uniformed Person had continued in employment continuously for the duration of such USERRA Leave.

**(b)**   **Health Care Component**.  With respect to Health Care Component, if coverage is continued pursuant to this Article, the same benefits provided to the Participant or Covered Dependent under the Plan prior to the commencement of USERRA Leave will be maintained during USERRA Leave, except as otherwise provided in this Paragraph and subject to the provisions of Section 3.6(a).  If the Employer provides a new program or benefits or if it changes benefits or programs while the Uniformed Person is on USERRA Leave, he (and any Covered Dependent) is entitled to or subject to the new or changed program and/or benefits to the same extent as if the Uniformed Person were not on USERRA Leave; and the Employer will provide timely notice to a Participant on USERRA Leave of any opportunity to change programs or benefits or of any increase or decrease in benefits.

### 14.3   USERRA Leave

"USERRA Leave" means a leave of absence (paid or unpaid) for "service in the uniformed services," as defined by section 4303(13) of USERRA.  A person will be considered to be on USERRA Leave only if he has complied with the requirements of USERRA, including the notice and other requirements of section 4312 of USERRA.

### 14.4   Contributions

A Uniformed Person who elects to maintain Health Care Component coverage during USERRA Leave will be required to continue making any contributions required for that coverage.  Likewise, to the extent any non-Health Care Component may provide, the Participant may elect to continue his coverage and pay the applicable contributions, if any, under such other Component Programs.  If the required contributions are increased or decreased during USERRA Leave, the Uniformed Person will be required to pay the increased or decreased amount.   For such contributions as to a Health Care Component, the Uniformed Person will not be required to pay more than 102 percent of

the "applicable premium" (as defined by section 4980B(f)(4) of the Code), unless the USERRA Leave is less than 31 days, in which case the Uniformed Person will not be required to pay more than 100 percent of such "applicable premium." Such contributions will be paid in accordance with Section 3.6. Prior to the commencement of USERRA Leave if practicable, the Plan Administrator will provide a Uniformed Person written notice of the terms and conditions under which Component Program coverage may be continued and the basis on which the Participant's contributions will be made. These terms and conditions will not be more onerous than what is required of other persons who participate in the Plan and are on non-USERRA leave without pay.

## 14.5   Termination of USERRA Coverage

USERRA Coverage will terminate when any one of the following occurs:

**(a)**    24 months after the date the Uniformed Person's USERRA Leave begins;

**(b)**    The day after the date on which the Uniformed Person fails to apply for or return to a position of employment with an Employer, as such failure is determined under section 4312(e) of USERRA;

**(c)**    The date the Uniformed Person elects not to continue USERRA Coverage during his USERRA Leave;

**(d)**    The date 30 days after the due date for any required contributions, if such contributions have not been made; or

**(e)**    The effective date of termination of the Plan.

## 14.6   Recovery of Certain Contributions by Employer

An Employer may recover any premiums or amounts it paid for maintaining coverage for a Uniformed Person on USERRA Leave during any period of unpaid (but not paid) USERRA Leave if such person fails to return when his USERRA Leave expires. With respect to a Health Care Component, an Employer may not recover from such person pursuant to this Section an amount in excess of the maximum amount permitted if the person had elected continuation coverage pursuant to COBRA. With respect to any other Component Program, an Employer may recover only the costs incurred for paying such person's share of any premiums. The right of an Employer's recovery pursuant to this Section will not nullify a Uniformed Person's right otherwise to receive benefits under the Plan for claims incurred during the USERRA Leave.

## 14.7   Reinstatement of Plan Coverage

If a Uniformed Person chooses not to retain coverage under a Health Care Component during USERRA Leave or if USERRA Coverage is terminated during USERRA Leave because of a failure to make contributions as required, coverage of the Uniformed Person or his Covered Dependents under such Health Care Component will nonetheless be reinstated when the Uniformed Person returns to active employment with an Employer following USERRA Leave, on the same terms and conditions as existed prior to such USERRA Leave and without any qualifying period requirement, evidence of insurability or medical underwriting requirement, or preexisting condition restrictions that the Uniformed Person or his Covered Dependents had satisfied before coverage lapsed, but subject to any changes occurring during the USERRA Leave that affect all similarly-situated employees of the Employer, and subject to Section 14.8. However, for

EXHIBIT 10  Page 78  SUF

purposes of any changes (increases or decreases) in benefit levels occurring during USERRA Leave, a Uniformed Person will be treated as if he had been in continuous employment.

**14.8   Injuries or Sicknesses Incurred in Performance of Service**

The exclusions, waiting periods and preexisting condition restrictions under the Plan will apply to coverage of a Condition determined by the Secretary of Veterans Affairs to have been incurred in or aggravated during performance of service in the uniformed services.

EXHIBIT 10  Page 79  SUF

## ARTICLE XV

## HIPAA PRIVACY COMPLIANCE

**15.1    Scope of Article**

The Plan is a "hybrid entity," as such term is defined in section 164.103 of the HIPAA Regulations, which requires among other things that the Plan (a) designate those of its components that constitute "health care components," as such term is defined in section 164.103 of the HIPAA Regulations; (b) document such designation as required pursuant to section 164.105(c) of the HIPAA Regulations; and (c) establish adequate separation between such Health Care Components and the Non-Health Care Components as required by section 164.504 of the HIPAA Regulations.  The terms of this Article will only apply with respect to the designated Health Care Components of the Plan identified in Section 1.1(yy).  References to the "Plan" in this Article will also include any other group health plans or plans providing "health care" within the meaning of HIPAA that (i) are sponsored by the Company and (ii) provide that they will constitute, or have been designated by the Plan Administrator as constituting, along with the Health Care Components of the Plan, a single covered entity for purposes of compliance with the Privacy Rules and the HIPAA Regulations.  In addition, certain capitalized terms used in this Article that are not defined herein will have the meaning ascribed to such terms under the HIPAA Regulations.

**15.2    Provision of PHI to the Company Pursuant to an Authorization**

The Health Care Components of the Plan may at any time disclose PHI to the Company and the Company may use and disclose PHI received from the Health Care Components of the Plan, if such disclosure and use is pursuant to and in accordance with a valid authorization from the individual who is the subject of such information.

**15.3    Provision of SHI or Enrollment Information to the Company**

The Company may receive, use and disclose PHI from the Health Care Components of the Plan if the information consists solely of SHI and if the Company certifies to the fiduciaries of the Plan (*i.e.,* the Plan Administrator) that the information is being requested for one or more of the following:

(a)    For the purpose of enabling the Company to obtain premium bids from health insurers for providing health insurance coverage under the Health Care Components of the Plan;

(b)    For purposes of determining whether and, if so, how to modify or amend the Health Care Components of the Plan;

(c)    For purposes of determining whether and, if so, how to terminate the Health Care Components of the Plan, in whole or in part; or

(d)    For such other purposes as may be necessary for the administration of the Health Care Components of the Plan that are consistent with the HIPAA Regulations.

The Company may receive, use and disclose PHI from the Health Care Components of the Plan if the information consists of enrollment or disenrollment information (*i.e.,* indicates whether the individual is participating in the Plan or is enrolled in or has

73

EXHIBIT 10  Page 80  SUF

disenrolled from a health insurance issuer or health maintenance organization offered under the Plan).

### 15.4   General Provision of PHI to the Company

The Company may receive PHI from the Health Care Components of the Plan and use such PHI if (a) the Company certifies in writing to the Plan's fiduciaries (*i.e.*, the Plan Administrator) that the Plan incorporates the restrictive provisions described in Paragraphs (a) through (j) below and the separation requirements described in Section 15.5 and (b) except as described in Sections 15.2 and 15.3, the Company agrees to comply with the following restrictions and requirements regarding the PHI that is provided by the Health Care Components of the Plan to the Company:

(a)   The Company will not use or further disclose the information other than as permitted or required by the Plan documents or as required by law or the HIPAA Regulations as set forth in the Privacy Manual;

(b)   The Company will ensure that any agents, including a subcontractor, to whom it provides PHI received from the Plan agree to the same restrictions and conditions that apply to the Company with respect to such information;

(c)   The Company will not use or disclose the information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan of the Company;

(d)   The Company will report to the Plan any use or disclosure of the information that is inconsistent with the uses or disclosures provided for of which it becomes aware;

(e)   The Company will make available to Covered Persons PHI in accordance with section 164.524 of the HIPAA Regulations, as set forth in the Privacy Manual;

(f)   The Company will provide Covered Persons with the right to amend their PHI and will incorporate any amendments to Covered Persons' PHI in accordance with section 164.526 of the HIPAA Regulations, as set forth in the Privacy Manual;

(g)   The Company will provide Covered Persons with an accounting of disclosures of their PHI for reasons other than treatment, payment or health care operations or pursuant to an authorization in accordance with section 164.528 of the HIPAA Regulations, as set forth in the Privacy Manual;

(h)   The Company will make its internal practices, books and records relating to the use and disclosure of PHI received from the Health Care Components of the Plan available to the Secretary of Health and Human Services for purposes of determining compliance by the Health Care Components of the Plan with the HIPAA Regulations;

(i)   If feasible, the Company will return or destroy all PHI received from the Health Care Components of the Plan that the Company still maintains in any form and retain no copies of such information when no longer needed for the purpose for which disclosure was made, or, if such return or destruction is not feasible, the Company will limit further uses and disclosures to those purposes that make the return or destruction of the information infeasible; and

74

EXHIBIT 10  Page 81  SUF

(j)     The Company will ensure the adequate separation required pursuant to Section 15.5.

## 15.5   Adequate Separation

At all times, there will be adequate separation (a) between the Plan and the Company and (b) between the Health Care Components and the Non-Health Care Components in accordance with the requirements imposed pursuant to section 164.504(f)(2)(iii) of the HIPAA Regulations. In order to comply with such adequate separation requirements:

(a)    Except as described in Sections 15.2 and 15.3, the only employees, classes of employees, or other persons under the control of the Company to be given access to PHI disclosed to the Company or who receive PHI relating to treatment or payment under the Health Care Components of the Plan, the health care operations thereof, or other matters pertaining to the Health Care Components of the Plan in the ordinary course of business are: (i) those individuals employed by or providing services to the division of the Company's Human Resources Department that deals with the administration, enrollment and processing of benefit claims under the Health Care Components of the Plan; (ii) the Plan's fiduciaries (*i.e.*, the Plan Administrator); (iii) the Plan's Privacy Officer; (iv) the Plan's Contact Person; (v) the Company's internal legal counsel; (vi) the Plan's Security Officer; and (vi) those non-benefits personnel (*e.g.*, information systems, accounting, etc.) who in the normal course of their employment have access to PHI provided that they have received HIPAA privacy training. In addition, those employees providing services to the Company's payroll or human resources departments may receive information as to whether an individual is enrolled in the Plan, the benefit options selected by the individual under the Plan, and information as to when the individual disenrolls from the Plan.

(b)    The access to and use by the Company and the other individuals and entities described in Paragraph (a) above is restricted to (i) the administration functions that the Company performs in connection with the operation and administration of the Health Care Components of the Plan (including, but not limited to, assisting Eligible Employees, Spouses or Dependents with enrollment or claims issues, negotiating with Administrative Providers, obtaining payment for benefits under the Health Care Components of the Plan, and procuring or obtaining reimbursement under a stop-loss insurance policy with respect to the Plan); (ii) the plan sponsor functions described in Section 15.3; (iii) uses and disclosures described in an authorization by the Covered Person; and (iv) uses and disclosures that are described to Covered Persons in the "Notice of Privacy Practices for Waddell & Reed, Inc. Welfare Benefit Plan Participants and Their Covered Spouses and Dependents," as required by section 164.520 of the HIPAA Regulations.

(c)    In the event that any person described in Section 15.5(a) fails to comply with any of the requirements of this Section or of Section 15.4, the noncompliance will be reported to the Privacy Officer in a report, describing the name of the noncompliant person and a summary of the details regarding such person's noncompliance. Upon receipt of such report, the Privacy Officer will solicit a response from the person who has been reported as noncompliant, giving such person the opportunity to contest the charge of noncompliance or to offer justification or other reasons why sanctions should not be imposed with respect to the noncompliance. The Privacy Officer will, after considering all details, facts

EXHIBIT 10  Page 82  SUF

and circumstances relating to an alleged act of noncompliance for which sanctions may be imposed pursuant to this Paragraph (c), determine if a sanction should be imposed (which sanction may range from a warning to recommended dismissal from employment).   Upon determination of a sanction and if the sanction may be imposed under the authority of the Privacy Officer, the sanction will be imposed.  If the sanction requires action of the Company, the Privacy Officer will confer with the appropriate managers of the Company.   If the Company, following consideration of a proposed sanction from the Privacy Officer for noncompliance with the requirements of Sections 15.4 and 15.5 by a person or entity, determines not to impose such sanction, the Company will advise the Privacy Officer.  In such event, the Privacy Officer must consider and propose an alternative sanction for the noncompliant person or entity.

**15.6   Privacy Officer**

The Company will appoint a Privacy Officer for the Plan.  The Company may remove the Plan's then existing Privacy Officer at any time upon written notice provided that the Company has appointed a successor Privacy Officer to serve.   The Privacy Officer's duties and responsibilities focus upon the operation and administration of the Health Care Components of the Plan in connection with HIPAA and the HIPAA Regulations (including activities conducted via the services of insurers, Business Associates, and employees and agents of the Company) and the activities of the Company regarding the Health Care Components of the Plan in its capacity as sponsor of the Plan.  In order to carry out such general powers, duties and responsibilities, the Privacy Officer will have the following specific powers, duties and responsibilities:

(a)   To develop and propose to the Plan fiduciaries (*i.e.*, the Plan Administrator) a comprehensive privacy policy for the Health Care Components of the Plan, which when finalized will be set forth in the Privacy Manual;

(b)   To perform initial and periodic privacy risk assessments with respect to the Health Care Components of the Plan;

(c)   To develop and maintain appropriate authorization forms, information notices, and materials reflecting the legal practices and requirements of the Health Care Components of the Plan regarding the privacy of PHI;

(d)   To develop and implement initial and ongoing privacy training and orientation to all employees of the Company who may have access to PHI in connection with the Health Care Components of the Plan;

(e)   To oversee the development, implementation and ongoing compliance of all Business Associate agreements with the Plan;

(f)   To establish with the Company management and operations a mechanism to identify all of the Company's plans and benefit arrangements that are "covered entities" for purposes of the laws governing PHI;

(g)   To establish rules to determine when to allow Covered Persons to review or receive a report on their PHI privacy activity under the Health Care Components of the Plan;

(h)   To work cooperatively with the Company's Human Resources Department and other applicable Company offices/personnel and Business Associates in

76

EXHIBIT 10  Page 83  SUF

overseeing Covered Persons' rights to inspect, amend and restrict access to their PHI when appropriate;

**(i)**　To establish and administer a complaint procedure pursuant to which Covered Persons may redress alleged violations of their privacy rights;

**(j)**　To apply sanctions for failure to comply with the privacy provisions of the Plan, the Privacy Manual, HIPAA or the HIPAA Regulations as specified in this Article;

**(k)**　To review system-related information security plans maintained by the Company to the extent necessary or appropriate; and

**(l)**　To serve as information privacy consultant to the Company with respect to the Health Care Components of the Plan.

## 15.7　Contact Person

As provided in the Privacy Manual, the Company will appoint a Contact Person (which may be the same individual or entity as is serving as the Privacy Officer).  The Company may remove the Plan's then existing Contact Person at any time upon written notice provided that if the Company has not appointed a successor Contact Person to serve, the Privacy Officer will serve as the Contact Person.  The Contact Person will have the duties and responsibilities set forth in the Privacy Manual.

## 15.8　Disciplinary Proceedings

The purpose of this Section 15.8 is to establish appropriate disciplinary sanctions and proceedings as required by the HIPAA Regulations.

**(a)**　Any complaint brought pursuant to the Plan's complaint procedures, which involves an alleged failure to comply with HIPAA, the HIPAA Regulations, the terms of this Article XV or the Privacy Manual, will be referred to the Privacy Officer for consideration as to disciplinary sanctions and proceedings under this Section 15.8.

**(b)**　Similarly, if the Privacy Officer becomes aware of any other failure to comply with HIPAA, the HIPAA Regulations, the terms of this Article XV or the Privacy Manual, the Privacy Officer will consider whether such matter is appropriate for disciplinary sanctions and proceedings under this Section 15.8.

**(c)**　If the complaint or other failure involves the actions of a Business Associate, the appropriate disciplinary sanctions and proceedings will be conducted under the terms of the Business Associate agreement.  If the complaint or other failure involves the actions of the individuals responsible for the administration of the Health Care Components of the Plan identified in Section 15.5, the appropriate disciplinary sanctions and proceedings will be conducted under Section 15.5.  If the complaint or other failure involves the actions of any other Company employee or any agent of the Company, the appropriate disciplinary sanctions and proceedings will be conducted under this Section 15.8.

**(d)**　In the case of either an unresolved complaint or other failure described in Paragraph (a) above, the Privacy Officer will solicit a response from the person or agent who has been reported as noncompliant, giving the person or agent the opportunity to contest the charge of noncompliance or to offer justification or

77

EXHIBIT 10  Page 84  SUF

other reasons why disciplinary sanctions should not be imposed with respect to the noncompliance.

(e)     The Privacy Officer will, after considering all details, facts and circumstances relating to such an alleged act of noncompliance, determine if a disciplinary sanction is warranted (which sanction may range from a warning to dismissal from employment, or, in the case of an agent, termination of the agency agreement).  Upon determination of a disciplinary sanction, and if the sanction may be imposed under the authority of the Privacy Officer, the disciplinary sanction will be imposed.

(f)     If the disciplinary sanction requires approval of the Company, the Privacy Officer will confer with the appropriate managers of the Company.  If the Company, following consideration of a recommended disciplinary sanction from the Privacy Officer, determines not to impose such disciplinary sanction, the Company will advise the Privacy Officer.  In such event, the Privacy Officer must consider and propose an alternative disciplinary sanction for the noncompliant person or agent.  The Privacy Officer will ensure that the imposed disciplinary sanction is adequately communicated to the violator and is enforced.

(g)     In the event that a disciplinary sanction triggers any rights of appeal (for instance, under a collective bargaining agreement), all such rights of appeal will be available to the violator.  In the case of any such appeal proceedings, the identity of the individual whose privacy rights were violated will be removed to the extent feasible.

## 15.9     Implementation Authority

The Company will have the authority to enter into and enforce on behalf of the Plan such contracts and agreements (specifically including Business Associate agreements) as may be appropriate or necessary to cause the Plan to satisfy its obligations under HIPAA and the HIPAA Regulations.

## 15.10     Indemnification

The Company will indemnify and hold harmless each employee of the Company who is identified in Section 15.5 as a person who is to be given access to or receive PHI against any and all expenses and liabilities arising out of such employee's administrative functions or fiduciary responsibilities in connection with violations of HIPAA and the HIPAA Regulations, including, but not limited to, any expenses and liabilities that are caused by or result from an act or omission constituting the negligence of such employee in the performance of such functions or responsibilities, but excluding expenses and liabilities arising out of such employee's own gross negligence or willful misconduct.  Expenses against which such person will be indemnified include, but are not limited to, the amounts of any settlement, judgment, costs, counsel fees and related charges reasonably incurred in connection with a claim asserted or a proceeding brought.  This Section will not, however, apply to, and the Company will not indemnify against, any expense that was incurred without the consent or approval of the Company, unless such consent or approval has been waived in writing by the Company.  This Section will also not apply to any sanctions or disciplinary action imposed pursuant to Section 15.8.

78

EXHIBIT 10  Page 85  SUF

## ARTICLE XVI

## HIPAA SECURITY COMPLIANCE

**16.1    Purpose of Article XVI**

The purpose of this Article XVI is to (a) cause the Plan to implement security measures designed to ensure the Confidentiality, Integrity and Availability of all electronic protected health information ("ePHI") created, received, maintained or transmitted to or by the Plan; (b) cause the Plan to require that the Company will reasonably and appropriately safeguard ePHI created, received, maintained or transmitted to or by the Company on behalf of the Plan; and (c) establish the office of Security Officer, who will be responsible for the Plan's Security Standards compliance. This Article XVI is to be construed and interpreted in accordance with such purposes. In addition, certain capitalized terms used in this Article that are not defined herein will have the meaning ascribed to such terms under the HIPAA Regulations.

**16.2    Implementation of Security Standards**

The Plan will do all of the following in accordance with the HIPAA Regulations:

(a)    Ensure the Confidentiality, Integrity and Availability of all ePHI that it creates, receives, maintains or transmits;

(b)    Protect against any reasonably anticipated threats or hazards to the Security or Integrity of such information;

(c)    Protect against any reasonably anticipated uses or disclosures of such information that are not permitted or required under the Privacy Rules;

(d)    Ensure compliance with the Security Standards by its Workforce;

(e)    Implement each Security Standard and implementation specification thereunder that is designated as "Required" in the HIPAA Regulations and/or Appendix A to Subpart C of Part 146 thereof, as provided in the Security Manual;

(f)    Take the following steps with regard to each Security Standard and implementation specification thereunder that is designated as "Addressable" in the HIPAA Regulations, as provided in the Security Manual:

(i)    Assess whether each implementation specification in the Security Standard is a reasonable and appropriate safeguard in its environment, when analyzed with reference to the likely contribution to protecting the Plan's ePHI; and

(ii)    Implement the implementation specification, as applicable to the Plan, if reasonable and appropriate or, if implementing the implementation specification is not reasonable and appropriate:

(A)    Document why it would not be reasonable and appropriate to implement the implementation specification; and

(B)    Implement an equivalent alternative measure if reasonable and appropriate;

79

EXHIBIT 10  Page 86  SUF

**(g)** Ensure that its Business Associate contracts comply with the requirements of section 164.314 of the HIPAA Regulations; and

**(h)** Periodically review the Security Measures implemented to comply with the Security Standards and modify such measures as needed in order to continue provision of reasonable and appropriate protection of ePHI as described in the Security Manual.

## 16.3 Provision of Electronic Protected Health Information to the Company

The Company may receive and use ePHI only if (a) the Company certifies to the Plan's fiduciaries that the Plan has been amended to incorporate the provisions of this Article XVI, and (b) the Company agrees to comply with and enforce the following restrictions and requirements regarding the ePHI that is provided by the Plan to the Company:

**(i)** Implement Administrative, Physical and Technical Safeguards that reasonably and appropriately protect the Confidentiality, Integrity and Availability of the ePHI that it creates, receives, maintains or transmits on behalf of the Plan as required by the HIPAA Regulations as set forth in the Security Manual;

**(ii)** Ensure that the adequate separation required pursuant to Section 15.5 is supported by reasonable and appropriate Security Measures as required by the HIPAA Regulations as set forth in the Security Manual;

**(iii)** Ensure that any agent, including a subcontractor, to whom it provides ePHI that it creates, receives, maintains or transmits on behalf of the Plan agrees to implement reasonable and appropriate Security Measures to protect such information; and

**(iv)** Report to the Plan any Security Incident of which it becomes aware in accordance with the HIPAA Regulations as set forth in the Security Manual.

## 16.4 Security Officer

The Board will appoint a Security Officer for the Plan. The Board may remove the Plan's then existing Security Officer at any time upon written notice provided that the Board has appointed a successor Security Officer to serve. The Plan's Security Officer's duties and responsibilities focus upon the operation and administration of the Plan in connection with the Security Standards, HIPAA and the HIPAA Regulations (including activities conducted via the services of insurers, Business Associates, and employees and agents of the Company) and activities of the Company regarding the Plan. The Security Officer will work cooperatively with the Company's Information Technology Department, other applicable Company offices/personnel and Business Associates in overseeing the Plan's compliance with the Security Standards.

## 16.5 Implementation Authority

The Company will have the authority to enter into and enforce on behalf of the Plan such contracts and agreements (including, specifically, Business Associate agreements) as may be appropriate or necessary to cause the Plan to satisfy its obligations under HIPAA and the HIPAA Regulations.

EXHIBIT 10  Page 87  SUF

### 16.6    Indemnification

The Company will indemnify and hold harmless each member of the Plan's Workforce who has access to or receives ePHI against any and all expenses and liabilities arising out of such employee's administrative functions or fiduciary responsibilities in connection with violations of HIPAA and the HIPAA Regulations, including, but not limited to, any expenses and liabilities that are caused by or result from an act or omission constituting the negligence of such employee in the performance of such functions or responsibilities, but excluding expenses and liabilities arising out of such employee's own gross negligence or willful misconduct.  Expenses against which such person will be indemnified include, but are not limited to, the amounts of any settlement, judgment, costs, counsel fees and related charges reasonably incurred in connection with a claim asserted or a proceeding brought.  This Section will not, however, apply to, and the Company will not indemnify against, any expense that was incurred without the consent or approval of the Company, unless such consent or approval has been waived in writing by the Company.

EXHIBIT 10  Page 88  SUF

ARTICLE XVII

NOTIFICATION OF BREACH OF UNSECURED PHI

**17.1    Purpose of Article XVII**

The purpose of this Article XVII is to comply with the rules for notification in the case of a Breach of Unsecured PHI as set forth in section 13402 of the American Recovery and Reinvestment Act of 2009 and the regulations promulgated thereunder.  This Article XVII is to be construed and interpreted in accordance with such purpose and is effective for Breaches of Unsecured PHI that occur on or after September 23, 2009.  In addition, certain capitalized terms used in this Article that are not defined herein will have the meaning ascribed to such terms under the HIPAA Regulations.

**17.2    Breach of Unsecured PHI**

Following the discovery of a Breach of Unsecured PHI, the Plan will notify:

**(a)**    Each individual whose Unsecured PHI has been (or is reasonably believed by the Plan to have been) accessed, acquired, used or disclosed as a result of such Breach in accordance with Section 17.5;

**(b)**    The Secretary of Health and Human Services in accordance with Section 17.6; and

**(c)**    Media outlets, but only if and to the extent required under Section 17.7.

**17.3    Definitions**

For the purposes of this Article XVII and the Plan, the terms below have the following meaning:

**(a)**    "**Breach**" means the acquisition, access, use or disclosure of PHI in a manner not permitted under the HIPAA Regulations that compromises the security or privacy of the PHI, except that a "Breach" does not include:

    **(i)**    Any unintentional acquisition, access or use of PHI by a workforce member or person acting under the authority of the Plan or a Business Associate, if such acquisition, access or use was made in good faith and within the scope of authority, and does not result in further use or disclosure in a manner not permitted under the HIPAA Regulations;

    **(ii)**    Any inadvertent disclosure by a person authorized to access PHI at a covered entity or Business Associate to another person authorized to access PHI at the same covered entity or Business Associate if the information is not further used or disclosed in a manner not permitted by the HIPAA Regulations; or

    **(iii)**    A disclosure of PHI where the Plan or Business Associate has a good faith belief that an unauthorized person to whom the disclosure was made would not reasonably have been able to retain such information.

**(b)**    "**Unsecured PHI**" means PHI that is not rendered unusable, unreadable or indecipherable to unauthorized persons through the use of a technology or

82

EXHIBIT 10  Page 89  SUF

methodology specified by the Secretary in guidance issued under section 13402(h)(2) of the American Recovery and Reinvestment Act of 2009.

## 17.4   Assessment of Potential Breach of Unsecured PHI

An acquisition, access, use or disclosure of PHI in a manner not permitted under the HIPAA Regulations is presumed to be a breach unless the Plan or Business Associate, as applicable, demonstrates that there is a low probability that the PHI has been compromised based on a risk assessment of at least the following factors: (a) the nature and extent of the PHI involved, including the types of identifiers and the likelihood of re-identification; (b) the unauthorized person who used the PHI or to whom the disclosure was made; (c) whether the PHI was actually acquired or viewed; and (d) the extent to which the risk to the PHI has been mitigated.   The Privacy Officer or delegate will document the assessment of whether or not such potential breach is a Breach of Unsecured PHI that requires notification and will maintain a log of each Breach of Unsecured PHI.

## 17.5   Notification to Individuals

Following the discovery of a Breach of Unsecured PHI, the Plan will notify each individual whose Unsecured PHI has been (or is reasonably believed by the Plan to have been) accessed, acquired, used or disclosed as a result of such Breach as follows:

(a)   **Timing of Notice.**  The notice will be provided without unreasonable delay and in no case later than 60 days after discovery of the Breach.

(b)   **Delivery of Notice.**  The notice will be provided by first-class mail to the last known address of the individual or by electronic mail if the individual has agreed to receive electronic notices (and has not withdrawn that agreement).  If the Plan knows the individual is deceased and has the address of the next of kin or the individual's personal representative, the notice will be provided to the individual's next of kin or personal representative.

(c)   **Contents of Notice.**  The notice will be written in plain language and, to the extent practicable, include the following items:

(i)   A brief description of what happened, including the date of the Breach and the date of the discovery of the Breach, if known;

(ii)   A description of the types of Unsecured PHI that were involved in the Breach (such as whether full name, social security number, date of birth, home address, account number, diagnosis, disability code, or other types of information were involved);

(iii)   Any steps individuals should take to protect themselves from potential harm resulting from the Breach;

(iv)   A brief description of what the Plan is doing to investigate the Breach, to mitigate harm to individuals, and to protect against any further Breaches; and

(v)   Contact procedures for individuals to ask questions or learn additional information, which will include a toll-free telephone number, an electronic mail address, website or postal address.

83

EXHIBIT 10  Page 90  SUF

The notice may be made in one or more mailings as information is available.

(d)     **Substitute Notice if Insufficient Contact Information.**  As soon as reasonably practicable after it is determined that there is insufficient or out-of-date contact information that precludes written notice to the individuals who are to be provided notice under this Section 17.5 (excluding the next of kin or personal representatives of such individuals), the Plan will provide a substitute form of notice reasonably calculated to reach the affected individuals as follows:

(i)     **Substitute Notice for Fewer Than 10 Individuals.**  In the event there is insufficient or out-of-date contact information for fewer than 10 individuals, then a substitute form of notice may be by an alternative form of written notice, telephone, or other means.

(ii)    **Substitute Notice for 10 or More Individuals.**  In the event there is insufficient or out-of-date contact information for 10 or more individuals, then a substitute form of notice shall:

(A)     Be in the form of either (1) a conspicuous posting for a period of 90 days on the home page of the website of the Company or (2) conspicuous notice in major print or broadcast media in geographic areas where the individuals affected by the Breach likely reside; and

(B)     Include a toll-free phone number that remains active for at least 90 days where an individual can learn whether the individual's Unsecured PHI may be included in the Breach.

## 17.6    Notification to the Secretary

Following the discovery of a Breach of Unsecured PHI, the Plan will notify the Secretary of Health and Human Services as follows:

(a)     **Prompt Notice for Breaches Involving 500 or More Individuals.**  In the case of a Breach of Unsecured PHI involving 500 or more individuals, the Plan will notify the Secretary at approximately the same time as the notice is provided to affected individuals in accordance with Section 17.5.  The notice to the Secretary will be provided in the manner specified on the Health and Human Services website (or other applicable guidance).

(b)     **Annual Notice for Breaches Involving Less than 500 Individuals.**  In the case of a Breach of Unsecured PHI involving less than 500 individuals, the Plan will maintain a log or other documentation of such Breach and, not later than 60 days after the end of the calendar year, notify the Secretary of all such Breaches discovered during such calendar year.  The notice to the Secretary will be provided in the manner specified on the Health and Human Services website (or other applicable guidance).

## 17.7    Notification to the Media for Breach Involving More than 500 Residents of a State or Jurisdiction

Following the discovery of a Breach of Unsecured PHI involving more than 500 residents of a State or jurisdiction (*e.g.,* a county, city, or town), the Plan will notify (*e.g.,* in the form of a press release) prominent media outlets serving the applicable State or

EXHIBIT 10  Page 91  SUF

jurisdiction.  Such notice will be provided without unreasonable delay, no later than 60 days after discovery of the Breach, and will contain the information described in Section 17.5(c).

### 17.8   Law Enforcement Delay

If a law enforcement official states to the Plan that a notification or posting required by this Article XVII would impede a criminal investigation or cause damage to national security, the Plan will delay such notice in accordance with section 164.412 of the HIPAA Regulations.

### 17.9   Compliance with Notice Requirements by Business Associate

Notwithstanding any provision herein to the contrary, any requirement to provide notice with respect to a Breach of Unsecured PHI may be satisfied by the Plan's business associate or other third party, unless and to the extent prohibited by applicable law.

### 17.10   Other HIPAA Requirements Applicable to Breach Notification

The following provisions of the HIPAA Regulations will apply under this Article XVII:

(a)    **Training**.  To develop and implement initial and ongoing training and orientation to implement the breach notification procedures addressed under this Article XVII for all employees of the Company who may have access to PHI in connection with the Health Care Components of the Plan;

(b)    **Complaint Procedures**.  To establish and administer a complaint procedure pursuant to which Covered Persons may redress a Breach of Unsecured PHI;

(c)    **Sanction Policies**.  To apply sanctions for failure to comply with the provisions set forth in this Article XVII;

(d)    **No Waiver of Privacy Rights**.  A participant in the Plan shall not be required to waive his rights under the HIPAA Regulations and this Article XVII as a condition of the provision of treatment, payment, enrollment or eligibility for benefits under the Plan;

(e)    **Non-Retaliation and Non-Intimidation**.    The non-retaliation and non-intimidation policies under the HIPAA Regulations apply to any matter addressed under this Article XVII; and

(f)    **Document Retention**.  The document retention policies under the HIPAA Regulations likewise apply to documents relating to a Breach of Unsecured PHI.

EXHIBIT 10  Page 92  SUF

## ARTICLE XVIII

## HEALTH CARE FLEXIBLE SPENDING ACCOUNT PROGRAM

**18.1    Establishment of Plan**

This Article XVIII constitutes a separate plan document that sets forth the terms of the Health Care Flexible Spending Account Program.  This Article XVIII is intended to qualify as a medical reimbursement plan under section 105 of the Code and will be interpreted in a manner consistent with such Code section and the Treasury regulations thereunder. Eligible Employees who elect to participate in this Health Care Flexible Spending Account Program may submit claims for the reimbursement of Medical Expenses.  All amounts reimbursed under this Health Care Flexible Spending Account Program will be periodically paid from amounts allocated to the Participant's Health Care Flexible Spending Account.  Periodic payments reimbursing Participants from the Health Care Flexible Spending Account will in no event occur less frequently than monthly.

**18.2    Definitions**

For the purposes of this Article XVIII and the Plan, the terms below have the following meaning:

(a)    "**General Purpose Health Care Flexible Spending Account Plan**" as defined in Section 1.1(xx).

(b)    "**Grace Period**" means with respect to any Plan Year, the 2½ month period beginning on January 1 of the next following Plan Year and ending on the March 15 of such next following Plan Year.

(c)    "**Health Care Flexible Spending Account**" means with respect to a Plan Year, the fund established for Participants pursuant to this Article XVIII to which part of their Compensation may be allocated pursuant to Section 4.1 and from which all allowable Medical Expenses may be reimbursed.

(d)    "**Health Care Flexible Spending Account Program**" means the plan of benefits contained in this Article XVIII, which provides for the reimbursement of eligible Medical Expenses incurred by a Participant or his Dependents and includes the General Purpose Health Care Flexible Spending Account Plan option and the Limited Purpose Health Care Flexible Spending Account Plan option.

(e)    "**Highly Compensated Participant**" means, for the purposes of this Article XVIII and determining discrimination under section 105(h) of the Code, a Participant who is:

(i)    One of the five highest paid officers;

(ii)    A shareholder who owns (or is considered to own applying the rules of section 318 of the Code) more than 10 percent in value of the common stock of the Employer; or

(iii)    Among the highest paid 25 percent of all Employees (other than exclusions permitted by section 105(h)(3)(B) of the Code for those individuals who are not Participants).

EXHIBIT 10  Page 93  SUF

(f)     "**Limited Health Care Flexible Spending Account**" as defined in Section 1.1(lll).

(g)     "**Medical Expenses**" means any expense for medical care within the meaning of the term "medical care" or "medical expense" as defined in section 213(d) of the Code and as allowed under section 105 of the Code and the rulings and Treasury regulations thereunder, and not otherwise used by the Participant as a deduction in determining his tax liability under the Code; however, the Limited Purpose Health Care Flexible Spending Account Plan covers only those health care expenses considered to be for dental or vision expenses not eligible for coverage under the Participant's High Deductible Health Plan, as allowed under section 223 of the Code, and excluding drugs, medicines and over-the-counter items.  A Participant may not be reimbursed for the cost of other health coverage such as premiums paid under plans maintained by the employer of the Participant's Spouse or individual policies maintained by the Participant or his Spouse or Dependent.  A Participant may not be reimbursed for "qualified long-term care services" as defined in section 7702B(c) of the Code.  Reimbursement for over-the-counter drugs is permitted only with a prescription.

The definitions of Article I are hereby incorporated by reference to the extent necessary to interpret and apply the provisions of this Health Care Flexible Spending Account Program.

## 18.3   Participation

A Participant who has elected to participate in the Health Savings Account can elect to participate only in the Limited Health Care Flexible Spending Account Plan.  The Limited Purpose Health Care Flexible Spending Account Plan covers only those health care expenses considered to be for dental or vision expenses not eligible for coverage under the Participant's High Deductible Health Plan, as allowed under section 223 of the Code, and excluding drugs, medicines and over-the-counter items.

## 18.4   Forfeitures

Any monies remaining in a Participant's Health Care Flexible Spending Account for a Plan Year at the end of any Plan Year (after the Grace Period and the processing of all claims for such Plan Year pursuant to Section 18.8) will be forfeited.  In such event, the Participant will have no further claim to such amount for any reason.  Any forfeitures will be used first to offset any losses experienced by the Employer as a result of making reimbursements in excess of contributions paid and second to defray the expenses of administering the Plan.  Any benefit disbursements that are unclaimed by the close of the Plan Year following the Plan Year during which the Medical Expenses were incurred will be forfeited and applied as noted above.

## 18.5   Limitation on Allocations

The Plan Administrator may limit the amount of Compensation that may be allocated to the Health Care Flexible Spending Account by a Participant in or on account of any Plan Year.  A Participant may contribute a minimum of $200 and a maximum of $2,500 to his Health Care Flexible Spending Account for any Plan Year.

EXHIBIT 10  Page 94  SUF

### 18.6   Nondiscrimination Requirements

(a)   **General Rule.**   It is the intent of this Health Care Flexible Spending Account Program not to discriminate in favor of "highly compensated individuals" or "highly compensated participants" as defined in section 105 of the Code in violation of the Code and the Treasury regulations thereunder.

(b)   **Correction.**   If the Plan Administrator deems it necessary to avoid discrimination under this Health Care Flexible Spending Account Program, it may, but will not be required to, reject any elections or reduce contributions or benefits in order to assure compliance with this Section 18.6.   Any act taken by the Plan Administrator under this Section 18.6 will be carried out in a uniform and nondiscriminatory manner.   If the Plan Administrator decides to reject any elections or reduce contributions or benefits, the benefits designated for the Health Care Flexible Spending Account Program by the highly compensated individual or participant that elected to contribute the highest amount to such program for the Plan Year will be reduced until the nondiscrimination tests set forth in this Section 18.6 or the Code are satisfied, or until the amount designated for the fund equals the amount designated for the fund by the next highly compensated individual or participant who has elected the second highest contribution to the Health Care Flexible Spending Account Program for the Plan Year. This process will continue until the nondiscrimination tests set forth in this Section 18.6 or the Code are satisfied.   Contributions that are not utilized to provide benefits to any Participant by virtue of any administrative act under this Paragraph (b) will be forfeited.

### 18.7   Coordination With Cafeteria Component Program

Eligible Employees as reflected under the applicable Component Program document are eligible to elect to participate in the Cafeteria Component Program and receive benefits under this Health Care Flexible Spending Account Program.   Matters concerning contributions, elections, claims for benefits and the like will be governed by the general provisions of the Plan and the terms of the Component Program Documents.

### 18.8   Health Care Flexible Spending Account Claims

(a)   **Reimbursement of Medical Expenses.**   All Medical Expenses incurred by a Participant will be reimbursed during the Plan Year even though the submission of such a claim occurs after his participation hereunder ceases; provided, however, that the Medical Expenses were incurred during the applicable Plan Year (or Grace Period) and during the portion of such Plan Year when he was a Participant in the Health Care Flexible Spending Account Program.

(b)   **Maintain Account Balance Available.**   The Administrative Provider will direct the reimbursement to each eligible Participant for all allowable Medical Expenses up to the maximum amount of Compensation designated by the Participant to be contributed to the Health Care Flexible Spending Account Program for the Plan Year.   The maximum amount designated by the Participant will be made available to the Participant throughout the Plan Year (or Grace Period) without regard to the amount of contributions that have been made by the Participant to the Health Care Flexible Spending Account Program. Furthermore, a Participant will only be entitled to reimbursements for amounts that are not paid or

EXHIBIT 10  Page 95  SUF

reimbursed under any health care plan covering the Participant and/or his Spouse or Dependents.

(c) **Claim Filing Deadline**. Claims for the reimbursement of Medical Expenses incurred in any Plan Year (or Grace Period) will be paid as soon after a claim has been filed with the Administrative Provider as is administratively practicable; provided, however, that if a Participant fails to submit a claim for a Medical Expense incurred during a Plan Year (or the Grace Period) by May 31 immediately following the end of such Plan Year, such Medical Expense claim will not be considered for reimbursement by the Administrative Provider. Any dispute concerning a claim for the reimbursement of Medical Expenses will be subject to the claims provisions of Article VIII of this Plan concerning Post-Service Claims. Notwithstanding the foregoing, in the Plan Administrator's discretion and subject to any restrictions imposed by the Plan Administrator, a Participant may claim benefits from his Health Care Flexible Spending Account through use of a debit card or other stored-value card; provided, however, that the receipt of benefits in this manner will be conditioned on substantiation of the expenses as required by the Plan Administrator.

(d) **Manner of Payment**. Reimbursement payments under this Health Care Flexible Spending Account Program will be made directly to the Participant. However, in the Administrative Provider's discretion, payments may be made directly to the service provider. The application for payment or reimbursement will be made to the Administrative Provider on an acceptable form within a reasonable time of incurring the debt or paying for the service. The application will include a written statement from an independent third party stating that the Medical Expense has been incurred and the amount of such expense. If reimbursement is being requested for over-the-counter drugs, the applicant must submit a valid prescription. Furthermore, where an explanation of benefits provided by an insurance company is utilized to meet substantiation requirements, the Participant also must provide a written statement that the Medical Expense has not been reimbursed, that the Participant will not seek reimbursement from any other plan covering health benefits, and if reimbursed from the Health Care Flexible Spending Account, such amount will not be claimed as a tax deduction. The Administrative Provider will retain a file of all such applications.

EXHIBIT 10  Page 96  SUF

## ARTICLE XIX

### DEPENDENT CARE FLEXIBLE SPENDING ACCOUNT PROGRAM

**19.1   Establishment of Program**

This Article XIX constitutes a separate plan document that sets forth the terms of the Dependent Care Flexible Spending Account Program.  This Article XIX is intended to qualify as a dependent care assistance program under section 129 of the Code and will be interpreted in a manner consistent with such Code section.  Participants who elect to participate in the Dependent Care Flexible Spending Account Program may submit claims for the reimbursement of Employment-Related Dependent Care Expenses.  All amounts reimbursed under this Dependent Care Flexible Spending Account Program will be paid from amounts allocated to the Participant's Dependent Care Flexible Spending Account.  Periodic payments reimbursing Participants from the Dependent Care Flexible Spending Account will in no event occur less frequently than monthly.

**19.2   Definitions**

For the purposes of this Article XIX and the Plan, the terms below will have the following meaning:

(a)   **"Dependent Care Flexible Spending Account"** means with respect to a Plan Year, the account established for a Participant pursuant to this Article XIX to which part of his Compensation may be allocated pursuant to Section 4.1 and from which Employment-Related Dependent Care Expenses of the Participant may be reimbursed.

(b)   **"Dependent Care Flexible Spending Account Program"** means the program of benefits contained in this Article XIX, which provides for the reimbursement of eligible expenses for the care of the Qualifying Dependents of Participants.

(c)   **"Earned Income"** means earned income as defined under section 32(c)(2) of the Code, but excluding such amounts paid or incurred by the Employer for dependent care assistance to the Participant.

(d)   **"Employment-Related Dependent Care Expenses"** means the amounts paid for expenses of a Participant for those services, which, if paid by the Participant, would be considered employment related expenses under section 21(b)(2) of the Code.  Generally, they will include expenses for household services or for the care of a Qualifying Dependent, to the extent that such expenses are incurred to enable the Participant to be gainfully employed for any period for which there are one or more Qualifying Dependents with respect to such Participant.  The determination of whether an amount qualifies as an Employment-Related Dependent Care Expense will be made by the Administrative Provider subject to the following rules:

(i)   If such amounts are paid for expenses incurred outside the Participant's household, they will constitute Employment-Related Dependent Care Expenses only if incurred for a Qualifying Dependent as defined in Section 19.2(f)(i) (or deemed to be, as described in Section 19.2(f)(i) pursuant to Section 19.2(f)(iii)), or for a Qualifying Dependent as defined in Section 19.2(f)(ii) (or deemed to be, as described in Section 19.2(f)(ii)

90

EXHIBIT 10  Page 97  SUF

pursuant to Section 19.2(f)(iii)) who regularly spends at least eight hours per day in the Participant's household;

 (ii) If the expense is incurred outside the Participant's home at a facility that provides care for a fee, payment or grant for more than six individuals who do not regularly reside at the facility, the facility must comply with all applicable state and local laws and regulations, including licensing requirements, if any; and

 (iii) Employment-Related Dependent Care Expenses of a Participant will not include amounts paid or incurred to a child of such Participant who is under the age of 19 or to an individual who is a dependent of such Participant or such Participant's Spouse.

**(e)** **"Grace Period"** means with respect to any Plan Year, the 2½ month period beginning on January 1 of the next following Plan Year and ending on the March 15 of such next following Plan Year.

**(f)** **"Qualifying Dependent"** means:

 (i) A Dependent of a Participant who is under the age of 13;

 (ii) A Dependent or the Spouse of a Participant who is physically or mentally incapable of caring for himself and resides with the Participant for more than half the year; or

 (iii) A child that is deemed to be a Qualifying Dependent described in Subparagraph (i) or (ii) above, whichever is appropriate, pursuant to section 21(e)(5) of the Code.

The definitions of Article I are hereby incorporated by reference to the extent necessary to interpret and apply the provisions of this Dependent Care Flexible Spending Account Program.

**19.3** **Dependent Care Flexible Spending Accounts**

The Administrative Provider will establish a Dependent Care Flexible Spending Account for each Eligible Employee who elects to direct a portion of his Compensation to purchase Dependent Care Flexible Spending Account Program benefits.

**19.4** **Increases in Dependent Care Flexible Spending Accounts**

A Participant's Dependent Care Flexible Spending Account will be increased each pay period by the amount of his Compensation he has elected to contribute to his Dependent Care Flexible Spending Account for the Plan Year pursuant to elections made under Article IV.  The sum of the contributions that have been allocated to the Participant's Dependent Care Flexible Spending Account at any given point in time will be the amount available to the Participant for the reimbursement of Employment-Related Dependent Care Expenses incurred during the Plan Year (or Grace Period).

**19.5** **Decreases in Dependent Care Flexible Spending Accounts**

A Participant's Dependent Care Flexible Spending Account will be reduced by the amount of any Employment-Related Dependent Care Expense reimbursements paid or

91

EXHIBIT 10  Page 98  SUF

incurred on behalf of a Participant pursuant to Section 19.12 during the Plan Year (or Grace Period).

### 19.6   Allowable Dependent Care Assistance Reimbursement

Subject to limitations contained in Section 19.9, and to the extent of the amount contained in the Participant's Dependent Care Flexible Spending Account, a Participant who incurs Employment-Related Dependent Care Expenses will be entitled to receive from the Employer full reimbursement for the entire amount of such expense incurred during the Plan Year (or Grace Period).

### 19.7   Annual Statement of Benefits

On or before January 31st of each calendar year, the Administrative Provider will furnish, on behalf of the Employer, to each Employee who was a Participant and received benefits under Section 19.6 during the prior calendar year, a statement of all such benefits paid on or on behalf of such Participant during the prior calendar year.

### 19.8   Forfeitures

Any monies remaining in a Participant's Dependent Care Flexible Spending Account for a Plan Year at the end of any Plan Year (and Grace Period) after the processing of all claims for such Plan Year pursuant to Section 19.12) will be forfeited.  In such event, the Participant will have no further claim to such amount for any reason.  Any forfeitures will be used first to offset any losses experienced by the Employer as a result of making reimbursements in excess of contributions paid and second to defray the expenses of administering the Plan.  Any benefit disbursements that are unclaimed by the close of the Plan Year following the Plan Year during which the Employment-Related Dependent Care Expenses were incurred will be forfeited and applied as noted above.

### 19.9   Limitation on Payments

Notwithstanding any provision contained in this Article XIX to the contrary, amounts paid from a Participant's Dependent Care Flexible Spending Account in or on account of any taxable year of the Participant for income exclusion purposes will not exceed the lesser of the Earned Income limitations described in section 129(b) of the Code or $5,000 ($2,500 if a separate tax return is filed by a Participant who is married as determined under the rules of paragraphs (3) and (4) of section 21(e) of the Code).  Participants must contribute a minimum of $200 for the Plan Year.

### 19.10   Nondiscrimination Requirements

(a)   **Eligibility**.  It is the intent of this Dependent Care Flexible Spending Account Program that contributions or benefits not discriminate in favor of "highly compensated employees" or "key employees" as defined under section 129(d) of the Code.

(b)   **Benefits**.  It is the intent of this Dependent Care Flexible Spending Account Program that not more than 25 percent of the amounts paid by the Employer for dependent care assistance during the Plan Year will be provided to key employees (*i.e.*, shareholders or owners (or their Spouses or Dependents), each of whom (on any day of the Plan Year) owns more than five percent of the common stock or of the capital or profits interest in the Employer).

92

EXHIBIT 10  Page 99  SUF

(c)    **Correction.**  If the Plan Administrator deems it necessary to avoid discrimination or possible taxation of a group of Employees in whose favor discrimination may not occur in violation of section 129 of the Code it may, but will not be required to, reject any elections or reduce contributions or non-taxable benefits in order to assure compliance with this Section 19.10.    Any act taken by the Plan Administrator under this Section 19.10 will be carried out in a uniform and nondiscriminatory manner.    If the Plan Administrator decides to reject any elections or reduce contributions or benefits, the benefits designated for the Dependent Care Flexible Spending Account Program by the affected Participant that elected to contribute the highest amount to such program for the Plan Year will be reduced until the nondiscrimination tests set forth in this Section 19.10 are satisfied, or until the amount designated for the account equals the amount designated for the account of the affected Participant who has elected the second highest contribution to the Dependent Care Flexible Spending Account Program for the Plan Year.  This process will continue until the nondiscrimination tests set forth in this Section 19.10 are satisfied.   Contributions that are not utilized to provide benefits to any Participant by virtue of any administrative act under this Paragraph (c) will be forfeited.

## 19.11   Coordination With Cafeteria Component Program

Eligible Employees as reflected under the applicable Component Program document are eligible to elect to participate in the Cafeteria Component Program and receive benefits under this Dependent Care Flexible Spending Account Program.  Matters concerning contributions, elections, claims for benefits and the like will be governed by the general provisions of the Plan and the terms of the Component Program Documents.

## 19.12   Dependent Care Flexible Spending Account Claims

(a)    **Reimbursement of Employment-Related Dependent Care Expenses.**  The Administrative Provider will direct the payment of all such Dependent Care Assistance claims to the Participant upon the presentation to the Administrative Provider of documentation of such expenses in a form satisfactory to the Administrative Provider.  However, in the Administrative Provider's discretion, payments may be made directly to the service provider.  In its discretion in administering the Dependent Care Flexible Spending Account Program, the Administrative Provider may utilize forms and require documentation of costs as may be necessary to verify the claims submitted.  At a minimum, the form will include a statement from an independent third party as proof that the expense has been incurred and the amount of such expense.    In addition, the Administrative Provider may require that each Participant who desires to receive reimbursement under this program for Employment-Related Dependent Care Expenses submit a statement which may contain some or all of the following information:

(i)    The Dependent or Dependents for whom the services were performed;

(ii)    The nature of the services performed for the Participant, the cost of which he wishes reimbursement;

(iii)    The relationship, if any, of the person performing the services to the Participant;

93

EXHIBIT 10  Page 100  SUF

(iv)    If the services are being performed by a child of the Participant, the age of the child;

(v)     A statement as to where the services were performed;

(vi)    If any of the services were performed outside the home, a statement as to whether the Dependent for whom such services were performed spends at least eight hours a day in the Participant's household;

(vii)   If the services were being performed in a day care center, a statement:

   (A)    That the day care center complies with all applicable laws and regulations of the state of residence;

   (B)    That the day care center provides care for more than six individuals (other than individuals residing at the center); and

   (C)    Of the amount of fee paid to the provider.

(viii)  If the Participant is married, a statement containing the following:

   (A)    The Spouse's salary or wages if he or she is employed; or

   (B)    If the Participant's Spouse is not employed, that

      (1)    he or she is incapacitated; or

      (2)    he or she is a full-time student attending an educational institution and the months during the year that he or she attended such institution.

The Employment-Related Dependent Care Expenses must have been incurred during the applicable Plan Year.

**(b)    Account Balance Available.**   The Administrative Provider will direct the reimbursement to each eligible Participant for all allowable Employment-Related Dependent Care Expenses up to the amount of contributions held in the Dependent Care Flexible Spending Account at the time the request for reimbursement is made.  Employment-Related Dependent Care Expenses will not be reimbursed before the expenses are incurred.  The expenses are incurred when the care is provided and not when the Participant is formally billed, charged for, or pays for the dependent care.

**(c)    Claim Filing Deadline.**   If a Participant fails to submit a claim to the Administrative Provider by May 31 immediately following the end of the Plan Year, those claims will not be considered for reimbursement by the Administrative Provider.  Any dispute concerning a claim for the reimbursement of Employment Related Dependent Care Expenses will be subject to the claims provisions of Article VIII of this Plan concerning non-health and non-disability claims.

94

EXHIBIT 10  Page 101  SUF

## ARTICLE XX

## HEALTH SAVINGS ACCOUNT

**20.1   Participation**

An Eligible Employee who has elected coverage under the High Deductible Health Plan option can elect to participate in the Health Savings Account.  Contributions will be made on a pre-tax basis in accordance with Section 4.1 of the Plan.  A Health Savings Account Participant may elect to participate in the Limited Purpose Health Care Flexible Spending Account Plan coverage described in Article XVIII.  A Participant who has elected to participate in the General Purpose Health Care Flexible Spending Account Plan and whose election is in effect on the last day of the Plan Year cannot elect to participate in the Health Savings Account for any of the first three calendar months following the close of the Plan Year unless his balance in the General Purpose Health Care Flexible Spending Account Plan is $0 as of the last day of the Plan Year.  For this purpose, a Participant's General Purpose Health Care Flexible Spending Account Plan balance is determined on a cash basis—that is, without regard to any claims that have been incurred but have not yet been reimbursed (whether or not such claims have been submitted).

**20.2   Establishment of Health Savings Account**

A Participant's Health Savings Account will be separately established and maintained by a trustee/custodian outside of the Plan, and the Employer will forward such contributions to be deposited. The trustee/custodian will be chosen by the Participant, not the Employer; provided, however, the Employer may limit the number of providers to whom it will forward contributions withheld on the Participant's behalf.  The Plan Administrator will maintain records to track the Health Savings Account contributions made by each Participant; provided, however, the Employer will not create a separate fund or otherwise segregate assets for this purpose.  The Employer has no authority or control over funds deposited in a Health Savings Account except that the Employer may limit the provider to whom it will forward the Participant's contributions and the investment funds in which the Participant may invest such contributions.  The terms and conditions of coverage and benefits under the Health Savings Account will be provided under the Health Savings Account and not under the Plan.  The terms and conditions of each Participant's Health Savings Account trust or custodial account will be governed by the trust or custodial agreement and are not a part of this Plan.

**20.3   Contributions; Limits**

(a)   **Annual Contributions**.  Annual contributions are equal to the annual benefit amount elected by the Participant subject to the annual statutory maximums described below and the events set forth in Section 20.3(c).  In no event can the annual benefit elected exceed the statutory maximum amount for Health Savings Account contributions applicable to the Participant's High Deductible Health Plan coverage option for the calendar year in which the contribution is made.  The statutory maximum for each calendar year will be set forth on Appendix C. Appendix C may be revised from time to time without the need for a formal amendment to the Plan, in which case a revised Appendix C will be attached hereto.

95

EXHIBIT 10  Page 102  SUF

(b)   **Catch-up Contributions**.  An additional catch-up contribution may be made for a Participant who is age 55 or older.  The statutory maximum for each calendar year will be set forth on Appendix C.  Appendix C may be revised from time to time without the need for a formal amendment to the Plan, in which case a revised Appendix C will be attached hereto.

(c)   **Contribution Reduction Events**.  The maximum annual contribution will be:

    (i)   Reduced by any Employer contributions made on the Participant's behalf under the Plan; and

    (ii)   Prorated for the number of months in which the Participant is eligible to participate in the Health Savings Account.

## 20.4   Election Revocation and Changes During the Plan Year

A Participant may increase, decrease or revoke his election for coverage under the Health Savings Account prospectively at any time during the Plan Year to be effective no later than the first day of the next calendar month following the date that the election change was made in accordance with Section 4.4(h) of the Plan.  No other election changes will occur under the Plan as a result of an election change made with respect to the Health Savings Account, except as otherwise permitted under Section 4.4 of the Plan.

## 20.5   Tax Treatment

The tax treatment of Health Savings Account contributions will be governed by section 223 of the Code.

**IN WITNESS WHEREOF**, Waddell & Reed, Inc. has caused this amended and restated Plan to be adopted, effective as of January 1, 2014.

EXECUTED this _____ day of _____, 2014.

**WADDELL & REED, INC.**

By:  _____

ATTEST:

By: _____

96

EXHIBIT 10  Page 103  SUF

# APPENDIX A

## DESIGNATION OF COMPONENT PROGRAMS

Effective January 1, 2014, the following Component Programs are incorporated into and made a part of the Plan:

| TYPE OF BENEFIT PROVIDED | COMPONENT PROGRAM | INSURED CONTRACT OR SELF-INSURED |
|---|---|---|
| | **MEDICAL** | |
| PPO | BlueCross BlueShield/MedTrak Group # | Self-Insured |
| HDHP | BlueCross BlueShield/MedTrak Group # | Self-Insured |
| | **DENTAL** | |
| Dental | Delta Dental of Kansas Group #51910 | Self-Insured |
| | **VISION** | |
| Vision | VSP Contract No. 12292862 | Insured Contract |
| | **LIFE/AD&D** | |
| Life/AD&D (Class I Part-Time Employees) | Metropolitan Life Group Policy No. 103962-G | Insured Contract |
| Life/AD&D (Class II Full-Time Employees) | Metropolitan Life Group Policy No. 103962-G | Insured Contract |
| Supplemental Life | Minnesota Life Insurance Company Contract No. 33664-G | Insured Contract |
| | **CRITICAL ILLNESS** | |
| Critical Illness | Aflac Group Insurance/Continental American Insurance Company Policy Series CA12800 | Insured Contract |
| | **LONG-TERM CARE** | |
| Long-Term Care | Metropolitan Life Contract No. 0700031 | Insured Contract |

A-1

EXHIBIT 10  Page 104  SUF

| TYPE OF BENEFIT PROVIDED | COMPONENT PROGRAM | INSURED CONTRACT OR SELF-INSURED |
|---|---|---|
| | BUSINESS TRAVEL ACCIDENT INSURANCE | |
| Business Travel | Chubb Group of Insurance Companies Contract No. 9907-11-68 | Insured Contract |
| | SHORT-TERM AND LONG-TERM DISABILITY | |
| Long-Term Disability (Full-Time Employees) | Metropolitan Life Group Policy No. 103962-G | Insured Contract |
| Long-Term Disability (Senior Executives) | Metropolitan Life Group Policy No. 103962-G | Insured Contract |
| Sick Leave | Employer | Self-Insured |
| | SEVERANCE | |
| Severance | Employer | Self-Insured |
| | FLEXIBLE SPENDING ACCOUNTS | |
| Health Care Flexible Spending | BMO Harris Bank N.A. | Self-Insured |
| Dependent Care Flexible Spending | BMO Harris Bank N.A. | Self-Insured |
| | EMPLOYEE ASSISTANCE PROGRAM | |
| EAP | Saint Luke's Health System | Service Contract |
| | HEALTH SAVINGS ACCOUNT | |
| HSA | UMB Bank,n.a. | Individual Accounts |

As provided in Section 1.1(v) of the Plan, this Appendix A may be updated from time to time without a formal amendment to the Plan.

A-2

EXHIBIT 10  Page 105  SUF

**APPENDIX B**

**CORE BENEFITS PACKAGE**

| COMPONENT PROGRAMS | ELIGIBILITY |
|---|---|
| Life Insurance Program | All Eligible Employees |
| Accidental Death and Dismemberment Program | All Eligible Employees |
| Long-Term Disability Program | All Eligible Employees |
| Employee Assistance Program | All Eligible Employees |

No core benefits are offered to Eligible Advisors or Directors under the Plan; instead, all Eligible Advisors and Directors must make an election to participate in the applicable Component Program.

As provided in Section 4.2(b) of the Plan, this Appendix B may be updated from time to time without a formal amendment to the Plan.

EXHIBIT 10  Page 106  SUF

**APPENDIX C**

**HEALTH SAVINGS ACCOUNT LIMITATIONS**

| CALENDAR YEAR 2014 | |
|---|---|
| Type of Coverage | Amount |
| Single | $3,300 |
| Family | $6,550 |
| Catch-Up | $1,000 |

As provided in Section 20.3(a) of the Plan, this Appendix C may be updated from time to time without a formal amendment to the Plan.

C-1

EXHIBIT 10  Page 107  SUF

## APPENDIX D

## PARTICIPATING EMPLOYERS

Waddell & Reed, Inc. (EIN: REDACTED)

Waddell & Reed Financial, Inc.  (EIN: REDACTED)

Waddell & Reed Services Company (EIN: REDACTED)

Waddell & Reed Investment Management Company (EIN: REDACTED)

Ivy Funds Distributor, Inc. (EIN: REDACTED)

Waddell & Reed Corporate LLC (EIN: REDACTED)

Waddell & Reed Capital Management Group, Inc. (EIN:  REDACTED)

As provided in Section 12.6(a) of the Plan, this Appendix D may be updated from time to time without formal amendment to the Plan.

EXHIBIT 10  Page 108  SUF

**APPENDIX E**

**SUMMARY OF ELIGIBILITY REQUIREMENTS**

I.    **ELIGIBILITY MATRIX FOR NON-ADVISORS**

Important Note: This matrix is merely a summary of the eligibility rules under the various Component Programs for Eligible Employees and Directors who are not classified as Advisors. If an individual is classified as an Advisor, a separate eligibility matrix is set forth in Paragraph II below. More complete information is available in the Component Program documents and from the Plan Administrator.

    A.    MEDICAL, DENTAL, VISION BENEFIT PROGRAMS

        1.    ELIGIBLE EMPLOYEES/DIRECTORS (includes certain field management and field administration positions paid on a Form W-2 basis):  Individuals eligible for coverage under the medical, dental and vision plan include:

            a.    Full-time or part-time Employees regularly scheduled to work at least 20 hours per week.

            b.    Retired Employees who apply for retiree coverage within 30 days of the date the retiree's employment terminated and who are not eligible for other group medical coverage.

            c.    Current members of Waddell & Reed Financial, Inc.'s Board of Directors.

        2.    ELIGIBLE DEPENDENTS:  The following Dependents of Employees and Directors who meet the eligibility criteria are also eligible:

            a.    A spouse;

            b.    A same or opposite sex domestic partner; and

            c.    Children, including stepchildren, foster children, adopted children, domestic partner children and children the eligible employee is legally obligated to support.  The limiting age for children is 26 years, except that there is no limiting age for an incapacitated dependent.

        3.    EFFECTIVE DATE OF EMPLOYEE/DIRECTOR COVERAGE

            a.    Coverage eligibility begins on the first day of service for employees and directors who meet the eligibility criteria.

            b.    Retiree coverage is effective as of the date of termination for retired employees who meet the eligibility criteria.  Directors are not eligible for retiree coverage.

EXHIBIT 10  Page 109  SUF

4.     <u>EFFECTIVE DATE OF DEPENDENT COVERAGE</u>:   Coverage eligibility begins on the **later** of the date the Employee or Director becomes eligible and the date the person becomes a dependent.

5.     <u>TERMINATION DATE OF EMPLOYEE/DIRECTOR COVERAGE</u>: Coverage will terminate on the **earliest** of the following dates:

a.     If the Employee or Director fails to remit the required contributions for coverage when due, the date which is the end of the period for which the last timely contribution was made;

b.     The end of the pay period in which the Employee's or Director's employment/service in an eligible class ceases; employment/service is considered to cease on the last day worked/served within the eligible class;

c.     The date the Employee or Director enters the military, naval or air force of any country or international organization on a full-time basis other than scheduled drills or other training not exceeding one month in any calendar year, subject to the requirements of USERRA or similar applicable law;

d.     The date the Plan is terminated;

e.     The date the Employee or Director requests that coverage be terminated (subject, however, to any limitations under an affiliated cafeteria plan under Section 125 of the Code on Employee or Director rights to change coverage elections prior to the end of the Plan Year);

f.     The date the Company determines, in its sole discretion, that the Employee or Director knowingly filed or knowingly assisted with the filing of a fraudulent claim for benefits; or

g.     For Directors, the date that is the end of the period for which the last timely contribution was made following the date the individual ceases to be a Director.

6.     <u>TERMINATION DATE OF DEPENDENT COVERAGE</u>:   Coverage will terminate on the **earliest** of the following:

a.     The date the Employee's or Director's coverage terminates;

b.     If the required contribution for the Dependent's coverage is not remitted when due, the date that is the end of the period for which the last timely contribution was made;

c.     The date the Dependent ceases to be in a class eligible for Dependent coverage;

E-2

EXHIBIT 10  Page 110  SUF

    d.    The date the Dependent ceases to meet the definition of a Dependent;

    e.    The date the Dependent ceases to meet the definition for an incapacitated Dependent;

    f.    The date the Dependent enters the military, naval or air force of any country or international organization on a full-time basis other than scheduled drills or other training not exceeding one month in any calendar year;

    g.    The date the Dependent becomes covered as an Employee or Advisor;

    h.    The date Dependent coverage is discontinued under the Plan;

    i.    The date the Plan is terminated; or

    j.    The date the Company determines, in its sole discretion, that the Dependent knowingly filed or knowingly assisted with the filing of a fraudulent claim for benefits.

**B.**    **LONG-TERM DISABILITY**

    1.    <u>ELIGIBLE EMPLOYEES</u>:  Full-time Employees who are regularly scheduled to work at least 37.5 hours per week are eligible.

    2.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

    3.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  The **earlier** of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

**C.**    **GROUP TERM LIFE AND AD&D**

    1.    <u>ELIGIBLE EMPLOYEES</u>:  Same as medical.

    2.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

    3.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  The **earlier** of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

**D.**    **BUSINESS TRAVEL ACCIDENT INSURANCE**

    1.    <u>ELIGIBLE EMPLOYEES/DIRECTORS</u>:

        a.    Full and part-time Employees are who regularly scheduled to work at least 20 hours per week are eligible.

        b.    Members of Waddell & Reed Financial, Inc.'s Board of Directors.

EXHIBIT 10  Page 111  SUF

2.   <u>ELIGIBLE DEPENDENTS</u>: The following Dependent of Employees and Directors who meet the eligibility criteria are also eligible:

    a.   A spouse;

    b.   A same or opposite sex domestic partner; and

    c.   Children, including stepchildren, foster children, adopted children, domestic partner children and children the eligible employee is legally obligated to support.  The limiting age for children is 26 years, except that there is no limiting age for an incapacitated dependent.

3.   <u>EFFECTIVE DATE OF EMPLOYEE/DIRECTOR COVERAGE</u>:  Same as medical.

4.   <u>EFFECTIVE DATE OF DEPENDENT COVERAGE</u>:  Same as medical.

5.   <u>TERMINATION DATE OF EMPLOYEE/DIRECTOR COVERAGE</u>:  The **earlier** of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

6.   <u>TERMINATION DATE OF DEPENDENT COVERAGE</u>: The **earlier** of the date the Employee's or Director's coverage terminates or the date Dependent medical coverage would terminate (whether or not the Dependent has medical coverage).

## E.   HEALTH FSA

1.   <u>ELIGIBLE EMPLOYEES</u>:  Full and part-time Employees are who regularly scheduled to work at least 20 hours per week are eligible.

2.   <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

3.   <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

4.   <u>ELIGIBILITY LIMITATIONS</u>.  Any Employee enrolled in the Plan's High Deductible Health Plan may participate only in the Plan's Limited Purpose Health Care Flexible Spending Account.

## F.   SUPPLEMENTAL LIFE

1.   <u>ELIGIBLE EMPLOYEES</u>:  Full and part-time Employees are who regularly scheduled to work at least 20 hours per week are eligible.

2.   <u>ELIGIBLE DEPENDENTS</u>:  The following Dependents of Employees who meet the eligibility criteria are also eligible:

    a.   A spouse;

    b.   A same or opposite sex domestic partner; and

E-4

EXHIBIT 10  Page 112  SUF

    c.    Children, including stepchildren, foster children, adopted children, domestic partner children and children the eligible employee is legally obligated to support.  The limiting age for children is 26 years, except that there is no limiting age for an incapacitated dependent.

3.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

4.    <u>EFFECTIVE DATE OF DEPENDENT COVERAGE</u>:  Same as medical.

5.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  The earlier of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

6.    <u>TERMINATION DATE OF DEPENDENT COVERAGE</u>:  The earlier of the date the Employee's coverage terminates or the date Dependent medical coverage would terminate (whether or not the Dependent has medical coverage).

## G.    CRITICAL ILLNESS

1.    <u>ELIGIBLE EMPLOYEES</u>:  Full and part-time Employees are who regularly scheduled to work at least 20 hours per week are eligible.

2.    <u>ELIGIBLE DEPENDENTS</u>:  The following Dependents of Employees who meet the eligibility criteria are also eligible:

    a.    A spouse;

    b.    A same or opposite sex domestic partner; and

    c.    Children, including stepchildren, foster children, adopted children, domestic partner children and children the eligible employee is legally obligated to support.  The limiting age for children is 26 years, except that there is no limiting age for an incapacitated dependent.

3.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

4.    <u>EFFECTIVE DATE OF DEPENDENT COVERAGE</u>:  Same as medical.

5.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  The **earlier** of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

6.    <u>TERMINATION DATE OF DEPENDENT COVERAGE</u>:  The **earlier** of the date the Employee's coverage terminates or the date Dependent medical coverage would terminate (whether or not the Dependent has medical coverage).

## H.    SEVERANCE PAY

E-5

EXHIBIT 10  Page 113  SUF

    1.    <u>ELIGIBLE EMPLOYEES</u>:  Full and part-time Employees are who regularly scheduled to work at least 20 hours per week are eligible.

    2.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

    3.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

**I.    SICK LEAVE**

    1.    <u>ELIGIBLE EMPLOYEES</u>:   Full-time Employees who are regularly scheduled to work at least 37.5 hours per week are eligible.

    2.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

    3.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>: The **earlier** of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

**J.    DEPENDENT CARE FSA**

    1.    <u>ELIGIBLE EMPLOYEES</u>:  Full and part-time Employees are who regularly scheduled to work at least 20 hours per week are eligible.

    2.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

    3.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

**K.    HEALTH SAVINGS ACCOUNT**

    1.    <u>ELIGIBLE EMPLOYEES/DIRECTORS (includes certain field management and field administration positions paid on a Form W-2 basis)</u>: Employees and Directors eligible for coverage include the following individuals if enrolled in the Plan's High Deductible Health Plan:

        a.    Full-time or part-time Employees regularly scheduled to work at least 20 hours per week.

        b.    Retired Employees who apply for retiree coverage within 30 days of the date the retiree's employment terminated and who are not eligible for other group medical coverage.

        c.    Members of Waddell & Reed Financial, Inc.'s Board of Directors.

    2.    <u>EFFECTIVE DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

    3.    <u>TERMINATION DATE OF EMPLOYEE COVERAGE</u>:  Same as medical.

**L.    EAP**

    1.    <u>ELIGIBLE EMPLOYEES/DIRECTORS (includes certain field management and field administration positions paid on a Form W-2 basis)</u>: Individuals eligible for coverage under the EAP include:

a.   Full-time or part-time Employees regularly scheduled to work at least 20 hours per week who have elected medical coverage.

b.   Retired Employees who apply for retiree coverage within 30 days of the date the retiree's employment terminated and who are not eligible for other group medical coverage who have elected medical coverage.

c.   Current members of Waddell & Reed Financial, Inc.'s Board of Directors who have elected medical coverage.

2.   <u>ELIGIBLE DEPENDENTS</u>:  The following Dependents of Employees who meet the eligibility criteria are also eligible if they have elected medical coverage:

a.   A spouse;

b.   A same or opposite sex domestic partner; and

c.   Children, including stepchildren, foster children, adopted children, domestic partner children and children the eligible employee is legally obligated to support.  The limiting age for children is 26 years, except that there is no limiting age for an incapacitated dependent.

3.   <u>EFFECTIVE DATE OF EMPLOYEE/DIRECTOR COVERAGE</u>:  Same as medical.

4.   <u>EFFECTIVE DATE OF DEPENDENT COVERAGE</u>:  Same as medical.

5.   <u>TERMINATION DATE OF EMPLOYEE/DIRECTOR COVERAGE</u>:  The earlier of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

6.   <u>TERMINATION DATE OF DEPENDENT COVERAGE</u>:  The earlier of the date the Employee's or Director's coverage terminates or the date Dependent medical coverage would terminate (whether or not the Dependent has medical coverage).

Notwithstanding any other provision of this document to the contrary, to the extent an applicable state law imposes upon this Plan or any Component Program under this Plan a more generous eligibility criteria than that reflected here, such other eligibility criteria will apply to the extent, and only to the extent, required by such applicable law.

## II.   ELIGIBILITY MATRIX FOR WADDELL & REED ADVISORS

Important Note: This matrix is merely a summary of the eligibility rules under the various Component Programs for Advisors.  If an individual is not an Advisor, a separate eligibility matrix is set forth in Paragraph I above. More complete information is available from the Component Program documents and from the Plan Administrator.

E-7

EXHIBIT 10  Page 115  SUF

## A.   MEDICAL

1.   <u>ELIGIBLE ADVISORS</u>:   The following Waddell & Reed Advisors are eligible:

   a.   Waddell & Reed Classic Advisors who meet the following eligibility requirements:

- Satisfaction of the minimum production requirements as outlined in the current year's Compensation and Incentive Guide;

- Earned at least $1,000,000 in Incentive Volume Credit within 12 months of being licensed or within either of the first two calendar years following licensing; and

   b.   Waddell & Reed Choice Advisors who meet the following eligibility requirements:

- Eligible for coverage immediately and remain eligible during their first two years; and

- Meet the minimum production requirements as outlined in the current year's Compensation and Incentive Guide for subsequent years.

   c.   Retired Advisors must:

- Apply for coverage within 30 days of the date the Advisor enters the Financial Advisors Business Transition Program; and

- Not be eligible for other group medical coverage.

2.   <u>ELIGIBLE DEPENDENTS</u>:   The following Dependents of Advisors who meet the eligibility criteria are also eligible:

   a.   A spouse;

   b.   A same or opposite sex domestic partner; and

   c.   Children, including stepchildren, foster children, adopted children, domestic partner children and children the eligible advisor is legally obligated to support.   The limiting age for children is 26 years, except that there is no limiting age for an incapacitated dependent.

3.   <u>EFFECTIVE DATE OF ADVISOR COVERAGE</u>:   Coverage for Advisors is effective when the Advisor meets the minimum production requirements as outlined in the current year's Compensation and Incentive Guide or becomes a Choice Advisor and files enrollment forms with the Company

E-8

EXHIBIT 10  Page 116  SUF

within 30 days of that date.  Retiree coverage is effective as of the date of termination for retired Classic Advisors who meet the eligibility criteria.

4.  <u>EFFECTIVE DATE OF DEPENDENT COVERAGE</u>:  Coverage eligibility begins on the **later** of the date the Advisor becomes eligible and the date the person becomes a dependent.

5.  <u>TERMINATION DATE OF ADVISOR COVERAGE</u>:   Coverage will terminate on the **earliest** of the following dates:

    a.  If the Advisor fails to remit the required contributions for coverage when due, the date which is the end of the period for which the last timely contribution was made;

    b.  The end of the pay period in which the Advisor ceases to be in a class eligible for coverage, which is considered to be on the last day worked within the eligible class;

    c.  The date the Advisor enters the military, naval or air force of any country or international organization on a full-time basis other than scheduled drills or other training not exceeding one month in any calendar year, subject to the requirements of USERRA or similar applicable law;

    d.  The date the Plan is terminated;

    e.  The date the Advisor requests coverage to be terminated (subject, however, to any limitations under an affiliated cafeteria plan under Section 125 of the Code on the Advisor's right to change coverage elections prior to the end of the Plan Year);

    f.  The date the Company determines, in its sole discretion, that the Advisor knowingly filed or knowingly assisted with the filing of a fraudulent claim for benefits;

    g.  For a Classic Advisor, on January 31st of the succeeding calendar year when the Advisor fails to meet the earnings requirement of at least $1,000,000 in IVC in the previous calendar year;

    h.  For a Classic Advisor in the Entrepreneur program, following the Advisor's failure to meet the minimum monthly cumulative commissionable activity required to remain eligible;

    i.  For a Classic Advisor in the E-Bonus program, following the advisor's failure to meet the minimum quarterly Incentive Volume Credit requirements; and

    j.  For a Choice Advisor, following the Advisor's failure to meet the earnings requirement of $75,000 in Total Gross Revenue.

E-9

EXHIBIT 10  Page 117  SUF

6.   TERMINATION DATE OF DEPENDENT COVERAGE: Coverage will terminate on the earliest of the following:

   a.   The date the Advisor coverage terminates;

   b.   If the required contribution for Dependent coverage is not remitted when due, the date of which is the end of the period for which the last timely contribution was made;

   c.   The date the Dependent ceases to be in a class eligible for Dependent coverage;

   d.   The date the Dependent ceases to meet the definition of a Dependent;

   e.   The date the Dependent ceases to meet the definition for an incapacitated Dependent;

   f.   The date the Dependent enters the military, naval or air force of any country or international organization on a full-time basis other than scheduled drills or other training not exceeding one month in any calendar year;

   g.   The date the Dependent becomes covered as an Advisor or Employee;

   h.   The date Dependent coverage is discontinued under the Plan;

   i.   The date the Plan is terminated; or

   j.   The date the Company determines, in its sole discretion, that the dependent knowingly filed or knowingly assisted with the filing of a fraudulent claim for benefits.

**B.   DENTAL AND VISION**

1.   ELIGIBLE ADVISORS:  Same as medical, except that advisors must also be enrolled in the medical plan to enroll in the dental or vision plan.

2.   ELIGIBLE DEPENDENTS:  Same as medical, except that dependents of Advisors must also be enrolled in the medical plan to be enrolled in the dental or vision plan.

3.   EFFECTIVE DATE OF ADVISOR COVERAGE:  Same as medical.

4.   EFFECTIVE DATE OF DEPENDENT COVERAGE:  Same as medical.

5.   TERMINATION DATE OF ADVISOR COVERAGE:  Same as medical.

6.   TERMINATION DATE OF DEPENDENT COVERAGE:  Same as medical.

EXHIBIT 10  Page 118  SUF

C.      **EAP**

1.      <u>ELIGIBLE ADVISORS</u>:  Same as medical, except that Advisors must also be enrolled in the medical plan to be covered under the EAP.

2.      <u>ELIGIBLE DEPENDENTS</u>:  Same as medical, except that Dependents of Advisors must also be enrolled in the medical plan to be covered under the EAP.

3.      <u>EFFECTIVE DATE OF ADVISOR COVERAGE</u>:  Same as medical:

4.      <u>EFFECTIVE DATE OF DEPENDENT COVERAGE</u>:  Same as medical.

5.      <u>TERMINATION DATE OF ADVISOR COVERAGE</u>:  The **earlier** of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

6.      <u>TERMINATION DATE OF DEPENDENT COVERAGE</u>:  The **earlier** of the date the Advisor's coverage terminates or the date Dependent medical coverage would terminate (whether or not the Dependent has medical coverage).

D.      **GROUP TERM LIFE AND AD&D**

1.      <u>ELIGIBLE ADVISORS</u>:  Same as medical.

2.      <u>EFFECTIVE DATE OF ADVISOR COVERAGE</u>:  Same as medical.

3.      <u>TERMINATION DATE OF ADVISOR COVERAGE</u>:  The earlier of the date medical coverage would terminate (whether or not medical coverage is maintained) or the date of employment termination.

Notwithstanding any other provisions of this document to the contrary, to the extent an applicable state law imposes upon this Plan or any Component Document of this Plan a more generous eligibility criteria than that reflected here, such other eligibility criteria will apply to the extent, and only to the extent, required by such applicable law.

EXHIBIT 10  Page 119  SUF

# APPENDIX F

## COMPONENT PROGRAM DOCUMENTS

EXHIBIT 10  Page 120  SUF